IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | **MEMORANDUM ORDER** |
| | ) | Case No. CR07-23-N-EJL |
| vs. | ) | |
| | ) | |
| JOSEPH EDWARD DUNCAN, III, | ) | |
| Defendant. | ) | |
| _____ | ) | |

Pending before the Court is the Defendant's Motion to Declare the Federal Death Penalty Act Unconstitutional, To Dismiss the Aggravators and the Death Penalty Notice. The Government has filed a response. The matter is now ripe for the Court's consideration. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this motion shall be decided on the record before this Court without oral argument. Local Rule 7.1(d)(2)(ii).

**Factual and Procedural Background**

The Defendant, Joseph Edward Duncan, III, was charged by way of an Indictment with multiple crimes relating to events occurring in northern Idaho between May of 2005 and July of 2005. (Dkt. No. 1). Three of the counts carry the potential for a sentence of death: Count One, Kidnapping Resulting in Death; Count Five, Sexual Exploitation of a Child Resulting in Death; and, Count Seven, Using a Firearm During and in Relation to a Crime of Violence Resulting in Death.

MEMORANDUM ORDER - 1

The Indictment contains a section entitled Notice of Special Findings ("Special Findings") which details the particular factual allegations necessary for the application of FDPA in this case. (Dkt. No. 1). The Government later filed a notice of intent to seek the death penalty ("Death Penalty Notice").[1] (Dkt. No. 11).

The statutory aggravating factors listed in the Notices as to all of the charges carrying a possible death sentence include: death during the commission of another crime (18 U.S.C. § 3592(c)(1)); previous conviction of offense for which a sentence of death or life imprisonment was authorized (18 U.S.C. § 3592(c)(3)); heinous, cruel, or deprave manner or committing offense (18 U.S.C. § 3592(c)(6)); substantial planning and premeditation (18 U.S.C. § 3592(c)(9)); and vulnerability of victim (18 U.S.C. § 3592(c)(11)). The statutory aggravating factor listed in the Notices as to Counts One and Seven is: previous conviction of violent felony involving firearm (18 U.S.C. § 3592(c)(2)). The statutory aggravating factor listed in the Notices as to Count Five is: prior conviction of sexual assault or child molestation (18 U.S.C. § 3592(c)(15)). The non-statutory aggravating factors listed in the Notices as to Counts One, Five, and Seven are the effect of the offense on the victim and the victim's family (aka "victim impact") and the future dangerousness of the Defendant.

## Analysis

The statutory scheme of the Federal Death Penalty Act ("FDPA") requires juries in death penalty cases to make several determinations before a sentence of death can be imposed. Following the Government's filing of a timely and sufficient notice of intent to seek the death penalty, a defendant must be convicted of an offense which carries the potential sentence of death. Thereafter,

---

[1] In this order, the Court will use the term "Notices" to refer to both the Special Findings and the Death Penalty Notice where appropriate. Otherwise, the Court will specify between the two by name.

a Penalty Phase is held which in this case has been bifurcated into two stages: first, the Eligibility

Phase and, second, the Selection Phase.  At the first phase the jury decides whether a defendant is

eligible for the death penalty.  The Government presents evidence in support of the gateway mental

intent factors and statutory aggravating factors which were alleged in the notice of intent to seek the

death penalty.  To be eligible for the death penalty, the jury must find unanimously and beyond a

reasonable doubt that the defendant had at least one of the necessary mental states to commit the

crime and that at least one of the alleged aggravating factors also exists.  18 U.S.C. §§ 3591(a)(2)(A)

- (D), 3593(c), (d).  If, and only if, the jury makes the necessary determinations that render the

defendant eligible, then the process moves forward to the second Selection Phase where the jury is

tasked with determining the appropriate sentence for the particular defendant.

At the Selection Phase, the Government may present both statutory and non-statutory

aggravating factors which the jury must find unanimously and beyond a reasonable doubt.  18

U.S.C. §§ 3592(c), 3593(c).  The defense has the burden of establishing any mitigating factors by

a preponderance of the evidence; the mitigating factors need not be found unanimously.  18 U.S.C.

§ 3593(c), (d).  The jury must then engage in a weighing process to determine whether "all the

aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors

found to exist to justify a sentence of death or, in the absence of a mitigating factor, whether the

aggravating factor or factors alone are sufficient to justify a sentence of death."  18 U.S.C.

§ 3593(e).  "Based upon this consideration, the jury by unanimous vote...shall recommend whether

the defendant should be sentenced to death, to life imprisonment without the possibility of release

or some other lesser sentence."  Id.

The Defendant's generally argues that the statutory and non-statutory aggravating factors

MEMORANDUM ORDER - 3

alleged in this case violate the Fifth, Sixth, Eight, and Fourteenth Amendments of the United States Constitution because they fail to adequately channel the sentencer's discretion by narrowing the category of convicted defendants eligible to receive the death penalty, fail to minimize the risk of arbitrary and capricious application of the death penalty, and are vague and duplicative. The instant motion requests an order declaring the FDPA unconstitutional and striking the statutory and non-statutory aggravating factors as well as the Death Penalty Notice.

