IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In re: | ) CASE NO. MC 08-6420-S-EJL |
| THE SPOKESMAN-REVIEW, THE | ) |
| ASSOCIATED PRESS, THE IDAHO | ) RELATED CASE NO. CR07-23-N-EJL |
| STATESMAN, IDAHO PRESS CLUB, | ) |
| IDAHO NEWSPAPER FOUNDATION, | ) MEMORANDUM ORDER |
| IDAHOANS FOR OPENNESS IN | ) |
| GOVERNMENT, IDAHO ALLIED DAILIES, | ) |
| IDAHO STATE BROADCASTERS | ) |
| ASSOCIATION, BOISE STATE RADIO, | ) |
| KHQ-TV, KREM-TV, KXLY-TV, KTVB-TV, | ) |
| KTRV-TV, KBCI-TV and KIVI-TV | ) |
| Movants. | ) |
| | ) |

Before the Court is a request by sixteen Media outlets (collectively "the Media") asking that the courtroom be open during the proceedings in <u>United States of America v. Joseph Edward Duncan, III</u>, CR07-23-N-EJL.  In particular, the Media asks that the proceedings be open to the public during the testimony of the minor victim and when certain graphic video evidence is presented.  The parties have filed their briefing and the matter is now ripe for the Court's consideration.

Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record.  Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this motion shall be decided on the record before this Court without oral argument.  Local Rule 7.1(d)(2)(ii).

**Standard of Law**

I.     <u>First Amendment</u>

The First Amendment protects the right of the public and the press to attend criminal trials. <u>Globe Newspaper Co. v. Superior Court</u>, 457 U.S. 596 (1982); <u>Richmond Newspapers, Inc. v. Virginia</u>, 448 U.S. 555, 558-81 (1980) (plurality opinion).  The Supreme Court has applied this First Amendment right of access to criminal proceedings which have historically been, and logically should be, open to the public; allowing the public access except in those instances where closure is essential to serve a higher interest and where closure is narrowly tailored.  <u>See</u> <u>Press-Enterprise Co. v. Superior Court</u>, 478 U.S. 1, 7-9 (1986) (<u>Press-Enterprise II</u> ); <u>Press-Enterprise Co. v. Superior Court</u>, 464 U.S. 501 (1984) (<u>Press-Enterprise I</u>).  This First Amendment right guarantees that the press and the public "have a presumed right  of access to court proceedings and documents." <u>Oregonian Pub. Co. v. United States Dist. Court for Dist. Of Oregon</u>, 920 F.2d 1462, 1466 (9th Cir. 1990) (citing <u>Press-Enterprise I</u>, 464 U.S. at 510).  "This presumed right can be overcome only by an overriding right or interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest."  <u>Id.</u>

In determining whether the First Amendment right of access extends to a proceeding, the Court must decide:  (1) whether the type of proceeding at issue has traditionally been conducted in an open fashion and (2) whether public access to the proceeding would serve as a curb on prosecutorial or judicial misconduct or would further the public's interest in understanding the criminal justice system.  <u>Oregonian Publishing</u>, 920 F.2d at 1466 (citing <u>Press-Enterprise II</u>, 478 U.S. at 8-9; <u>Globe Newspaper</u>, 457 U.S. at 605-06; <u>United States v. Brooklier</u>, 685 F.2d 1162,

1167-71 (9th Cir. 1982)).  Where the First Amendment right of access is implicated in a case, "[t]he Supreme Court has made clear that criminal proceedings and documents may be closed to the public without violating the first amendment only if three substantive requirements are satisfied: (1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." Id. at 14466-67.

Before the Court can order a criminal proceeding be closed:  (1) those excluded from the proceeding must be afforded a reasonable opportunity to state their objections and (2) the reasons supporting closure must be articulated in findings. Oregonian Publishing, 920 F.2d at 1466. "An order of closure should include a discussion of the interests at stake, the applicable constitutional principles and the reasons for rejecting alternatives, if any, to closure." Id. (citing Brooklier, 685 F.2d at 1167-68; In re Washington Post, 807 F.2d at 390-91). "The interest [to be protected] is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." Id. " The court must not base its decision on conclusory assertions alone, but must make specific factual findings." Id. (citing Press-Enterprise II, 478 U.S. at 13-15).

