WENDY J. OLSON, IDAHO STATE BAR NO. 7634
UNITED STATES ATTORNEY
TRACI J. WHELAN, IDAHO STATE BAR NO. 4416
JUSTIN D. WHATCOTT, IDAHO STATE BAR NO. 6444
ASSISTANTS UNITED STATES ATTORNEY
DISTRICT OF IDAHO
800 E. PARK BLVD., SUITE 600
BOISE, IDAHO 83712-7788
TELEPHONE:  (208) 334-1211
FACSIMILE:  (208) 334-9433

C.J. WILLIAMS, IOWA STATE BAR NO. 9579
ASSISTANT UNITED STATES ATTORNEY
NORTHERN DISTRICT OF IOWA

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 07-CR-00023-N-EJL |
| | ) | |
| Plaintiff, | ) | |
| | ) | **UNITED STATES' REPLY TO** |
| vs. | ) | **DEFENSE COUNSELS'** |
| | ) | **ANSWERING BRIEF** |
| JOSEPH EDWARD DUNCAN, III, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Defendant Joseph Edward Duncan, III, had the capacity to appreciate his position
and to make a rational decision to abandon further litigation when he waived his right to
appeal on November 24, 2008.  Nothing in defense counsel's answering brief shows
otherwise.

Defense counsel's brief is unpersuasive for several reasons: (1) it fails to apply the
standard for determining competency to waive appeal; (2) it fails to address substantive

**United States' Reply to Defense Counsels' Answering Brief** – 1

evidence close in time to the defendant's waiver of appeal that demonstrates his rational decision-making capacity; (3) it ignores the court-appointed experts' experience in competency evaluations and their well-reasoned opinions that the defendant was competent when they examined him; (4) it ignores the defense-retained experts' bias and relies on two experts who did not evaluate the defendant; (5) its cited authority does not support the argument that former defense team members' refreshed recollection testimony is reliable; and (6) it discounts the testimony of Bureau of Prisons psychologists who were trained to observe the kind of behavior defense counsel assert the defendant conspicuously and consistently displayed.

## I. DEFENSE COUNSEL FAIL TO APPLY THE COMPETENCY STANDARD TO THE EVIDENCE

A defendant is competent to waive appeal if he has the capacity to appreciate his position and to make a rational choice whether to continue or abandon further litigation. *Rees v. Peyton*, 384 U.S. 312, 314 (1966); *Mason ex. rel. Marson v. Vasquez*, 5 F.3d 1220, 1224 (9th Cir. 1993). A mental disease, disorder, or defect that substantially affects this capacity can render a defendant incompetent. *Rees*, 384 U.S. at 314.

Defense counsel fail to apply the standard meaningfully. They merely assert that the defendant made delusional statements, that witnesses called by the government should not be credited and that their witnesses should be credited. This does little to show the defendant lacked the capacity to make rational decisions. At best, defense counsel summarily conclude that certain evidence shows the defendant's impaired capacity to make rational decisions. (ECF No. 839 at 2, 49-50).

**United States' Reply to Defense Counsels' Answering Brief** – 2

In addition, defense counsel's repeated assertions that the defendant made delusional statements do not provide a legal basis to find the defendant incompetent. Evidence that a defendant has a mental disease, disorder or defect does not, alone, make the defendant incompetent. *See United States v. Mackovich*, 209 F.3d 1227, 1233 (10th Cir. 2000) (recognizing that a defendant is not necessarily incompetent simply because he suffers from a mental disease or disorder). Rather, as stated in *Rees*, evidence must show that the defendant has a mental disease, disorder or defect *and* that the mental disease, disorder or defect substantially affected his capacity to make a rational choice at the time in question. Defense counsel make no such showing.