I.     Constitutional Narrowing of the Category of Convicted Defendants

In Furman v. Georgia, 408 U.S. 238 (1972), the Supreme Court struck down all then existing state death penalty statutes as violating the Eighth and Fourteenth Amendments on the grounds that the death penalty statutes in question were inequitable and discriminatory. The cases that followed have distilled the Furman decision to the principle that in order for a death penalty statute to satisfy the constitutional requirements it must "genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." Zant v. Stephens, 462 U.S. 862, 877 (1983); see also McCleskey v. Kemp, 481 U.S. 279, 302 (1987); Gregg v. Georgia, 428 U.S. 153, 189 (1976).

The FDPA accomplishes this constitutionally-mandated narrowing task by requiring the jury to find beyond a reasonable doubt the existence of a gateway mental state factor and at least one statutory aggravating factor before a defendant is considered death eligible. Zant, 462 U.S. 878; United States v. Cheever, 423 F.Supp.2d 1181, 1205 (D. Kan. 2006). Thereafter, the parties may present non-statutory aggravating factors and mitigating factors for the jury to consider in making an individualized determination as to whether the particular defendant should be selected for the death penalty. 18 U.S.C. 3593(c), (e). Other courts have routinely held that the FDPA

MEMORANDUM ORDER - 4

constitutionally narrows the class of persons eligible for the death penalty by distinguishing between those cases that warrant the death penalty and those that do not.  See United States v. Le, 327 F.Supp.2d 601, 609 (E.D.Va. 2004) (citing United States v. Llera Plaza, 179 F.Supp.2d 444, 451-52 (E.D.Pa. 2001); United States v. Minerd, 176 F.Supp.2d 424, 441 (W.D.Pa. 2001)).  This Court is in agreement with the prevailing authority upholding the FDPA's structure as satisfying the constitutional narrowing requirement.

II.     Statutory Aggravating Factors

     A.     Death Occurred During the Commission of Another Crime

Count One of the Indictment charges the Defendant with kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(1).  The first statutory aggravating factor in the Notices alleges that the Defendant caused the death of D.G. during the commission of the crime charged in Count One. The Defendant contends that this statutory aggravating factor is duplicative of the charge in Count One and that it should be struck from the Notices because it does not narrow the class of persons eligible for the death penalty.  The statutory aggravator, the Defendant argues, "mirrors and repeats the charge in the indictment and as such is an unfair duplication and must be stricken."  (Dkt. No. 139, p. 6).  Thus, the Defendant argues, allowing the jury to consider and/or weigh a statutory aggravating factor that it necessarily had to find in order to return a guilt-phase verdict is improper as it is duplicative; it does not narrow the class of persons eligible for the death penalty, citing to Lowenfield v. Phelps, 484 U.S. 231 (1988) and Stringer v. Black, 503 U.S. 222, 235-36 (1992); and unfairly skews the weighing process in favor of death, citing to United States v. McVeigh, 944 F.Supp. at 1478, 1489-90 (D. Col. 1996) and other cases.

This narrowing argument has been rejected in United States v. Jones, 132 F.3d 232, 237-42

MEMORANDUM ORDER - 5

(5th Cir. 1998) and United States v. Mayhew, 380 F.Supp.2d 936, 946-47 (S.D. Ohio 2005).[2]  "[A] capital sentencing scheme must genuinely narrow the class of persons eligible for the death penalty." Jones, 132 F.3d at 248 (citing Zant, 462 U.S. at 877).  "The use of aggravating factors helps to narrow the class of death-eligible persons and thereby channels the jury's discretion."  Id. (citing Lowenfield, 484 U.S. at 244).  This factor satisfies this narrowing requirement.

So too as to the Defendant's duplication argument, the courts have consistently held to the contrary.   See United States v. Rodriguez, 389 F.Supp.2d 1135, 1138 - 39 (D.N.D. 2005); United States v. Higgs, 353 F.3d 281, 315 (4th Cir. 2003).  "[A]n aggravating factor is invalid if it merely duplicates another factor."   United States v. Fell, 372 F.Supp.2d 753, 763-64 (D.Vt. 2005) (citing United States v. Frank, 8 F.Supp.2d 253, 276 (S.D.N.Y. 1998) (holding that "duplicative aggravating factors should not be submitted to the jury").   "District courts should...take care to ensure that aggravating factors are not duplicative. 'Such double counting of aggravating factors, especially under a weighing scheme, has a tendency to skew the weighing process and creates the risk that the death sentence will be imposed arbitrarily and thus, unconstitutionally.'"   Fell, 372 F.Supp.2d at

---

[2]      The court in Jones has described this narrowing function for the FDPA as follows:

The FDPA channels the jury's discretion during the penalty phase to ensure that the death penalty is not arbitrarily imposed.  The federal death penalty regime establishes the class of persons eligible for the death penalty through its definition of capital offenses, to include only treason, espionage, and certain intentional killings.  See 18 U.S.C. § 3591.  Although the federal death penalty regime defines capital offenses, the narrowing function does not occur until the penalty phase of the trial.  In narrowing the jury's discretion in federal homicide prosecutions, the FDPA requires the jury first to find that the defendant had the requisite intent. 18 U.S.C. § 3591.  The FDPA further narrows the jury's discretion with the requirement the jury find at least one statutory aggravating factor prior to recommending the death penalty.  See 18 U.S.C. § 3592(c).  Thus, the FDPA narrows the jury's discretion through the findings of intent and aggravating factors. Repetition of the elements of the crime as an aggravating factor helps to channel the jury's discretion by allowing the jury to consider the circumstances of the crime when deciding the propriety of the death sentence.  The jury may constitutionally consider the circumstances of the crime when deciding whether to impose the death penalty.  See Tuilaepa v. California, 512 U.S. 967, 976 (1994).

Jones, 132 F.3d at 248-49.

MEMORANDUM ORDER - 6

763-64 (quoting <u>United States v. McCullah</u>, 76 F.3d 1087, 1111 (10th Cir. 1996)).  The Supreme Court has recognized that "the weighing process may be impermissibly skewed if the sentencing jury considers an invalid factor."  <u>Id.</u> (<u>Jones v. United States</u>, 527 U.S. 373, 398 (1999) (citing <u>Stringer v. Black</u>, 503 U.S. 222, 232 (1992)). However, "[a]n aggravating factor which merely repeats an element of the crime passes constitutional muster as long as it narrows the jury's discretion."  <u>Id.</u>

Having considered the parties arguments in this case and the relevant case law, the Court is in agreement with the several other cases who have rejected this argument.  The statutory aggravating factor of death during the commission of another crime, § 3592(c)(1), is not duplicative of Count One in this case.  "[Duplication] occurs when the jury is asked, at the sentencing stage, to consider two or more aggravating factors that are essentially interchangeable."  <u>Mayhew</u>, 380 F.Supp.2d at 947.  "[T]he Eighth Amendment does not prohibit the use of an aggravating factor during the sentencing phase that duplicates one or more elements of the offense of the crime found at the guilt phase."  <u>Higgs</u>, 353 F.3d at 315 (citation omitted).  Accordingly, the motion on this basis is denied.

B.    <u>Substantial Planning and Premeditation Factor</u>

The Defendant argues the substantial planning and premeditation factor should be dismissed because it is vague and fails to genuinely narrow the class of people subject to the death penalty. Because almost every murder involves some planning and premeditation, the defense argues this statutory aggravating factor is inadequate to narrow the class of people eligible for the death penalty. (Dkt. No. 139, p. 9).

The narrowing argument has been rejected by other courts.  <u>Mayhew</u>, 380 F.Supp.2d at 949

MEMORANDUM ORDER - 7

(concluding the factor "adequately assists the jury in distinguishing those who deserve capital punishment from those who do not."); Minerd, 176 F.Supp.2d at 439.  As stated previously, a statutory aggravating factor must narrow the class of people who may be subject to the death penalty.  See Jones, 132 F.3d at 248 (citing Zant, 462 U.S. at 877).  "To withstand constitutional scrutiny, an aggravating factor which makes the defendant eligible for the death penalty must not apply to every defendant convicted of a murder, but instead only to a subclass of murder defendants, and it must not be unconstitutionally vague."  United States v. Paul, 217 F.3d 989, 1001 (8th Cir. 2000) (citing Tuilaepa v. California, 512 U.S. 967, 972 (1994)).  This Court agrees that the factor satisfies the constitutional narrowing requirement.

The Court further concludes that this factor is not unconstitutionally vague or duplicative. United States v. Bin Laden, 126 F.Supp.2d 290, 296 and n. 7 (S.D.N.Y. 2001) ("the statutory factor of 'substantial planing and premeditation' is not unconstitutionally vague.").  "The Eighth Amendment..requires that aggravating factors may not be too vague."  Fell, 372 F.Supp.2d at 763. "An aggravating factor may be unconstitutionally vague if it 'leave[s] the sentencer without sufficient guidance for determining the presence or absence of the factor.'"  McCullah, 76 F.3d at 1110 (quoting Espinosa v. Florida, 505 U.S. 1079, 1081, (1992)).  However, an aggravating factor is constitutional so long as it has some "common-sense core of meaning...that criminal juries should be capable of understanding."  Tuilaepa, 512 U.S. at 973 (citation omitted).  "The vagueness review is quite deferential."  Fell, 372 F.Supp.2d at 763 (quotation marks and citation omitted).  "The Constitution [also] requires that aggravating factors not be overly broad. This means that a factor 'may not apply to every defendant convicted of a murder; it must apply only to a subclass of defendants convicted of murder.'"  Fell, 372 F.Supp.2d at 763 (quoting Tuilaepa, 512 U.S. at 972

MEMORANDUM ORDER - 8

(citing <u>Arave v. Creech</u>, 507 U.S. 463, 474 (1993)).