## II.   Sixth Amendment

The Defendant has a Sixth Amendment right to a public trial that must also be considered. "The Sixth Amendment guarantees that a defendant shall enjoy 'the right to a speedy and public trial.'  The public trial guarantee was created for the benefit of defendants.  It discourages perjury and ensures that judges, lawyers and witnesses carry out their respective functions responsibly."

United States v. Sherlock, 962 F.2d 1349, 1356 (9th Cir. 1989) (quoting Waller v. Georgia, 467 U.S. 39, 46 (1984)) (citations omitted).  "Openness in court proceedings may improve the quality of testimony, induce unknown witnesses to come forward with relevant testimony, cause all trial participants to perform their duties more conscientiously, and generally give the public an opportunity to observe the judicial system."  Id.  (citing Gannett Co. v. DePasquale, 443 U.S. 368, 383 (1979); Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 605-06 (1982)).  "The right to a public trial, however, is not absolute and must give way in some cases to other interests essential to the fair administration of justice."  Sherlock, 962 F.2d at 1356 (citations omitted).

In Waller v. Georgia, the United States Supreme Court adopted the following test for determining when the defendant's right to a public trial is outweighed by other considerations: (1) a party seeking to close a court proceeding must advance an overriding interest that is likely to be prejudiced; (2) the closure must be no broader than necessary to protect that interest; (3) the trial court must consider reasonable alternatives to closing the proceeding; and (4) it must make findings adequate to support the closure. 467 U.S. 39, 46; see also Bell v. Jarvis, 236 F.3d 149, 178 (4th Cir. 2000).

**Analysis**

I.      Testimony of the Minor Victim:

The Media asserts an open courtroom during the testimony of the minor victim is important to allow the public to observe and understand the impact this key and crucial testimony including how the minor victim conducts herself during the testimony as well as how counsel, the jury, and Mr. Duncan react.  The Media's request points to the importance of public access to the courtroom

Memorandum Order - 4

during this rare death-penalty case so that the public an fully comprehend how the judicial process works in this unique proceeding.  The fact that death penalty proceedings are rare and the consequences are sever, the Media contends, enhances the public's interest in the proceedings.  The defense has previously stipulated to closing the courtroom during the minor victim's testimony.

The Government objects to the request and seeks closure of the courtroom during the testimony of the minor victim in this matter to all persons, including the Media, with the exception of witnesses, court personnel, the parties, and attorneys.  The Government argues this is necessary in order to preserve the personal dignity of the minor victim, prevent undue embarrassment, and safe-guard the minor victim's physical and psychological well-being.  Closing the courtroom, the Government argues, advances society's interest in protecting young victims of violent crime from further psychological harm as well as the minor victim's personal privacy interests.[1]  The Government proposes closing the courtroom and providing a transcript of the testimony to the public; arguing this procedure for introducing the minor victim's testimony is narrowly tailored to ensure the closure is no broader than necessary to protect the compelling interests in this case and that no reasonable alternatives exist. In addition, the Government contends that closing the

---

[1]

The Government cites to 18 U.S.C. § 3509(e) which states:

> (e) Closing the courtroom.--When a child testifies the court may order the exclusion from the courtroom of all persons, including members of the press, who do not have a direct interest in the case. Such an order may be made if the court determines on the record that requiring the child to testify in open court would cause substantial psychological harm to the child or would result in the child's inability to effectively communicate. Such an order shall be narrowly tailored to serve the Government's specific compelling interest.

courtroom will ensure the accuracy and completeness of the minor victim's testimony as she will

be more able to testify openly.  See 18 U.S.C. § 3509(e).

A.  Compelling Interest

Recalling the details of the crimes in front of a group of disinterested peers will cause the

minor victim in this case undue embarrassment, as well as psychological and possible physical harm.