## II.    DEFENSE COUNSEL FAIL TO ANALYZE THE DEFENDANT'S DEMONSTRATED DECISION-MAKING ABILITIES IN THE FOUR MONTHS LEADING UP TO HIS WAIVER OF APPEAL

As defense counsel acknowledge (ECF No. 839 at 2), the United States argues that three bodies of evidence close in time to the defendant's waiver of appeal establish competency. The three are: (1) the defendant's notes from the capital sentencing hearing; (2) the defendant's conduct during the capital sentencing hearing; and (3) the defendant's recorded statements to FBI Special Agents Mike and Gail Gneckow. Defense counsel do not respond meaningfully to this evidence or argue that this evidence does not demonstrate the defendant's capacity to make rational decisions.

Defense counsel do not address the defendant's notes at all, and for good reason. The notes show that the defendant understood the evidence presented, understood the

proceedings themselves and had the capacity to make rational decisions. (ECF No. 832 at 9-12).   They support his competence.

Defense counsel also fail to refute the United States' analysis that the defendant's conduct at the capital sentencing hearing demonstrated his competence.  (ECF No. 832 at 6-9).  They point to no particular conduct by the defendant that demonstrates lack of competence.  Instead, they assert that the defendant's interactions with the Court show his impaired capacity to make rational decisions.  In support, they cite the transcript from the November 24, 2008, hearing (Govt. Ex. 6) and the defendant's affidavit.  (Govt. Ex. 8).

These exhibits, however, do not support a finding of incompetency.  Rather, they demonstrate the defendant's rational decision-making abilities.   The defendant's position regarding waiver of appeal at his hearing (Govt. Ex. 6 at 12) and in his post-hearing affidavit (Govt. Ex. 8), were identical to the position he took in his interviews with the Gneckows (Govt. Ex. 5d), and in his letter to the Court (Govt. Ex. 7).  (RCHT, Day 20, at 5406-07).  He maintained this position even after standby defense counsel "ganged up" on him and had him cornered in his cell in an effort to change his mind about his appeal. (Govt. Ex. 5c; RCHT, Day 10, at 2441-42, 2480-81).  Moreover, as this Court observed during the hearing, the defendant's answers to the Court's questions were appropriately responsive.  (Govt. Ex. 6, at 8-11, 13-14, 16).  The defendant provided direct answers when the Court so requested.  (Govt. Ex. 6, at 12-13).  Thus, the defendant demonstrated his ability to understand his options, weigh them, and make a decision.

**United States' Reply to Defense Counsels' Answering Brief** – 4

Finally, defense counsel fail to refute the United States' argument that the defendant's recorded interviews with the Gneckows demonstrate his ability to make rational decisions.  Instead, they cite select passages that they label delusional and claim that the Gneckows "opinions" are not credible because they "cherry-picked" only statements that supported the United States' position.  (ECF No. 839 at 38-39).[1]

These characterizations of the Gneckows' testimony are not accurate.  The Gneckows offered no opinions.   Rather, they introduced recorded interviews they conducted with the defendant in the months leading up to his waiver of appeal.  Thus, they introduced direct evidence of the defendant's decision-making abilities at the time most relevant to this Court's competency determination. In addition, the Gneckows did not "cherry-pick" statements from their interviews with the defendant.  The United States marked and introduced the entire interviews into the record.  (Govt. Ex. 1, 2, 4, 5, 9-14). It then highlighted certain portions during the Gneckows' testimony to aid the Court. (Govt. Ex. 1a-d, 2a-g, 4a-c, 5a-e, 10a-b, 11a-b, 12a-e, 13a-b, 14a-d).   These recorded statements show the defendant had the capacity to appreciate his position and to make a rational decision to waive his right to appeal.  (ECF No. 832 at 12-16).

---

[1] No basis exists for defense counsel's assertion that the Gneckows' provision of coffee, a milkshake and a used paperback book was somehow inappropriate.  (ECF No. 839 at 39). As Special Agent Mike Gneckow explained, it was his practice throughout his career to offer a beverage during lengthy interviews.  (RCHT, Day 1, at 127).

**III.   THE COURT APPOINTED EXPERTS' TESTIMONY AND OPINIONS SUPPORT A COMPETENCY FINDING**

Defense counsel misidentify four of the five experts called by the United States as "government experts." (ECF No. 839 at 6). Of the five mental health experts it called, the United States retained only Dr. Roesch.[2]  The other four were appointed by either this Court or the Riverside County Court.  Defense counsels' other arguments misunderstand the court-appointed experts' experience, the substance of their opinions, their careful consideration of the evidence and their lack of bias.   Each expert will be addressed in turn.