The Defendant argues that adding the term "substantial" to the factor fails to adequately inform the jury of what they must find in order to impose the death penalty. (Dkt. No. 139, p. 9). This argument has been rejected. <u>See e.g.</u> <u>McVeigh</u>, 944 F.Supp. at 1490. The phrase "substantial planning and premeditation" has a "commonsense meaning of considerable in quantity: significantly large, which criminal juries are capable of understanding." <u>McCullah</u>, 76 F.3d at 1110 (citation and quotations omitted). Thus, a jury is not required to find that there was "considerably more planning than is typical" but rather "substantial" means "considerable" or "ample for commission of the crime." <u>Id.</u> at 1110-11 (upholding the jury instruction that "substantial planning means planning which is considerable or ample for the commission of the crime at issue."). Based on the foregoing, the Court holds that this aggravating factor appropriately narrows the class of persons subject to the death penalty and is not unconstitutionally vague. <u>See</u> <u>United States v. Bourgeois</u>, 423 F.3d 501, 511 (5th Cir. 2005); <u>United States v. Cheever</u>, 423 F.Supp.2d 1181, 1203 (D. Kan. 2006); <u>McCullah</u>, 76 F.3d at 1110; <u>United States v. Tipton</u>, 90 F.3d 861, 896 (4th Cir. 1996).

C.    <u>Heinous, Cruel, and Depraved Aggravating Factor</u>

The Government has alleged the statutory aggravating factor enumerated in § 3592(c)(6) to-wit that the Defendant committed the offenses in Counts One, Five, and Seven in an especially heinous, cruel, and depraved manner, in that it involved torture and serious physical abuse of D.G.. The Defendant argues this statutory aggravating factor fails to adequately narrow the class of murderers eligible for the death penalty and is vague on its face. In particular, the defense asserts that the phrase "especially heinous, cruel or depraved" is not sufficiently limited by inclusion of the words "torture or serious physical abuse" because serious physical abuse exists in all murders. (Dkt.

MEMORANDUM ORDER - 9

No. 139, p. 14).  The Government counters that § 3592(c)(6) "expressly allows a jury in making its decision whether to impose the death penalty to consider whether 'the defendant committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victim.'" (Dkt. No. 168, p. 36).  Courts who have considered this argument have reached a conclusion contrary to the argument of the defense and determined that this statutory aggravating factor properly narrows the class of people eligible for he death penalty.  See Bourgeois, 423 F.3d at 511 (noting that "the factor indisputably narrows the class of murderers who are eligible for the death penalty and is sufficiently specific to pass constitutional muster"); Jones, 132 F.3d at 249-50; Frank, 8 F.Supp.2d at 277-78.

The same is true of the Defendant's argument that § 3592(c)(6) is unconstitutionally vague; several courts have concluded that this statutory aggravating factor is not vague.  See e.g. United States v. Chanthadara, 230 F.3d 1237, 1262 (10th Cir. 2000) (concluding this factor is not unconstitutionally vague so long as the jury is instructed properly); Paul, 217 F.3d at 1001; United States v. Hall, 152 F.3d 381 (5th Cir. 1998); Jones, 132 F.3d at 249-50; United States v. Nguyen, 928 F.Supp. 1525, 1533-34 (D. Kan. 1996). The "Supreme Court has held that this aggravator would be vague if it were not for its qualifying language."  Jones v. United States, 527 U.S. 373, 377 (1999).  "In addition, appropriate jury instructions would be sufficient to cure any vagueness in the aggravator as alleged."  United States v. Roman, 371 F.Supp.2d 36, 49 (D. Puerto Rico May 19, 2005) (citing Maynard v. Cartwright, 486 U.S. 356, 365 (1988)).  Accordingly, the Court denies the motion as to this basis.

MEMORANDUM ORDER - 10

D.    **Prior Conviction of Violent Felony Involving Firearm and Sexual Offense violates the Sixth and Eighth Amendments**

In 1980 the Defendant was charged in juvenile court in Pierce County, Washington State, Case No. CR 55116, with rape.  Although the Defendant was seventeen at the time, the case was transferred to adult court where he was tried and convicted of the offense as an adult.  This 1980 conviction is the basis for the following statutory aggravating factors in this case:

> As to Counts One and Seven, previous conviction of violent felony involving firearm (18 U.S.C. § 3592(c)(2)).
>
> As to Count Five, prior conviction of sexual assault or child molestation (18 U.S.C. § 3592(c)(15)).

The Defendant challenges that the use of these statutory aggravating factors in this case violates the Sixth and Eighth Amendments.

1.    **Violation of the Sixth Amendment**

The Defendant asserts that the Government's use of a prior conviction for conduct occurring when the Defendant was a minor as a statutory aggravating factor violates the Sixth Amendment because a jury did not find beyond a reasonable doubt that the Defendant should be tried as an adult, which is a fact increasing the possible penalty beyond the statutory maximum.  This argument is foreclosed by United States v. Juvenile, 451 F.3d 571, 576 n. 3 (9th Cir. 2006); United States v. Miguel, 338 F.3d 995 (9th Cir. 2003).  Accordingly the motion is denied on this basis.