The facts alleged in this case that will be revealed during the testimony of the minor victim will

relate to the multiple traumatic events experienced by the minor victim when she was eight years

of age including the homicide of several family members, the abduction of she and her brother for

several weeks during which time she and her brother were sexually assaulted and exploited, and the

eventual murder of her brother.  The parties have previously filed sealed affidavits in this case which

include opinions of medical personnel who have interviewed and evaluated the minor victim.[2]

(CR07-23-N-EJL, Dkt. No. 30).  These affidavits reflect that the minor victim suffers from ongoing

and overwhelming concerns regarding this trial and further dissemination of information to the

public regarding the substance of her testimony.  The treatment providers are concerned about the

re-exposure to the traumatic events that her testimony will require.  The Court also notes the

---

[2]

The Media has filed a motion for access to these records and others.  These affidavits are appropriately filed under seal as they relate to evidence that may be presented in this matter.  The Court has a legitimate concern with protecting the compelling interests of a fair trial by impartial jurors.  Unsealing of these documents would potentially reveal testimony and/or evidence which would jeopardize the interest in a fair and impartial trial.  There are no other less restrictive alternatives available at this time.  Though the media is not privy to these documents, the media's interests are well represented in their briefing and the Court has considered the same in issuing its ruling denying the Media's request in a separate Order entered in MC08-6420-S-EJL.  The Court incorporates the reasoning of that Order here as applicable.

ongoing health concerns of the victim's father has likely caused additional stress to the victim. These concerns regarding the well-fare of the minor victim in this case are

compelling.

   B.   Weighing the Interests and Alternatives to Closure

   Having found a compelling interest exists, the Court must now consider whether that compelling interest outweighs the public's right of access and whether there are narrowly tailored alternatives to completely closing the courtroom.  The "circumstances under which the press and public can be barred from a criminal trial are limited; the State's justification in denying access must be a weighty one.  Where, as in the present case, the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." Globe Newspaper, 457 U.S. at 604-06 (citations omitted).  The Media argues that the minor victim's compelling interest does not outweigh the public's right of access because the identity of the minor victim and general nature of the crimes has already been made public, closing the courtroom will still require the minor victim to testify before several people, and there are alternatives to closing the courtroom available.

   1.   Identity and Prior Publicity

   The Media argues that the minor victim's privacy will not be protected by closing the courtroom where her identity and the general nature of the abuse alleged to have occurred have already been publicly disclosed.  The Media notes that the minor victim's photograph has been widely disclosed and she has been interviewed by the Media.

Memorandum Order - 7
08/orders/duncan_media_sealed_hearings

It is true that this case has received national attention in the public which will likely intensify when the sentencing hearing begins.  Much of the attention is focused on this minor victim and the testimony she will give.  Having considered the nature of the testimony, the age of the minor victim, and the comments of the medical professionals regarding the increasing stress the attention from this case has put on the minor victim; the Court finds the compelling interests in protecting the minor victim from further harm and embarrassment significantly outweighs the First Amendment interests of the public.  The minor victim not only has been dealing with the ongoing stress of the events about which she will testify, but also the increasing attention from her peers at school and the public in general.  The victim's fears regarding the coverage of her testimony is certain to occur, not mere speculation.  The media attention of the related state case was extensive and was focused in large part on this victim.

Because much of this case has already been made public, however, does not mean that further harm will not result to the minor victim where the public is allowed greater access to her private and personal suffering.  Just the opposite, because these facts have already been revealed to the public demonstrates that the public's interest in access is dampened because it is already privy to many of the relevant facts and gritty details of this minor victim's testimony.  All that is left is the incessant desire to watch the minor victim have to again relay the traumatic events in greater detail.  This is wholly unnecessary and serves only to further sensationalize an already horrific event in this young child's life which she and she alone will have to live with for the rest of her life.  Her testimony will be forever memorialized in the written transcript, which the Media and public will

have access to and which will be more than sufficient to satisfy the right of access.

2.  <u>Testifying in Front of Court Personnel</u>

The Media argues that closing the courtroom will not protect the minor victim's privacy because she will still be testifying in front of many individuals including court personnel, the jury, counsel, and Mr. Duncan.  The Media states that because the minor victim will have to testify before this number of individuals, "[i]t is not clear...how testifying perhaps before additional members of the public would create any different impact on her, particularly where she has already been interviewed on television and her identity is publicly known."  Stated differently, since the damage to this young victim has already been done, what is the harm in causing a little more damage?  This argument holds no weight with this Court.  Closing the courtroom to only necessary persons is the narrowest means available for protecting the compelling interests of the minor victim even though it requires the victim to testify in front of court personnel, the jury, counsel, and Mr. Duncan.  The only interest acknowledged by the Media as a valid interest appears to start and end with the protection of the identity of the minor victims; because their names and the general nature of the crimes have been publicized already the Media can see no reason not to be allowed to view the entire process.  This position, however, ignores the victim's compelling interests noted above.