**A.      Dr. Low Carefully Explained the Strength with Which She Held Her Opinion and the Detailed Analysis She Went Through to Reach It**

Dr. Low did not offer an opinion at the hearing that differed from the opinion in her report.  In both, she concluded that the defendant was competent.  (Govt. Ex. 24 at 24; RCHT, Day 3, at 632).  Defense counsel's attempts to establish otherwise fail.  (ECF No. 839 at 13).  During the hearing, defense counsel tried to get Dr. Low to admit that she had changed her opinion when she responded yes when asked by government counsel if she held her opinion to a reasonable degree of scientific certainty.  When defense counsel tried to contrast that "yes" response with the first sentence of her report's conclusion (RCHT, Day 3, at 633), Dr. Low set them straight.  She responded, "Well, if you are only

---

[2] Defense counsel also attack Dr. Roesch's testimony and ask this Court to grant their earlier motion to exclude his testimony.  (ECF No. 839 at 29-36).  The United States, in its opening brief, did not rely on Dr. Roesch's testimony.  It did not need to do so.  The court-appointed experts' testimony and opinions strongly support a finding of

**United States' Reply to Defense Counsels' Answering Brief** – 6

looking at that one sentence, I can see how you might come to that conclusion.  But if you continue reading the rest of it, I think it goes against what you just said." (RCHT, Day 3, at 634).  The next two sentences of her report read: "Nevertheless, this evaluator, through the use of voluminous legal and mental health records and direct observations, did not see any evidence of a major mental disorder or defect aside from the ones listed earlier.  Specifically, there were no signs or symptoms of a major mood disorder or thought disorder." (Govt. Ex. 24 at 24).   Thus, when placed in context, the first sentence did not differ from her testimony.  Both supported her competency opinion.

Dr. Low obtained many of the legal and mental health records she used to form her opinion from then-defense counsel *after* she sent defense counsel the e-mail expressing her concern about being able to reach an opinion.  (RCHT, Day 3, at 698-99, 720).  Dr. Low testified that the volume of records she received in this case was matched on only one other occasion, and that her contact with defense counsel was more extensive than usual.  (RCHT, Day 3, at 571-73).   Her testimony and her lengthy report demonstrate the careful consideration she gave to and evaluation she made of a variety of sources prior to reaching her opinion.  This Court should give her opinion great weight.

### B.      Dr. Rath Understood the Standard and His Notes Are Not Evidence of Delusions

Dr. Rath's testimony and opinion are entitled to great weight.  Dr. Rath has worked on more than 100 death penalty cases and conducted more than 3,000 competency

competency.  Nonetheless, Dr. Roesch's testimony should remain in the record for this Court to give it any weight it deems appropriate.

**United States' Reply to Defense Counsels' Answering Brief** – 7

evaluations.  (RCHT, Day 4, at 833-37).  He considered the defense experts' opinions but did not see the symptoms they described.  (RCHT, Day 4, at 846-48).  He evaluated the defendant for psychotic symptoms but did not see any.  (RCHT, Day 4, at 871-74).

Defense counsel's arguments do not diminish the weight this Court should give Dr. Rath's testimony.  Defense counsel argue that Dr. Rath's notes contradict his competency opinion.  They do not.  Dr. Rath found the defendant competent.  (RCHT, Day 4, at 880-81; Govt. Ex. 90, at 5).  He testified that the defendant's statements were not delusional.  (RCHT, Day 4, at 871-74).  Nonetheless, defense counsel insist that Dr. Rath's notes show evidence of the defendant's delusions.  (ECF No. 839 at 19-24). This argument misconstrues the content and purpose of Dr. Rath's notes.