2.    **Violation of the Eighth Amendment**

The Defendant argues the decision in Roper v. Simmons, 543 U.S. 551 (2005) and the Eighth Amendment preclude the use of the Defendant's actions taken as a juvenile as an aggravating factor to support a sentence of death.  The Government contends that this argument takes Roper too far and

goes on to distinguish <u>Roper</u> from this case, maintaining that the use of the 1980 rape conviction is appropriate in this case.

In <u>Roper</u>, the Supreme Court held that execution of individuals who were under the age of eighteen at the time of their capital crimes is prohibited by the Eighth and Fourteenth Amendments. <u>Id.</u> In making this determination, the Supreme Court identified three differences between juveniles and adults and concluded that juveniles are categorically not among those individuals to whom capital punishment is limited. <u>Id.</u> at 568-69. The Supreme Court's concerns in <u>Roper</u> regarding imposition of capital punishment upon a minor are not present in this case. The Defendant was over the age of eighteen at the time of the conduct making up the charges in this case for which the Government alleges the death penalty is appropriate. Therefore, the Court concludes that the Government's use of the Defendant's adult conviction for actions taken while he was a juvenile are not precluded by the principles in <u>Roper</u>. Whether or not this evidence is ultimately admitted is a different question not decided in this order.

III.    <u>Non-Statutory Aggravating Factors</u>

The non-statutory aggravating factors alleged in this case are the impact on the victim and the victim's family, 18 U.S.C. § 3593(a)(2) and the future dangerousness of the Defendant. The Defendant argues these non-statutory factors fail to satisfy the constitutional and statutory requirements. (Dkt. No. 139, p. 24).

"Through interpretation of the Federal Death Penalty Act and the rulings of the U.S. Supreme Court, the federal courts have arrived at a three-part test to guide their discretion in evaluating nonstatutory aggravating factors." <u>United States v. Gilbert</u>, 120 F.Supp.2d 147, 150 (D. Mass. 2000) (citing <u>United States v. Davis</u>, 912 F.Supp. 938, 943 (E.D.La. 1996)); <u>see also</u> <u>Fell</u>, 372

MEMORANDUM ORDER - 12

F.Supp.2d at 763.  "First, the information must be relevant.  The provision on nonstatutory aggravating factors allows the introduction only of relevant information (of which the Government has given notice) that may tend to make the death penalty more appropriate."  Id. (citing 18 U.S.C. § 3593(a)(2)) (quotations omitted).  "Second, the information must meet the heightened standard of reliability the Supreme Court has required in death penalty cases."  Id.  (citing Ford v. Wainwright, 477 U.S. 399, 410-11 (1986); Spaziano v. Florida, 468 U.S. 447, 456 (1984)).  "Finally, even if relevant and reliable, proposed aggravating factors may be excluded if their probative value is outweighed by the danger of unfair prejudice to the defendant, confusion of the issues, or a likelihood that the jury will be misled."  Id. (citing 18 U.S.C. § 3593(c)).

Non-statutory aggravating factors must be relevant and meet the heightened standard of reliability required in death penalty cases.  Fell, 372 F.Supp.2d at 763 (citing cases).  A relevant factor means "that it must be sufficiently relevant to the consideration of who should live and who should die."  Id.  ("Aggravating factors in death penalty cases must be "particularly relevant to the sentencing decision," not merely relevant, in some generalized sense, to whether the defendant might be considered a bad person.) (citing Gregg v. Georgia, 428 U.S. 153, 192 (1976)).  "[A]n aggravating factor is invalid if it cannot be established by reliable evidence."  Fell, 372 F.Supp.2d at 763 (citing Gilbert, 120 F.Supp.2d at 153).  Furthermore, because death penalty cases are inherently different, the Supreme Court requires that "factfinding procedures aspire to a heightened standard of reliability" in the determination that death is the appropriate punishment in a specific case.  Ford, 477 U.S. at 411 (citations omitted).  The Supreme Court "explained that the need for greater reliability in the selection of an appropriate punishment entails not stricter evidentiary rules, but the assurance of 'individualized sentencing' once a defendant is eligible for the death penalty."

United States v. Fields, 483 F.3d 313, 336 (5th Cir. 2007) (citing Woodson v. North Carolina, 428

U.S. 280, 304 (1976)).  Thus, "any aggravating factor should be excluded if it is based on evidence

whose probative value is outweighed by the danger of unfair prejudice to the defendant, confusion

of the issues, or a likelihood that the jury will be misled."  Fell, 372 F.Supp.2d at 763; 18 U.S.C. §

3593(c).  The Supreme Court has also stressed the importance of presenting to the jury all relevant

evidence in a capital case.  See Jurek v. Texas, 428 U.S. 262, 276 (1976); Lockett v. Ohio, 438 U.S.