The Court does not doubt nor minimize the Media and the public's right to access and interest in viewing judicial processes particularly ones such as this which carry the ultimate penalty.  However, the Court could not disagree more with the Media's position.  The fact that much of this case including the names and identities of the minor victims, pictures, and the general nature of the

Memorandum Order - 9
08/orders/duncan_media_sealed_hearings

crimes committed against them has been exposed in the public is not reason enough for the Court to conclude that the public's interest outweighs the compelling interest such that the testimony of the minor victim should be held in open court. Accordingly, the courtroom must be closed during the testimony of the minor victim.

The Court is sensitive to the public and the media's First Amendment rights and interests in open access and has considered these rights in reaching its ruling. However, the compelling interests of the minor victim are not extinguished or eliminated simply because some information has already been aired in the public. The Court is not attempting to rewind history and expunge the identity of the minor victim from the public's mind or to keep secret the nature of the abuse suffered by the minor victim. What is done is done. The interests of the minor victim that the Court concludes are compelling and that outweigh the interest of the public at this stage have to do with the further harm the minor victim will suffer. The harm goes beyond mere embarrassment or prudishness. The damage to the minor victim's mental, physical, and psychological well-being that is likely to result from having to testify before the public is very real and lasting. While the Court does not believe that in every case involving a minor victim that closing the courtroom is necessary, this case presents precisely the circumstances that demand such action. If the compelling interests in this case are not sufficient to warrant closing the courtroom, the Court can think of no case where a courtroom could be closed.

3. <u>Alternatives</u>

The Media advocates for the Court to employ less restrictive measures to avoid closing the courtroom such as giving a cautionary instruction, testimony by closed-circuit television, or a

Memorandum Order - 10

videotaped deposition.  The Media argues that open courtrooms enhance the quality and safeguards the integrity of the judicial process by assuring that proceedings are conducted fairly, discourages perjury, misconduct, and bias decisions.  Again, the Media contends that these interests are particularly applicable here given the controversial nature of the death penalty.

The Court agrees that open courtrooms and proceedings work to assure the quality and safeguard the integrity of the judicial process.  See Press-Enterprise II, 478 U.S. at 9 (quoting Press-Enterprise I, 464 U.S. at 501); Sherlock, 962 F.2d at 1356 (citations omitted).  The alternatives offered by the Media here, however, do not address the concerns at play in this case.  Simply instructing the public to conduct themselves accordingly addresses the impact an outburst might have on either the jury or the witness.  While this is a valid concern in any trial, the Court has not relied upon this concern in deciding to close the courtroom in this case because it does not address or resolve the compelling interests the Court has found that outweigh the public's First Amendment right of access in this case.

The Court is still considering allowing the minor victim to testify from a separate room via closed circuit television, particularly in light of Mr. Duncan's election to proceed *pro se*.  This alternative form of testimony is usually employed to address circumstances where a witness is unable to testify in the presence of the defendant; which is undoubtedly true of the minor victim in this case.  However, this alternative also does not resolve the compelling interests in this case that the Court has found to outweigh the public's First Amendment right of access in this case.  The minor victim's fears regarding testifying are not focused entirely on the mere presence of the public in the courtroom but, instead, hinge on the further dissemination of the details of the manner of her

Memorandum Order - 11
08/orders/duncan_media_sealed_hearings

testimony.  Knowing the Media is watching and reporting during her testimony, whether from a separate location or in the same location, is a concern the Court finds it to be a compelling one given the strong likelihood of further injury to the minor victim as noted above.

However, the public right of access as to the substance of the testimony is not outweighed by the minor victim's interests.  Thus, the written transcript of the testimony will be provided to the public as soon as possible following the minor victim's testimony.  The strongest argument advanced by the Media is the public's right to comprehend and understand the basis upon which the jury will decide whether to impose the death penalty.  This interest goes to the core of public access and is not outweighed by the minor victim's interests.  This can only be done where the public is privy to the substance of the testimony.  Providing the written transcript of the minor victim's testimony to the public will satisfy the public's interest.  The written record will convey to the public the substance of the testimony including the details of the crimes as well as the actual words the minor victim uses while testifying to describe the crimes.  Actually viewing the reactions and conduct of the court participants, however, is not necessary to further the public's right of access such that it outweighs the compelling interests of protecting the victim's stated interests. Accordingly, the Court concludes that providing the transcript to the public is necessary to fulfill the public right of access.