Dr. Rath explained that his interview notes do not reflect a monologue by the defendant.  (RCHT, Day 4, at 916).  Rather, they show the defendant's responses to his questions.  (RCHT, Day 4, at 916).   The questions are not included in the notes.  In addition, Dr. Rath explained that in his note-taking he omitted words because he was writing quickly (RCHT, Day 4, at 920, 997), that his conversations with the defendant were longer than reflected in the notes (RCHT, Day 4, at 997), and that some parts of his report rest on his recollection of the interview but are not included in his notes.  (RCHT, Day 4, at 998).  Quite simply, Dr. Rath's notes are not recorded conversations with the defendant, and they do not conflict with his opinion.

Defense counsel also suggest that Dr. Rath's opinion should be given less weight because he incorrectly asserted that an Axis II disorder cannot be the basis for an

incompetency finding in the Ninth Circuit.  (ECF No. 839 at 19-20).  They rely on *United States v. Murdoch*, 98 F.3d 472 (9th Cir. 1996), to support their argument.

Defense counsel's characterization of this part of Dr. Rath's testimony is incomplete, and their reliance on *Murdoch* is misplaced.  Dr. Rath stated that an Axis II disorder cannot be the basis for incompetency because with a personality disorder, a person chooses not to cooperate, yet can.  He distinguished that from someone who cannot cooperate due to incompetence.  (RCHT, Day 4, at 869, 878-80).  Moreover, Dr. Rath evaluated the defendant for competence in California state court, where his opinion aligns with state law.  (RCHT, Day 4, at 883-86).  Thus, his explanation of the law rested on that jurisdiction's standard.  He also testified that he believed other jurisdictions limited the use of personality disorders as the basis for finding insanity or incompetency. (RCHT, Day 4, at 992).  That testimony was based on his experience testifying as an expert in a variety of courts all over the world. (RCHT, Day 4, at 992-93).

Moreover, *Murdoch* does not contradict Dr. Rath's opinion that a personality disorder cannot form the basis for a finding of incompetency.  *Murdoch* did not involve a competency determination.  Rather, it held that the defendant, who had been diagnosed with a personality disorder, failed to meet his burden of showing that he did not suffer from a mental disease or defect that causes dangerous propensities.  Thus, he could not be released after being found not guilty by reason of insanity.  *Murdoch*, 98 F.3d at 477. *Murdoch* further stated that, though many states limit the use of a personality disorder as a mental disease or defect, there is no clear federal rule.  *Id*. at 478-79 (concurring opinion).

**United States' Reply to Defense Counsels' Answering Brief** – 9

### C.      Dr. Kirkish Had Appropriate Experience and Conducted Sufficient Inquiry to Determine the Defendant Was Competent

Defense counsel contend that this Court should not credit Dr. Kirkish's testimony and opinions because she lacked experience with high IQ schizophrenics, did not spend enough time with the defendant, and did not have important collateral materials.  They also argue that she ignored in her report and in her testimony one of the delusional statements included in her notes.  (ECF No. 839 at 25-29).  These arguments lack merit.

Dr. Kirkish's prior experience evaluating high IQ schizophrenics is irrelevant.  No one has diagnosed the defendant as schizophrenic.   More relevant, Dr. Kirkish has evaluated highly intelligent subjects.  She has found some of them incompetent.  (RCHT, Day 5, at 1243-44).  She has conducted thousands of forensic evaluations, including competency examinations.  (RCHT, Day 5, at 1093-95).

Dr. Kirkish spent four hours with the defendant.  She testified that she would have asked for more time if this was insufficient.  (RCHT, Day 5, at 1116-17).  In the four hours, she was able to investigate the red flags that the defense experts had raised.  (RCHT, Day 5, at 1168).  She further testified that it is difficult for a person with psychotic symptoms to "hold it together" for four hours without a break, as the defendant did, during an evaluation.  (RCHT, Day 5, at 1227).  Finally, Dr. Kirkish's interview was more than twice as long as defense-retained expert Ruben Gur's 2008 clinical interview of the defendant.  (RCHT, Day 15, at 3767-68).