586, 608 (1978); Barefoot v. Estelle, 463 U.S. 880, 896 (1983); Payne v. Tennessee, 501 U.S. 808

(1991).

The FDPA employs a "procedural framework at capital sentencing that adequately balances

(1) the requisite access to a wide range of information to achieve individualized sentences and (2)

the need to protect defendants from being sentenced on the basis of misinformation of a

constitutional magnitude."  Fields, 483 F.3d at 338 (quotations omitted) (discussing the application

of the Confrontation Clause during a capital sentencing hearing).  Though the Federal Rules of

Evidence do not apply at capital sentencing, the FDPA "provides that a defendant may rebut any

information received at a hearing and must be given a fair opportunity to present argument as to the

adequacy of the information presented to establish the existence of any aggravating or mitigating

factor."  Id.; 18 U.S.C. § 3593(c).  "Additionally, under the FDPA a sentencing judge may exclude

information if its probative value is outweighed by the danger of creating unfair prejudice, confusing

the issues, or misleading the jury."  Id.

     A.    Unlimited Prosecutorial Discretion is an Unlawful Delegation of Legislative
              Authority and Results in Arbitrary and Capricious Death Sentences

Because there are no restrictions placed upon the prosecutor's selection of the § 3592(c) non-

statutory aggravating factors, the defense argues, the death penalty is imposed arbitrarily, capriciously, and at random in violation of the Eighth Amendment. The defense argues that the non-statutory aggravating factors "ultimately become indistinguishable from the statutory aggravating factors in the jury's final weighing of whether to impose life or death" and, therefore, there is an improper delegation of authority by allowing the prosecution to chose which non-statutory aggravating factors to apply in a given case when it is the duty of Congress to define and punish crimes. (Dkt. No. 139, p. 27).

These argument have been considered and rejected by various other courts. See, e.g., Cooper, 91 F.Supp.2d at 100 ("The provision of the FDPA allowing for the use of non-statutory aggravating factors is not facially invalid."); Frank, 8 F.Supp.2d at 265 ("[T]he use of such non-statutory aggravating factors--far from injecting arbitrariness into the process--is to be encouraged."). This Court is in agreement with these decisions. The non-statutory aggravating factors function to provide the sentencing jury with all possible reliable and relevant information upon which to make the requisite individualized determination as to whether that particular defendant should be selected for the death penalty. See Zant, 462 U.S. at 878. The FDPA's structure places the necessary limits and restrictions upon its application to guide both the prosecution and the jury to satisfy the constitutional requirements. See Tuilaepa, 512 U.S. at 972 (the aggravator must not be vague); Creech, 507 U.S. at 474 (the aggravator cannot be overbroad); United States v. Davis, 912 F.Supp. 938, 943 (E.D.La. 1996) (the aggravator must be "sufficiently relevant"); United States v. Friend, 92 F.Supp.2d 534, 541 (E.D.Va. 2000) (the aggravator may be excluded "if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury."); McCullah, 76 F.3d at 1111-12 (aggravating factors cannot

impermissibly duplicate each other).  Thus, "non-statutory aggravating factors must be both relevant and reliable, while they may not be vague, duplicative, or perhaps, overbroad. If the government charges non-statutory aggravating factors that violate these requirements, the court can strike them from the [death notice].  This process adequately protects [a] defendant's rights."  <u>Cheever</u>, 423 F.Supp.2d at 1207.  Those courts who have considered the constitutionality of this structure have repeatedly approved this process.  <u>See, e.g.</u>, <u>Zant</u>, 462 U.S. at 878; <u>United States v. Glover</u>, 43 F.Supp.2d 1217, 1228-29 (D.Kan. 1999); <u>Nguyen</u>, 928 F.Supp. at 1538.  Based on the foregoing, the Court concludes the Defendant's arguments raised here as to the use of non-statutory aggravating factors is without support and denied.

The Defendant further argues that the decision in <u>Ring v. Arizona</u>, 536 U.S. 584 (2002) requires that the non-statutory aggravating factors as well as the statutory aggravating factors be treated as elements of the crime and must be defined by Congress.  This argument has also been considered and rejected by several courts.  <u>See e.g.</u> <u>Higgs</u>, 353 F.3d at 321-322; <u>Jones</u>, 132 F.3d at 240; <u>Nguyen</u>, 928 F.Supp. at 1537; <u>Chanthadara</u>, 928 F.Supp. at 1057.  The non-statutory aggravating factors are not used at the initial determination of whether a defendant is eligible for the death penalty, but only applicable as additional information to the jury in sentencing.  <u>See</u> <u>United States v. Bradley</u>, 880 F.Supp. 271, 284 (M.D.Pa. 1994).  Moreover, the Court has rejected this argument in another order.  (Dkt. No. 283).  Accordingly, the motion to dismiss on this basis is denied.

       B.    <u>Ex Post Facto Clause</u>

Although cases have ruled to the contrary, the defense maintains that allowing the Government to define the non-statutory aggravating factors for a given case violates the ex post

facto clause by allowing the Government to define the crime retroactively.  (Dkt. No. 139, p. 28-29).