    C.  Conclusion

    Closing the courtroom during this witness' testimony and providing a written transcript of the same to the media is narrowly tailored to best serve to protect the compelling interests of the victim while still ensuring the public's First Amendment rights are protected.  See Press-Enterprise

Memorandum Order - 12

Co. v. Superior Court, 464 U.S. 501, 512 (1984) ("the constitutional values sought to be protected

by holding open proceedings may be satisfied later by making a transcript of the closed proceedings

available within a reasonable time.").  In reaching this conclusion, the Court has considered other

alternatives to closing the courtroom including the various alternative forms of testimony for child

witnesses outlined in 18 U.S.C. § 3509, the possibility of using alternative devices, and a limited

closure of the courtroom.  In the event the parties are unable to reach an alternative to having the

minor victim testify, her testimony will be necessary for the jury to see as she is the only witness to

most of the conduct alleged against Mr. Duncan.  While providing such testimony will undoubtedly

be difficult, it may prove impossible and harmful to the minor victim where the courtroom contains

members of the public and the media.  As such, the courtroom will be closed during the minor

victim's testimony.

The Media's request to open the courtroom during the minor victim's live testimony or for

alternative procedures is denied.  The Court may reconsider the request to have the minor victim

testify from a separate room in the future.[3]  Regardless of the format for the minor victim's

testimony, the Court will provide a copy of the written transcript to the Court's Media

Representative as soon as possible following the testimony of the minor victim.

III.    Graphic Video Evidence:

The Media also asks that the courtroom remain open during the presentation of the graphic

video tapes in order to allow the public to:  understand the death penalty process, fully comprehend

---

[3] The Court notes the defense's Sixth Amendment Confrontation Clause concerns regarding the use of two-way closed circuit television.  (Dkt. No. 20, p. 6).

Memorandum Order - 13
08/orders/duncan_media_sealed_hearings

what evidence has been presented to the jury for its consideration, and observe the impact that the playing of the video has on the trial participants including the jury, counsel, and Mr. Duncan.  The Media makes clear that they are not seeking a copy of the video tape, but only to observe the video tape as it is presented in Court.  The Government opposes this request.

Though the videos in question are disturbing, they are direct evidence of the crimes and are necessary to the jury's consideration and must be presented to the jury.  The Court is sensitive to the family's interest in maintaining their privacy and the dignity of the victim.  However, ours is an open judicial system that requires a compelling interest that outweighs the lengthy history of public access to open court proceedings.  Unlike the compelling interests noted above as to the surviving minor victim, such interests that outweigh the public's right of access as to the videos have not been shown here.  As such, the courtroom will remain open during the presentation of the videos in question.  The Court will give a cautionary instruction to the jury and to the members of the public who choose to attend.  Because the videos will be played in open court, the Media and the public will not be provided access to or copies of the same.  <u>See</u> <u>Nixon</u> 435 U.S. at 609-10 (no right to physically access and copy the Watergate tapes that had already been played in open court where transcripts of the tapes were available to the media and the public generally).

## ORDER

Based on the foregoing and being fully advised in the premises the Court **GRANTS IN PART AND DENIES IN PART** the Media's request (Dkt. No. 1).  The request is granted as to the graphic video evidence.  The courtroom will be open during the presentation of the video evidence.

The request is denied as to the testimony of the minor victim.  The courtroom will be closed during this testimony of the minor victim with a written transcript being provided to the Media Representative as soon as possible thereafter.

The Clerk of the Court is directed to filed this Order in the normal course in both MC08-6420-S-EJL and CR07-23-N-EJL.  The Clerk shall serve the same upon all parties.

**IT IS SO ORDERED**.



DATED:  **August 5, 2008**

Honorable Edward J. Lodge
U. S. District Judge

Memorandum Order - 15
08/orders/duncan_media_sealed_hearings