Dr. Kirkish also consulted sufficient collateral sources to form her opinion.  She had the federal discovery, some federal proceedings transcripts, the defense-retained

**United States' Reply to Defense Counsels' Answering Brief** – 10

expert reports, Dr. Engle's report and Dr. Low's report. She was well aware of defense counsels' concerns. (RCHT, Day 5, at 1108-11). In addition, she talked to the defendant about the statements the defense experts claimed were delusional. *See* RCHT, Day 5, at 1226. She thus had substantial information to form her opinion.

Finally, defense counsel assert that Dr. Kirkish ignored the defendant's statement in her notes that "God told him to kidnap kids or the Government would kill him." (ECF No. 839 at 25). They argue that the statement is delusional. Defense counsel overstate its relevance. Dr. Kirkish did not testify that the defendant made the statement to her. Rather, she testified that the statement was in notes she made when reviewing materials provided by defense counsel. During the hearing, she could not identify the statement's source. (RCHT, Day 5, at 1150-51). Neither the un-sourced statement nor its absence in Dr. Kirkish's report should affect this Court's competency determination.

### D. Dr. Engle Reviewed the Defense Expert Reports Before Writing His Evaluation, Considered Them, and Determined that the Symptoms He Described Were Not Present in His Own Evaluation of the Defendant

Dr. Engle consistently stated in both his report and his testimony that he carefully considered the defense expert reports before reaching his opinion. (Govt. Ex. 22 at 1-2; RCHT, Day 2, at 236-37; 256). Defense counsel now allege that Dr. Engle made two false statements when he testified about when he considered the defense reports. First, they state that he testified falsely in response to a question about whether he had any preconceived notions about the defendant's mental state prior to his interviews of the defendant (ECF No. 839 at 7), which occurred on April 23, 24 and 28, 2008. (Govt. Ex.

**United States' Reply to Defense Counsels' Answering Brief** – 11

22).  Dr. Engle responded, "[w]ell, I had read the defense experts' reports, which described overt and florid psychotic symptomology, and that was the person I expected to meet."  (RCHT, Day 2, at 238).  They argue that this statement is false because Dr. Engle did not receive the defense experts' reports until at least May 2, 2008, when they were filed with the Court.  (ECF No. 839 at 7).

The United States agrees that it is fair to infer from Dr. Engle's response that he meant he had read the reports prior to his interview.  That does not make Dr. Engle's statement false.  He had testified earlier that prior to completing his report he reviewed, among other materials, the three defense expert reports and the defense motion to find the defendant incompetent.  (RCHT, Day 2, at 236-37).  His report, dated May 8, 2008, refers to those materials, among others, and identifies the dates of the defense-retained expert reports.  The reports' dates are also after Dr. Engle's interviews.  (Govt. Ex. 22 at 1-2, 10).  Nearly five years later, however, Dr. Engle simply may have been confused or misremembered precisely when he received the records.   Significantly, defense counsel never asked Dr. Engle questions to clarify this issue.  Moreover, the order in which he received the records does not affect his consistent statement that he carefully considered the defense-retained expert opinions in reaching his own conclusion.

Second, defense counsel claim Dr. Engle testified falsely when he said he reviewed the defense motion to find the defendant incompetent prior to interviewing the defendant.  (ECF No. 839 at 7).   Contrary to defense counsel's allegation, however, Dr.

**United States' Reply to Defense Counsels' Answering Brief** – 12

Engle never testified that he read the defense *motion* to find the defendant incompetent prior to any of his interviews.  (RCHT, Day 2, at 237-38).