The Government responds that because non-statutory aggravating factors are not elements of the

crime, their use does not violate the ex post facto clause.

The ex post facto clause is implicated only by "laws that 'retroactively alter the definition

of crimes or increase the punishment for criminal acts.'"  <u>California v. Morales</u>, 514 U.S. 499, 504

(1995) (quoting <u>Collins v. Youngblood</u>, 497 U.S. 37, 43 (1990)); <u>see also</u> Article I, Section 9, clause

3 of the United States Constitution ("No...ex post facto law shall be passed").  The non-statutory

aggravating factors do not define the crimes; as such, their use does not violate the ex post facto

clause.  <u>See e.g.</u> <u>Higgs</u>, 353 F.3d at 321-322; <u>Nguyen</u>, 928 F.Supp. at 1538.  Accordingly, the ex

post facto clause is not violated and the motion is denied.

     C.     <u>Victim Impact Aggravator and Narrowing of the Class of Persons for Whom the
Death Penalty is Available</u>

The Defendant argues the victim impact non-statutory aggravator "does nothing to narrow

the class of murders for whom the death penalty is available since victim impact evidence

automatically flows from the commission of any offense under § 3591."  (Dkt. No. 139, p. 30).

Here, the defense contends, the Government has failed to meet the minimum pleading requirement

that the factor is in fact aggravating in that it is worse than any just any murder.  Where "the harm

shown by the victim impact evidence is simply the harm implicit in any murder, it violates the

Eighth Amendment, as well as the statute, to permit the jury to weigh it once again in deciding

whether to impose the death penalty."  (Dkt. No. 139, p. 31).  The weight of authority has rejected

this argument.  <u>See, e.g.</u>, <u>Chanthadara</u>, 230 F.3d at 1273-74 (holding that argument that victim

impact evidence does "not narrow the class of offenses for which the death penalty may be imposed"

MEMORANDUM ORDER - 17

is "foreclosed by binding case law."); Jones, 527 U.S. at 402.  The FDPA specifically allows a sentencing jury to consider non-statutory aggravating factors at the Selection Phase including victim impact.  See 18 U.S.C. § 3593(a).  Thus, victim impact evidence may be used to show the specific harm caused by the crime so long as such evidence is not "so unduly prejudicial that it renders the trial fundamentally unfair."  Payne, 501 U.S. at 825.  Accordingly, the Court concludes based on the above case law that proper victim impact evidence is constitutionally allowable in a death penalty case.

   D. Victim Impact Evidence under the Eighth Amendment's Heightened Standard of Reliability and 18 U.S.C. § 3593

  The Defendant argues the victim impact evidence should be excluded because it fails to meet the Eighth Amendment's heightened standard of reliability. (Dkt. No. 139, p. 31).  The Government argues that the victim impact evidence is both relevant to this case and satisfies the heightened reliability standard.  The authority on this argument runs contrary to the defense's position.  Fields, 483 F.3d at 340 (citing Payne, 501 U.S. at 825) ("In Payne...the Court held only that the Eighth Amendment does not erect a per se bar to victim impact evidence and that such evidence is admissible unless it is 'so unduly prejudicial that it renders the trial fundamentally unfair.'").  This Court also concludes that the non-statutory aggravating factor of victim impact is not per se precluded by the heightened evidentiary requirements of the Eighth Amendment.

  The defense further argues because of the overwhelmingly prejudicial impact of victim impact evidence, greater specificity is required of the Government.  (Dkt. No. 139, p. 31).  The Defendant has separately filed a motion seeking greater specificity as to the victim impact evidence.  In ruling on that separate motion, the Court ordered the Government to provide the defense with an

MEMORANDUM ORDER - 18

outline of its proposed victim impact evidence which summarizes the extent and scope of the injuries and loss suffered by each victim, his or her family members, and other relevant individuals on or before April 1, 2008.  (Dkt. Nos. 266, 294).  Whether the victim impact evidence the Government ultimately offers in this case is admissible is not decided in this order.

E.      The Future Dangerousness Factor

The Government has alleged as a non-statutory aggravating factor that the Defendant presents a future dangerousness to the lives and safety of others based on his continue a pattern of violence,  admission of other crimes against children, and his flight risk.  The defense argues this factor is unconstitutional and should be dismissed because 1) the concept of future dangerousness is too broad and vague and 2) the factor is duplicative of the underlying crimes, the other non-statutory aggravating factors, and of the future dangerousness factor itself.  Alternatively, if the Court does not dismiss this factor, the defense asserts the Government's evidence should be limited to future dangerousness in the prison setting.

1.      Constitutionality of the Future Dangerousness Factor

The defense challenges the constitutional validity of the factor arguing: 1. due process prohibits punishing a defendant for potential injury to strangers to the litigation; 2. the Constitution prohibits the introduction of prior unadjudicated criminal acts; 3. Congress did not intend for future dangerousness to be considered as a separate aggravating factor; 4. this factor applies in every capital case; and 5. the factor is based on highly unreliable predictions of future dangerousness.  The Government asserts that several other courts have deemed this factor to be constitutional and that it has avoided any duplication in this case by alleging future dangerousness as a non-statutory aggravating factor and including specific facts and characteristics in the Death Penalty Notice.  (Dkt.