Defense counsel also attack Dr. Engle's opinion on other fronts.  They assert that he "grossly mischaracterized" the defendant's MMPI test results as being consistent with his interview of the defendant (ECF No. 839 at 11), and that he improperly rejected the test results although he purported to be an expert in testing.  (ECF No. 839 at 12).  The United States addressed these points in its opening brief.  (ECF No. 832 at 29-30)

## IV.   THE RECORD PROVIDES LITTLE REASON TO RELY ON THE DEFENSE-RETAINED EXPERTS' OPINIONS

### A.   Defense Counsel Ignore Their Retained Experts' Bias

Defense counsel provide almost no reason for this Court to credit or assign any weight to the opinions of their retained experts who evaluated the defendant.   They assert that the opinions of Dr. James Merikangas, Dr. Gur, Dr. George Woods and Dr. Ari Kalechstein should be given great weight because these experts spent more time with the defendant than did the court-appointed experts.  They also assert that because these experts' experience and training "demonstrates their preeminence in their field," this Court should credit their opinions.  Finally, they state that Dr. Merikangas, Dr. Gur and Dr. Kalechstein have worked both for the defense and prosecution, suggesting perhaps that they lack bias.  (ECF No. 839 at 46-47).

Defense counsel's bare assertions are incomplete.  At least for capital cases, their assertion that Dr. Merikangas and Dr. Gur have worked for both prosecution and defense

is plainly incorrect.  Neither has worked for the prosecution in a capital case.  They have only worked for the defense.  (RCHT, Day 12, at 3069; Day 14 at 3495-97, 3694).

Defense counsel fail to address other evidence showing that the defense-retained experts lack credibility.  They ignore the defense-retained experts' close alignment with the defense team, Dr. Gur's and Dr. Merikangas's use of defense team members to take notes during their 2008 interviews with the defendant, and the defense experts' manner of testifying on cross-examination.  Against this backdrop, defense counsel's argument that their experts' opinions are more credible because they spent more time with the defendant than did the court-appointed experts is unpersuasive.  These defense-retained experts could have spent months with the defendant.  If, however, their opinions are biased, the mere length of time they spent with the defendant does not make their opinions more reliable.[3]   The evidence of their bias is profound.  (ECF No. 832 at 30-35).

Defense counsel provide no substantive basis for this Court to conclude that the defense-retained experts' opinions are reliable.  They do not attempt to reconcile their

---

[3] Defense counsel fail to distinguish between the time Dr. Gur spent with the defendant in April of 2008, and the time he spent with the defendant in September 2012, lumping the times together as six and a half hours.  (ECF No. 839 at 46).  However, Dr. Gur met with the defendant only once in 2008, for a total of three hours and six minutes.  His actual "brief" clinical interview lasted ninety minutes.  (RCHT, Day 15, at 3767-68).  Thus, when Dr. Gur initially opined that the defendant was not competent, he had spent less time interviewing the defendant than did any of the court-appointed experts, except Dr. Low.  She spoke with the defendant for seventy-five minutes before he declined to speak with her any more.  (RCHT, Day 3, at 573).  Dr. Engle met with the defendant a total of three hours and 15 minutes, approximately an hour of which included testing.  (RCHT, Day 2, at 309-10; 324-26).  Dr. Rath interviewed the defendant for two hours.  (RCHT, Day 4, at 909).  Dr. Kirkish interviewed the defendant for four hours – more than twice as long as Dr. Gur did.  (RCHT, Day 5, at 1149).

retained experts' opinions with the court-appointed experts' opinions.  They fail to explain why this Court should accept the extreme, one-sided defense-retained expert opinions over the measured, considered court-appointed expert opinions.

Finally, other courts have rejected these defense-retained experts' opinions in capital cases for several reasons, including bias and lack of credibility.  *See, e.g.*, *Coe v. Bell*, 89 F.Supp.2d 922, 928-29 (M.D. Tenn. 2000) (concurring with state court that Dr. Merikangas's inconsistent statements and uncooperativeness on cross-examination somewhat diminished his credibility); *Bertolotti v. Dugger*, 883 F.2d 1503, 1516-17 (11th Cir. 1989) (finding Dr. Merikangas's testimony vulnerable on several fronts and doubting that jury would find it convincing); *United States v. Hammer*, 404 F.Supp.2d 676 (M.D. Pa. 2005) (rejecting Dr. Gur's opinion that the defendant was not competent at various stages, including waiver of appeal); *Ferguson v. Secretary, Fla. Dept. Of Corr.,* 716 F.3d 1315 (11th Cir. 2013) (noting the district court rejected portions of Dr. Woods's opinion on credibility grounds); *Boyde v. Brown*; 404 F.3d 1159, 1166-67 (9th Cir. 2005) (finding Dr. Woods's opinion about petitioner's competence to stand trial unpersuasive); *Thompson v. State*, 134 SW.3d 168, 181 & 181 n.15 (Tenn. 2004)(rejecting Dr. Woods's opinion on competency and finding that his report applied the incorrect legal standard).