No. 168, p. 48) (citing <u>Simmons</u>, 512 U.S. at 163-64; <u>Jurek</u>, 428 U.S. at 272-73 and other cases).

Other courts have uniformly upheld the use of future dangerousness as a non-statutory aggravating factor.  <u>See</u> <u>United States v. Rodriguez</u>, 389 F.Supp.2d 1135, 1144 (D.N.D. Sept. 27, 2005) (citing <u>Bin Laden</u>, 126 F.Supp.2d at 303-04 (citations omitted)); <u>see also</u> <u>Jurek</u>, 428 U.S. at 274-76.  This Court can find no reason to conclude otherwise.  As to the Defendant's argument that the evidence to be offered in this case is unreliable based on the principles of <u>Daubert</u> and because no expert witnesses have been disclosed, the Court finds this argument to be moot.  Since the filing of this motion the Government has disclosed to the defense two experts who they will offer to testify as to the future dangerousness of the Defendant.  This testimony will be offered during the Selection Phase.  The Court has previously ruled that the Rules of Evidence will not apply at the Selection Phase and that the § 3593(c) standard will govern the admissibility of evidence which states that evidence may be excluded "if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury."  18 U.S.C. § 3593(c).  Such evidence must still be reliable and relevant.  <u>See</u> <u>United States v. Lee</u>, 374 F.3d 637, 648 (8th Cir. 2004); <u>United States v. Chong</u>, 98 F.Supp.2d 1110, 1116 (D. Haw. 1999).  Though the principles of <u>Daubert</u> may turn out to be helpful in this case, a <u>Daubert</u> hearing is not required in order for the Court to apply the § 3593(c) standard.  Thus, to the extent it becomes useful, the Court may consider <u>Daubert</u>'s teachings but, at this time, no such hearing is necessary.  <u>See</u> <u>United States v. Alatorre</u>, 222 F.3d 1098, 1105 (9th Cir. 2000) (A full hearing isn't necessary so long as the Court allows counsel "to explore the relevance and reliability of the proposed testimony" prior to its admission.).

    2.    <u>Limit Evidence to Prison Setting</u>

The only available punishment for three of the charges in this case is either death or life

imprisonment without the possibility of parole.  As a result, the Defendant has argued that the only possible future dangerousness the Defendant presents is danger while incarcerated and, therefore, any future dangerousness evidence should be restricted to the prison context.  The Government counters that the evidence is still relevant as there is always a chance that the Defendant may escape from prison and many of the acts of violence the Defendant committed in this case occurred while he was on flight from other charges.

Where, as here, the Government "puts the defendant's future dangerousness in issue, and the only available alternative sentence to death is life imprisonment without possibility of parole, due process entitles the defendant to inform the capital sentencing jury--by either argument or instruction--that he is parole ineligible." Simmons v. South Carolina, 512 U.S. 154, 178 (1994) (O'Connor, J., concurring in the judgment); Shafer v. South Carolina, 532 U.S. 36, 51 (2001); Kelly v. South Carolina, 534 U.S. 246 (2002).  In such cases courts "have uniformly held that the government is limited to presenting evidence on future dangerousness in the context of life imprisonment." United States v. Rodriguez, 2006 WL 487117 at *5 (N.D.N. Feb. 28, 2006) (citing Llera Plaza, 179 F.Supp.2d at 488; United States v. Cooper, 91 F.Supp.2d 90, 111-12 (D.D.C. 2000); United States v. Peoples, 74 F.Supp.2d 930, 931 (W.D.Mo. 1999)); see also United States v. O'Reilly, 2008 WL 284003 at *7 (E.D. Mich Feb. 1, 2008) (slip opinion).  Based on the foregoing, the Court will limit the Government's evidence as to the non-statutory aggravating factor of future dangerousness in this case to the context of life imprisonment.  The Government's argument that there is a possibility that the Defendant may escape from prison is illusory and too speculative to justify expanding the scope of this evidence. Rodriguez, 2006 WL 487117 at *5.  In making this ruling, the Court does not opine as to the ultimate admissibility of the particular evidence that will

MEMORANDUM ORDER - 21

be offered at the Selection Phase.

## ORDER

Based on the foregoing and being fully advised in the premises, the Court **HEREBY GRANTS IN PART AND DENIES IN PART** Defendant's Motion (Dkt. No. 139).  The motion is granted as to the admissibility of evidence by the Government on the non-statutory aggravating factor of future dangerousness; such evidence shall be limited to the context of life imprisonment. The remainder of the motion is denied or moot as detailed above.

DATED:  **March 14, 2008**

Honorable Edward J. Lodge
U. S. District Judge

MEMORANDUM ORDER - 22