Although this Court must reach its own conclusions and make its own findings regarding the defense-retained experts' opinions and testimony in this case, the United States submits that it can and should consider the experts' track records in deciding how much weight to assign to their opinions in this case.  It should assign them little weight.

**United States' Reply to Defense Counsels' Answering Brief** – 15

**B.     Testimony from Defense Experts Who Did Not Evaluate the Defendant Does Not Provide a Basis to Find the Defendant Incompetent**

Defense counsel spent considerable time urging this Court to assign great weight to the opinions of two experts who did not evaluate the defendant, Dr. Michael First and Dr. Xavier Amador.  These witnesses, however, provide little assistance to this Court in determining whether this defendant had the capacity to make rational decisions at the time he waived his right to appeal.

Dr. First testified about the difference between a religious delusion and a religious belief, as well as the difference between a delusion and an overvalued idea.  (RCHT, Day 12, at 3160-61, 3165-66, 3195-98).  Close examination of Dr. First's testimony shows that it supports a finding of competency to waive appeal.  Dr. First testified that the reason the DSM includes language about the need to distinguish between religious delusions and overvalued ideas is to prevent the over-diagnosing of delusions.  (RCHT, Day 12, at 3195-96).   He also testified that before diagnosing someone as delusional, a psychologist should research the patient's value judgments and religious background.  (RCHT, Day 12, at 3165-66, 3176-77, 3198).  The defense-retained experts who evaluated the defendant failed to do this.  In addition, at least one defense team member and Dr. Merikangas acknowledged that statements the defendant made could reflect the defendant's values.  (RCHT, Day 12, at 3110-11; Day 19, at 4980-82).

Dr. Amador's testimony also should be given little weight.  Defense counsel emphasize that Dr. Amador has experience with high-functioning schizophrenics.  (ECF No. 839 at 43).  However, no one diagnosed the defendant as schizophrenic.  They also

rely on Dr. Amador's opinion that anosognosia is a symptom of mental illness that allows highly intelligent psychotic persons to go undetected because they know when they sound crazy.  (ECF No. 839 at 43, 45).  During his testimony, however, Dr. Amador's definition of anosognosia changed from unawareness of illness to the ability to mask illness. Initially, he testified that anosognosia is unawareness of illness, a symptom often seen in persons with psychotic disorders.  (RCHT, Day 16, at 3999, 4007).  Only later, when trying to explain why various court-appointed experts might not have seen the defendant's delusions, did Dr. Amador suggest that anosognosia allows a highly intelligent, but psychotic person to go undetected because he can choose not to reveal delusional content. (RCHT, Day 16, at 4033-34, 4067).

If anosognosia is unawareness of illness, as Dr. Amador first testified, a person with psychosis who has anosognosia as a symptom would not know he needs to hide his illness.  Defense counsel fail to explain how someone who is highly intelligent but unaware of his mental illness still has enough self-awareness to actively hide his symptoms from the court-appointed experts.  They likewise fail to explain why the defendant did not hide these symptoms from the defense-retained experts.

## V.   THE DEFENSE TEAM MEMBERS' REFRESHED RECOLLECTION TESTIMONY IS UNRELIABLE

Defense counsel oversimplify the United States' argument that the defense team member witnesses' refreshed recollection testimony is unreliable.  These witnesses' testimony should be given little weight not solely because they refreshed their recollections.  Rather, this refreshed recollection testimony is not credible because: (1)

**United States' Reply to Defense Counsels' Answering Brief** – 17

most of these witnesses could testify in detail only when their memories were refreshed;

(2) the notes from which they refreshed their recollection may not have been accurate

because they were at times incomplete; (3) the witnesses were biased toward a finding of

incompetency based on their relationship with the defendant; and (4) some of these

witnesses admitted that their notes were their interpretations of the defendant's

statements.  (ECF No. 832 at 18-20, 49 n.7).

In addition, defense counsel's authority does not support their argument.  (ECF

No. 839 at 47-48).  First, *Putnam v. U.S.* is an 1896 Supreme Court case, not a 1986 case.

It was decided before the Federal Rules of Evidence existed, and it held that use of

refreshed recollection testimony in that case was "prejudicial error."  *Putnam v. United

States*, 162 U.S. 687, 707 (1896).  *Putnam* does not support weighing favorably the

defense team members' refreshed recollection testimony in this case.  Second, *Appeal of

Integrity International Management, Inc.*, 76-1 BCA P 11815 (A.S.B.C.A.) (1976), holds

no precedential value.  It is a narrow decision from the Armed Services Board of Contract

Appeals.  It credits refreshed recollection testimony under the specific — and very

different — facts of that case.  *Id.* at *8.

## VI.   DEFENSE COUNSEL DISCOUNT THE OBSERVATIONS OF THE BUREAU OF PRISON FACILITIES' TRAINED MENTAL HEALTH PROFESSIONALS

Defense counsel contend that testimony from the non-expert Bureau of Prisons

psychologists does not support a finding of competency.  They argue that these witnesses

did not spend sufficient time with the defendant or gather sufficient information when they had the opportunity to do so.  (ECF No. 839 at 3-5).  The United States disagrees.

This Court should give these Bureau of Prison psychologists' testimony great weight for at least three reasons.  First, Dr. Dennis Profitt, Dr. Jacqueline Cranmer and Dr. AnnElizabeth Card are trained mental health professionals who know the signs and symptoms of delusion and psychosis.  They had seen such signs and symptoms in other inmates during equally short interactions.  (RCHT, Day 6, at 1495-96, 1535-36).  Second, if the defendant were as psychotic and delusional as portrayed by the defense-retained experts, all of those alleged symptoms should have been apparent at some point to these trained observers.  Third, defense counsel cannot explain away the absence of findings by these professionals in the same way that they try to explain away the absence of findings by the court-appointed experts.  Defense counsel argue that the defendant was trying to hide his symptoms during evaluations by court-appointed experts because he did not want to be found delusional.  Dr. Profitt, Dr. Cranmer and Dr. Card were not conducting competency evaluations.  The defendant would not have had the same alleged motivation to disguise or hide his symptoms when interacting with them.  These trained observers interacted with the defendant periodically between May 2008 and April 2012.  They saw no signs of mental illness.  (RCHT, Day 2, at 521; Day 6, at 1500-01, 1552-53).  Their testimony supports a finding of competency.

## VII.   CONCLUSION

For the reasons set forth above, and in the United States' Opening Post-Hearing Brief (ECF No. 832), this Court should find that the defendant had the capacity to appreciate his position and to make a rational choice whether to continue or abandon further litigation when he waived his right to appeal.  Thus, it need not reach the question whether he was competent to waive his right to counsel and represent himself.

Respectfully submitted this 6th day of September, 2013.

By:

/s/ Wendy J. Olson                         /s/ Traci J. Whelan
_____           _____
WENDY J. OLSON                         TRACI J. WHELAN
United States Attorney                 Assistant United States Attorney

/s/ Justin D. Whatcott                    /s/ C.J. Williams
_____           _____
JUSTIN D. WHATCOTT                   C.J. WILLIAMS
Assistant United States Attorney       Assistant United States Attorney

**United States' Reply to Defense Counsels' Answering Brief** – 20

CERTIFICATE OF SERVICE


I HEREBY CERTIFY that on September 6, 2013, I filed the foregoing **United States' Reply to Defense Counsels' Answering Brief** electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

**Michael N. Burt**        mb@michaelburtlaw.com

**Randall Paul Martin**   randall@bayareadefenders.com


/s/ Wendy J. Olson
_____


**United States' Reply to Defense Counsels' Answering Brief** – 21