

**U.S. Departme   of Justice**

*fed proposal*

***THOMAS E. MOSS***
***United States Attorney***
***District of Idaho***

FEB **0 2** 2007

*DE WI*

| | |
|---|---|
| ***Mailing Address:*** | ***Comm: 208/334-1211*** |
| *Washington Group Plaza IV* | *FLU Fax: 208/334-9375* |
| *800 Park Blvd. Suite 600* | *Civ Div Fax: 208/334-1414* |
| *Boise, ID 83712* | *Crim Div Fax: 208/334-1413* |
| | *DTF Div Fax: 208/334-1038* |

January 31, 2007

Mr. Roger Peven
Federal Defenders of Eastern Washington & Idaho
101 N. Post, Suite 700
Spokane, WA 99201

Mr. Thomas Monaghan
Federal Defenders for Eastern Washington & Idaho
Jefferson Place Building, Suite 301
350 North 9th Street
Boise, ID 83702

     RE:    Plea Offer
             *U.S. v. Joseph Edward Duncan III*
             CR 07-023-N-EJL

Dear Messrs. Peven and Monaghan:

    Please be advised the United States hereby makes the following plea offer to your client:

1.    Mr. Duncan will plead guilty to all counts included in the above referenced case.

2.    Mr. Duncan will waive all appeals as to his entry of such guilty pleas.

3.    Mr. Duncan will retain all his rights to appeal any death sentence entered in the above referenced case.

4.    Mr. Duncan will admit to the intentional and premeditated killing of Dylan Groene.

5.    Mr. Duncan will immediately provide the codes/passwords to all of his encrypted electronic files to Federal Bureau of Investigation Special Agent Michael Gneckow.

6.    Mr. Duncan will cooperate fully and truthfully with Federal Bureau of Investigation Special Agents Michael and Gail Gneckow, including interviews, regarding other

Mr. Roger Peven
Mr. Thomas Monaghan
January 31, 2007
Page 2

investigations into the murders of missing children and persons in the states of California, Washington, and North Dakota, and other investigations designated by these special agents.

7.   The United States and Mr. Duncan, through his counsel, will stipulate that Shasta Groene will not be called to testify during the penalty phase of this case, and will further stipulate that, in place of her testimony, information regarding her own and Dylan's abduction and abuse will be presented via Shasta's statements to law enforcement, including the recordings and/or transcripts from her July 2005 interviews with Sgt. Dan Mattos and any pictures, videos, or journal entries made between May 15, 2005 and July 2, 2005. The United States and Mr. Duncan, through his counsel, will further stipulate that these statements, recordings, transcripts, pictures, videos and journal entries made between May 15, 2005 and July 2, 2005, may be admitted during the penalty phase without objection by the party against whom the evidence is offered. This part of the agreement will not limit either party's ability to introduce electronic evidence or writings made before May 15, 2005, and after July 2, 2005, that are relevant to the sentencing hearing.

8.   The United States and Mr. Duncan, through his counsel, will jointly request a six-month delay between the entry of plea and the sentencing hearing to be conducted pursuant to 18 U.S.C. § 3593 to determine whether a sentence of death is justified.

Of course, if Mr. Duncan accepts the foregoing it will alleviate the need for a very lengthy trial on the merits of the charges. It will also relieve Shasta Groene of the need to provide lengthy testimony concerning her ordeal.

It would seem also to benefit your client to not have Shasta appearing in person before a sentencing jury.

In view of the scheduled March 20 trial date, this offer will remain open only until February 20, 2007.

Yours sincerely,

THOMAS E. MOSS
United States Attorney

Traci J. Whelan
Assistant United States Attorney

Wendy J. Olson
Assistant United States Attorney

Exh. 21 - 000212



**RECEIVED**

**FEB 0 6 2007**

**FEDERAL DEFENDER
SERVICES OF IDAHO**

**U.S. Department of Justice**

*United States Attorney
District of Idaho*

| | |
|---|---|
| *Mailing Address:* | *Main Phone: 208/334-1211* |
| *Washington Group Plaza IV, Suite 600* | *Main Fax: 208/334-9375* |
| *800 Park Boulevard* | *Cv Div Fax: 208/334-1414* |
| *Boise, Idaho 83712* | *Cr Div Fax: 208/334-1038* |
| | *DTF Div Fax: 208/334-1413* |

February 5, 2007

Roger Peven
Federal Defenders of Eastern Washington and Idaho
10 North Post, Suite 700
Spokane, Washington 99201

Dear Mr. Peven:

We are writing in response to the February 2, 2007, e-mail we received from the e-mail address of Rebecca Pennell at fd.org in Yakima, Washington, which apparently was from you in response to the United States' January 31, 2007, plea offer in the above-captioned case.

You indicated you have "no intention of formally considering or responding to" the plea offer, apparently because the federal case was indicted only two weeks before the offer was made and only days after your office received formal discovery and the court-appointment of death-qualified counsel.

Although you do not specifically say that you have not communicated this offer to your client, the United States infers from your e-mail and from your refusal to show the same offer made by a November 13, 2006, letter to your client, that you have not done so. The United States believes that under well settled Ninth Circuit precedent it is ineffective assistance of counsel for you to withhold this offer from your client. See United States v. Blaylock, 20 F.3d 1458, 1466-67 (9th Cir. 1994); United States v. Rivera-Sanchez, 222 F.3d 1057, 1060-61 (9th Cir. 2000); United States v. Riascos, 1998 WL 700338 (9th Cir. 1998)(unpublished opinion); United States v. Peterson, 122 F.3d 1075, 1997 WL 542081 (9th Cir. 1997)(unpublished opinion). Moreover, although you have characterized this offer as absurd and have indicated that you will give the United States some sort of timetable for settlement discussions once the court sets a realistic trial date, the United States does not view either its offer or its timetable as absurd.

Exh. 22 - 000213

February 5, 2007
Page 2
Roger Peven

As you certainly recognize, the United States' plea offer is substantially similar to the one that you signed off on for John Adams to make to the Kootenai County Prosecuting Attorney on October 4, 2006. The United States was not a party to those plea negotiations and certainly would have accepted had the offer been made to it to have your client plead guilty in state court (paragraphs 1-3), cooperate fully and truthfully with law enforcement officials regarding anticipated federal charges (paragraph 4), admit to the intentional killing of Dylan Groene (paragraph 5), supply the codes/passwords to his PGP encrypted files (paragraph 6) and allow all such admissions and evidence to be introduced in federal capital proceedings (paragraph 8). The fact that the October 4, 2006, offer was made after the United States announced that it had received authority to seek the death penalty and the fact that you released this letter to the news media has given us the impression that you believe that this is an appropriate resolution of your client's criminal activity in Idaho.

In addition, in the hearing before the Attorney General's Capital Crimes Unit, you made statements that your client has admitted his guilt, that you were hopeful that Shasta would not have to testify – at least in the state proceedings – and that any mitigating factors were not personal to your client. You have also made statements that the proof in this case is not difficult, and that guilt could be established with relatively few witnesses. All of these comments, plus your client's refusal to enter a "not guilty" plea at his January 19, 2007, arraignment, and his seeming desire to spare Shasta Groene from having to testify, have led the United States to believe both that this is an offer that your client would consider and that in many respects it presents his best opportunity to argue mitigation at a capital sentencing hearing.

The timetable set forth in the United States' January 31, 2007, plea offer is driven by the March 20, 2007, trial date and by the amount of time that you have been appointed to represent Duncan. Although you suggest that settlement discussions may occur when the district court sets a realistic trial date, you have not filed a motion to continue the March 20, 2007, trial date. Accordingly, the United States feels that it must allocate its resources in a way that will allow it to prepare for a March 20, 2007, trial, and that a February 20, 2007, plea deadline will allow it to do so. You point out that formal charges have been filed for only a few weeks and that initial discovery has only recently been received, but you fail to acknowledge that you have been appointed to represent Duncan since July of 2005, were present throughout many of the state proceedings, have met with Duncan on a continual basis, were present for Duncan's October interview by state law enforcement officials and are the only person to have viewed the PGP encrypted files on Duncan's computer. The United States believes that, based on your extensive familiarity with Duncan and his conduct, the February 20, 2007, plea deadline will give you sufficient time to determine whether Mr. Duncan wishes to accept the United States' plea offer.

February 5, 2007
Page 3
Roger Peven


Despite your February 2, 2007, e-mail sent through Rebecca Pennell's e-mail address, the United States January 31, 2007, plea offer will remain open until the stated February 20, 2007, plea deadline.

Sincerely,

THOMAS E. MOSS
United States Attorney

TEM:abr
cc:    Thomas Monaghan



"Mark A. Larranaga"
<mark@jamlegal.com>
02/07/2007 09:59 AM

To   <debra_garvey@fd.org>
cc
bcc
Subject   Joseph Duncan

History:       ✍ This message has been replied to.

Ms. Garvey:

My name is Mark Larranaga and I have been appointed on the Joseph Duncan case with Roger and Tom. When you have a chance, can you give me a call? I am working on a memo outlining issues that influence the trial timetable. Once I get it started, which will most likely be tomorrow, I will send you the draft for your review. I would like to talk to you, however, to discuss the mitigation on this case. Please let me know a good date/time that you are available to talk. Thanks.

Mark A. Larrañaga
Law Offices of Walsh & Larrañaga
705 Second Ave., Suite 405
Seattle, WA 98104
206.325.7900

*Jackie walsh*

# AFFIDAVIT F

# AFFIDAVIT OF JAMES M. PETERS

Exh. 24 - 000217

**SEALED PURSUANT TO TITLE 18 U.S.C. § 3509 (d)**

THOMAS E. MOSS, IDAHO BAR NO. 1058
UNITED STATES ATTORNEY
DISTRICT OF IDAHO
WASHINGTON GROUP, PLAZA IV
800 PARK BLVD., SUITE 600
BOISE, IDAHO 83712
TELEPHONE: (208) 334-1211
FACSIMILE: (208) 334-1413

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | **Case No.** _____ |
| **-vs-** | ) | |
| | ) | |
| | ) | |
| **JOSEPH EDWARD DUNCAN, III.** | ) | |
| | ) | |
| | ) | |
| | ) | |

### AFFIDAVIT

     I, James M. Peters, upon being duly sworn, state that the following is true to the best of my knowledge:

     1. I am an Assistant United States Attorney in the United States Attorney's Office for the District of Idaho. I have been so assigned since the late summer of 1994. Between July 2005 and July 2006, I was assigned to the investigation and prosecution of federal crimes in Idaho and elsewhere by Joseph Edward Duncan, III.

**SEALED PURSUANT TO TITLE 18 U.S.C. § 3509 (d)**

Exh. 24 - 000218

2. On October 25, 2005, I spoke with Roger Peven of the Federal Defender's Office of Eastern Washington and Idaho. During our conversation, we discussed efforts by Kootenai County Public Defender John Adams to obtain copies of the evidentiary videos depicting child pornography. Mr. Peven stated that he was not going to seek discovery of the videos, but would be satisfied with viewing the videos at a secure location.

3. On November 1, 2005, I had lunch with Mr. Peven, during which we discussed issues related to the federal investigation and prosecution of Duncan.

4. During that lunch, Mr. Peven informed me of the following:

    a. his office had at least six people working on the case;

    b. from his perspective, there would be no delay between the state trial and the federal trial, as his office would be ready to go when the state finished;

    c. his office had four different experts working with Duncan;

    d. his office was working on mitigation factors;

    e. his office had hired a victim specialist to work with the Groene and Mackenzie families; and

    f. he said the purpose of the victim specialist was to identify the victims' families' concerns with an eye toward settlement.

5. In January of 2006, I had contact with Judy Clarke, a criminal defense attorney with considerable capital crimes experience and formerly the head of the Federal Defenders of Eastern Washington and Idaho. It was clear from our conversation and an email from her dated January 10, 2006 that she was working in concert with Roger Peven in the defense of Duncan. My contacts with Ms. Clarke focused on the possibility of a global settlement of Duncan's crimes.

**SEALED PURSUANT TO TITLE 18 U.S.C. § 3509 (d)**

6. I had ongoing contact with Mr. Peven regarding this case. During mid-April of 2006, I had contact with Mr. Peven, including an exchange of letters, that resulted in Mr. Peven being able to view the contents of electronic media obtained as evidence in the federal Duncan investigation. On May 19, 2006, I spoke with Mr. Peven regarding his trip to the FBI's Intermountain West Regional Computer Forensic Laboratory in mid-April to examine the electronic media. I know from working on the case that some of the files Mr. Peven examined were not viewable by federal investigators as they are encrypted with PGP software that requires a password or passcode to view. During that conversation, Mr. Peven generally described to me the nature of the images and information he had viewed on the computers, including:

    a. there was a large quantity of material of the Groene children;

    b. the computer contains a journal regarding Duncan's travels after he left the state of North Dakota, including details about the Groene case; and

    c. there were videos on the computer showing surveillance of other children.

DATED this 16th day of March, 2007.

James M. Peters
Assistant U.S. Attorney
District of Idaho

Subscribed and sworn to before me this 6th day of March, 2007.

Notary Public

My commission expires on 3/20/2010.

**SEALED PURSUANT TO TITLE 18 U.S.C. § 3509 (d)**

# AFFIDAVIT E

# AFFIDAVIT OF WENDY J. OLSON

Exh. 25 - 000221

## AFFIDAVIT

I, Wendy J. Olson, upon being duly sworn, state that the following is true to the best of my knowledge:

1.    I am an Assistant United States Attorney in the United States Attorney's Office for the District of Idaho.  I have been so assigned since mid-February of 1997.  I am currently assigned, along with others, to the investigation and prosecution of federal crimes in Idaho and elsewhere by Joseph Edward Duncan, III.

2.    On November 13, 2006, the United States made a pre-indictment plea offer to Joseph Edward Duncan, III, by letter sent to Roger Peven and Thomas Monaghan.  Along with the plea offer, the United States sent a draft information, which is substantially similar to the indictment returned by the grand jury on January 18, 2007, including two of the three counts as to which the United States filed its notice of intent to seek the death penalty.

3.    On December 19, 2006, the United States forwarded to defense counsel a substantial number of documents believed to contain Joseph Edward Duncan's handwriting or signature, including (a) letters written by Joseph Edward Duncan, III, since he has been incarcerated following his arrest in Coeur d'Alene, Idaho, on July 2, 2005; (b) an autobiography written by Joseph Edward Duncan, III, while imprisoned following his conviction for rape in Pierce County, Washington, in 1980; and (c) Enterprise Rental Car documents signed by Joseph Edward Duncan, III, in April of 2005.  The purpose of providing these documents was to see whether the defendant was willing to stipulate to his handwriting so that the United States would not have to obtain handwriting exemplars.  These writings provided to defense counsel on December 19, 2006, were also provided as part of initial and/or supplemental discovery in January and February of 2007.

Exh. 25 - 000222

4.     I have read the autobiography referred to in paragraph 3 above, which describes in detail Joseph Edward Duncan's youth, including the various cities in which he lived and schools that he attended.

5.     I was present at a state court evidentiary hearing in Coeur d'Alene, Idaho, on August 22, 2006, regarding Kootenai County Public Defender John Adams' motion to suppress statements obtained from Joseph Edward Duncan, III, in July of 2005. Mr. Peven was present throughout the hearing. I have consulted with other federal prosecutors assigned to this case, including Assistants United States Attorney Traci Whelan and Jim Peters, and am aware from them and from the assigned FBI agents that Mr. Peven attended several state court proceedings in the Duncan case, including the August 2005 appearance at which Duncan was informed that he faced the death penalty in connection with the state charges, a hearing to reconsider disclosure to Mr. Adams of the video that forms the basis of Count Five of the federal indictment, a hearing regarding Shasta Groene's testimony, and an in-chambers hearing regarding the state court trial date.

6.     On August 28, 2006, I participated by telephone, along with AUSA Whelan and the assigned FBI agents, in the meeting of the United States Department of Justice's Capital Crimes Committee, which was considering whether to recommend to United States Attorney General Alberto Gonzales that he give the United States Attorney's Office for the District of Idaho authority to seek the death penalty in the federal prosecution of Duncan. Mr. Peven also participated in the meeting, made a presentation to the committee and was present in person with the committee members in Washington, D.C.

Exh. 25 - 000223

7.    On September 28, 2006, the United States Attorney's Office for the District of Idaho received notice from the Attorney General that it was authorized to seek the death penalty in the federal prosecution of Duncan.

8.    I have reviewed Duncan's plea agreement with the Kootenai County Prosecuting Attorney's Office. I know that as part of that plea agreement, Duncan agreed to be interviewed by law enforcement regarding the murders of Brenda Groene, Mark McKenzie and Slade Groene. I have reviewed a memorandum prepared by Kootenai County Detective Brad Maskell regarding his October 20, 2006, interview of Duncan. According to Detective Maskell's memorandum, Duncan described the killings and admitted that his primary objective was to take the children. According to Detective Maskell's memorandum, Mr. Peven was present during the interview. A copy of Detective Maskell's memorandum was provided in discovery in this case on February 16, 2007.

9.    Based on my review of investigative materials in this case, I know that Joseph Edward Duncan, III, was born on February 25, 1963, and is now 44 years old. I also know that he was convicted of rape in Pierce County, Washington, in 1980, and as a result of that conviction spent approximately 17 of the next 20 years in prison. I also know that he was arrested in Coeur d'Alene, Idaho, on July 2, 2005, and has been incarcerated since that time.

10.    I am familiar with the manner in which discovery has been made in this case and with the substance of that discovery. Between January 26, 2007, and March 7, 2007, the United States has provided discovery on three different occasions: January 26, 2007, February 16, 2007, and March 7, 2007. Such discovery has included approximately 43,000 numbered items on compact discs containing scanned documents, audio recordings, video recordings and still photographs. Such discovery also included lists of physical evidence maintained by the FBI in

Exh. 25 - 000224

Boise, by the FBI in Salt Lake City, by the Kootenai County Sheriff's Office in Coeur d'Alene and by the Idaho State Police in Coeur d'Alene. To my knowledge, no request has been made to view any of the physical evidence.

11.     On March 5, 2007, I reviewed the Capital Defense Network website, which included under the sections "Case Processing and Management Information in Death-Sentence Cases" and "Preparation Time Permitted Defense Counsel in Authorized Capital Prosecutions" data regarding the date of case initiation, date of filing a notice of intent to seek the death penalty and trial date. Although the entries referred to case names and numbers, the website did not otherwise identify how it got its information, or what was meant by date of case initiation or trial date. The entries indicated that a number of cases involved guilty pleas or cases in which authorization to seek the death penalty was withdrawn. Nonetheless, based on this information alone, I observed that death penalty trials have occurred as few as four months after indictment and six weeks after filing of a notice of intent to seek the death penalty and as many as thirty-one months after indictment and fifteen months after filing a notice of intent to seek the death penalty. This website can be accessed at www.capdefnet.org/fdprc.

Exh. 25 - 000225

12.     I have consulted with Richard Burns, a Department of Justice attorney assigned to the Capital Crimes Unit of the Criminal Division, regarding the amount of time between indictment and trial in federal capital prosecutions.  Mr. Burns informed me that the Capital Crimes Unit does not maintain such statistics, but that the most significant part of the delay is typically attributable to the death penalty review process.

_____
Wendy J. Olson
Assistant United States Attorney
District of Idaho


Subscribed and sworn to before me this 7th day of March, 2007.

Notary Public for Idaho
Residing at Boise, Idaho
My commission expires 3/20/2010

Exh. 25 - 000226



**"Mark A. Larranaga"**
**<mark@jamlegal.com>**
04/27/2007 03:19 PM

To   "'Debra Garvey'" <Debra_Garvey@fd.org>
cc
bcc

Subject   RE: Agenda

Here is my proposed email to Roger (and Tom) (any suggestions would be appreciated). Thanks.

Roger:

It is becoming increasingly frustrating trying to get this case in order. I think it is a must that you, Tom and I (and if useful, Judy) meet to discuss how to properly develop and fund a core defense team.

Right now, the current budget has you, Roger 100%, Tom 50%, Bill (100%); Marissa (60%); Jennifer (30%); and Deb (50%). My budget has me at 100%. However, this piecemeal approach is not working.

I support that we request additional assistance (and funding) for: paralegal (75% – 100%); mitigation specialist, and mitigation investigator; with Tom on the case full-time. This case is too complex coupled with a quick trial date for us to accomplish what needs to be accomplished under the current structure. There are just too many mitigation witnesses that need to be interviewed; ranging from family members, civilian, counselors, mental health experts, prison officials, etc that we cannot get this accomplished as is. I estimate a few hundred fall into these categories.

I also know that we will need to make additional request for experts. I understand that currently we may not know who (or what) experts we will need, but I estimate up to 10 different types of experts (jury, different specialized psychologists/psychiatrist, prison expert, future dangerousness, just to name a few).

It really is not my intent to expose our shortcomings to the court (or AO), but we are obligated to do more.

Thanks,
Mark

Mark A. Larrañaga

Law Offices of Walsh & Larrañaga

705 Second Ave., Suite 405

Seattle, WA 98104

206.325.7900


-----Original Message-----
From: Debra Garvey [mailto:Debra_Garvey@fd.org]
Sent: Friday, April 27, 2007 3:05 PM

To: Mark A. Larranaga
Cc: 'Thomas Monaghan'
Subject: RE: Agenda

Good e-mail.

| "Mark A. Larranaga" <mark@jamlegal.com> | | To |
| 04/27/2007 03:03 PM | "'Debra Garvey'" <Debra_Garvey@fd.org> "'Thomas Monaghan'" <Thomas_Monaghan@fd.org> | cc |
| | RE: Agenda | Subject |

I will contact Russ and inquire who he may suggest. I sent the following
email to Marissa:
.......

Marissa:

Here is what I would like regarding the witness list. Please go through all
of the discovery (from the government and Joyce's) and put together a
witness list. The witness list should be alphabetical order (follow the
format that Deb gave), then with each witness indicate whether he/she is a
witness for guilt or mitigation; and if mitigation note whether
pre-incarceration, incarceration, and post-incarceration. I realize that
some witnesses may fall into more than one category (e.g., Lillian Duncan),
and if that is the case please indicate so.

Please let me no how long you think that will take you to do. Let me know
if
you have any questions. Also, there is a team meeting next Thursday that I
would like you to attend (phone or in person).

Mark A. Larrañaga

Law Offices of Walsh & Larrañaga

705 Second Ave., Suite 405

Seattle, WA 98104

206.325.7900

Exh. 26 - 000228

```
-----Original Message-----
From: Debra Garvey [mailto:Debra_Garvey@fd.org]
Sent: Friday, April 27, 2007 2:58 PM
To: Mark A. Larranaga
Cc: 'Thomas Monaghan'
Subject: RE: Agenda
```

I don't have a completed plan yet, I'm sorry.  This weekend I'll get it
done.  I'm still digging out from the trial I was on [the jury's still
out].

I know Judy will be driving home from Virginia to San Diego on 5/3 - but
she might be available by phone.

Russ is now the national coordinator of mitigation specialists for the
Federal Defender system - his own full-time job.  But, in that role, he's a
good resource for who he thinks is good and possibly available.

take care/deb


| | | |
|---|---|---|
| "Mark A.<br>Larranaga"<br><mark@jamle<br>gal.com> | "'Debra Garvey'" <Debra_Garvey@fd.org> | To |
| | | cc |
| 04/27/2007<br>02:51 PM | "'Thomas Monaghan'"<br><Thomas_Monaghan@fd.org> | |
| | RE: Agenda | Subject |


Thanks Deb for the more detailed explanation - it makes sense.
Deb, if you could get me your proposed plan ASAP so I can start working on
a
supplemental budget since it won't get done otherwise. I must admit if I
knew the logistical problems in merely putting together a properly funded
team, I would have reconsidered accepting appointment. Nevertheless, we're
here and must focus on getting this case in order and the team properly
funded.

Deb, do you think it would be useful to ask Judy to participate via phone
on
the up-coming meeting? I am fearful that your thoughtful proposal will fall
on deaf ears and if anything does get done, it won't be for months - time
that we don't have.

I could contact Russ Stetler to see whether he is available/interested or
whether he has some suggestions on others who may be proper for the case.

Exh. 26 - 000229

Thanks for your work, and I would love it if you could stay on for as much
percentage as Sean would allow.

Mark A. Larrañaga

Law Offices of Walsh & Larrañaga

705 Second Ave., Suite 405

Seattle, WA 98104

206.325.7900


-----Original Message-----
From: Debra Garvey [mailto:Debra_Garvey@fd.org]
Sent: Friday, April 27, 2007 1:45 PM
To: Mark A. Larranaga
Cc: 'Thomas Monaghan'
Subject: RE: Agenda

I am going to propose a plan that right now looks to me like it needs three
people doing mitigation.  Assuming the trial date holds, I think two of
those three people need to work on doing the interviews/investigation on
the mitigation something between three quarters and full-time.  I don't
think the three of us can cover that - you guys have too many other things
to do.

I have a full-time job.  I would like to stay on this case to help you
formulate the mitigation and get ready to put on a mitigation presentation,
but there's no way I can do anything close to full-time work.  Right now I
would be limited to 30% time, per the budget approved by the AO.  I think
Sean, the defender here, would probably let me work the case at some thing
closer to half-time, if I talk to him about it.  If you retain Joyce, who I
think has some issues but who brings some other things that are helpful to
the case, I honestly think she needs some re-orienting.  She may not think
she needs that and may be much more comfortable directing the mitigation
the way she wants to see it going.  In that instance, you really wouldn't
need me.  I am not sure who the second close-to-full-time person would be,
though I assume it has to be someone from another FPD office.

What I can bring is experience putting together a mitigation presentation,
working up themes with witnesses and documents, helping with some of the
interviews and working with the client - any or all of that.  Mostly what I
have done in the past, when I have been on loan to an out of district case,
is
organize the mitigation investigation and keep it on track.  You may not
need me to do that in this case because you, Mark, can do that.  You may
have a bigger need for someone to be out in the field doing the interviews
and working with the witnesses.  While I have done a lot of interviewing,
you want someone who will have continuity in doing the mitigation to do the
bulk of that kind of work, as you know - and that just isn't going to be
me.

Right now the budget has no one proposed, except my 30% time, to do
mitigation.  There is no money in the budget for any travel for mitigation
work.  There is no money in the budget that is associated with a plan to
share the federal discovery with me or anyone else working on the
mitigation.  Roger may not think that needs to happen.  If we can't get

past that hurdle, I don't see how I can be helpful on this case at all.

I'm not trying to bail out, I am trying to stay very clear with what I can and cannot do.

/deb


|  |  |  |
|---|---|---|
| "Mark A. Larranaga" <mark@jamle gal.com> | "'Debra Garvey'" <Debra_Garvey@fd.org> | To |
|  |  | cc |
| 04/27/2007 12:31 PM | "'Thomas Monaghan'" <Thomas_Monaghan@fd.org> |  |
|  | RE: Agenda | Subject |


Will do. Maybe this has passed me bye, so after your assessment of the case and proposed investigation plan are you off the case? Only on 25% of time?

Mark A. Larrañaga

Law Offices of Walsh & Larrañaga

705 Second Ave., Suite 405

Seattle, WA 98104

206.325.7900


-----Original Message-----
From: Debra Garvey [mailto:Debra_Garvey@fd.org]
Sent: Friday, April 27, 2007 12:26 PM
To: Mark A. Larranaga
Cc: 'Thomas Monaghan'
Subject: RE: Agenda

From previous conversations, my understanding is that Roger will need the proposed work plan in order to get anyone to consider the funding of any positions.  I am actually prohibited from spending more than 28% or 30% or whatever amount of time it is Roger got approved for me to work on an out-of-district case.  As you know, there is no other plan for a mitigation

person on the case.  I was told that my task was to evalutate the case and
come up with an investigation plan - and that was without any plan to
actually share the discovery with me.

From other capital cases I've worked on, I know that the AO understands
what Wiggins demands from FPD offices in their capital trial cases.
Pitched correctly, I believe there could be funding for Joyce to do the
work.  So, yes, it would probably be good to know if Joyce would even be
available.  And then, I think you would need to talk to her about how you
think about the client, how you want her to think and talk about the client
and what you are looking for from other witnesses - just so she understands
how differently you are trying to orient the presentation from what Coeur
d'Alene's ideas were.

| | | | |
|---|---|---|---|
| "Mark A. Larranaga" <mark@jamlegal.com> | | "'Debra Garvey'" <Debra_Garvey@fd.org> | To |
| | | | cc |
| 04/27/2007 12:15 PM | | "'Thomas Monaghan'" <Thomas_Monaghan@fd.org> | |
| | | | Subject |
| | | RE: Agenda | |

In speaking to her, I think she would be interested in continuing the work.
I sent Roger an email about funding her for transitional work (no
response),
but maybe we can expand that to direct work. Do you want me to contact her
to see whether she is interested and if so contact Roger to get about
logistics?

Mark A. Larrañaga

Law Offices of Walsh & Larrañaga

705 Second Ave., Suite 405

Seattle, WA 98104

206.325.7900


-----Original Message-----
From: Debra Garvey [mailto:Debra_Garvey@fd.org]
Sent: Friday, April 27, 2007 12:12 PM

To: Mark A. Larranaga
Cc: 'Thomas Monaghan'
Subject: RE: Agenda

I can see advantages to doing that, too - particularly given the shortened
time frame to trial.  You wouldn't be in the position of re-inventing the
wheel, so to speak, with all the witnesses she has interviewed.  There were
some things she did that I would have done differently - but you have to
believe she was mostly responsive to the direction of John Adams and could
re-orient herself to what you want for the mitigation.

| | | |
|---|---|---|
| "Mark A. Larranaga" <mark@jamlegal.com> | | To |
| | "'Debra Garvey'" <Debra_Garvey@fd.org> | |
| | | cc |
| 04/27/2007 12:09 PM | "'Thomas Monaghan'" <Thomas_Monaghan@fd.org> | |
| | | Subject |
| | RE: Agenda | |

I like the idea of retaining the service of Joyce, she also has had contact
with some potential witnesses that can alleviate (or lessen) the
unnecessary
difficulty of establishing new relationships.

Mark A. Larrañaga

Law Offices of Walsh & Larrañaga

705 Second Ave., Suite 405

Seattle, WA 98104

206.325.7900

-----Original Message-----
From: Debra Garvey [mailto:Debra_Garvey@fd.org]
Sent: Friday, April 27, 2007 12:07 PM
To: Mark A. Larranaga
Cc: 'Thomas Monaghan'
Subject: RE: Agenda

I was going to propose options for staffing the case, including getting
help from other FPD offices.  I don't know that the woman I have spoken to

in Seattle is actually available, and to be completely honest she is very
hesitant about touching anything involving either Roger or Bill.  I took it
that was based on some past experiences she has had with them.

I think there may be some interest by Roger, or willingness to support
retaining Joyce N. to pick up working on the case from where she left off
in the state case.  He'd have to get money for her to do that, but perhaps
could pitch it as a cost savings overall, in that she already has so many
contacts, etc. within the case and the client knows her.

I'll definitely include the need to do follow-up work with the lawsuits.  I
don't think you'll be able to count on Bill to actually do that, but that's
just my opinion.  He has yet to be able to come to a meeting.

|  |  |  |
|---|---|---|
| "Mark A. Larranaga" <mark@jamlegal.com> | | To |
| | "'Debra Garvey'" <Debra_Garvey@fd.org> | |
| | | cc |
| 04/27/2007 11:49 AM | "'Thomas Monaghan'" <Thomas_Monaghan@fd.org> | |
| | | Subject |
| | RE: Agenda | |

Met with Victoria this morning (she is the former attorney that initiated
civil suits against program Jet was in back in 1980-1983). I met with her
in
person, she is up from Texas. She is sending me boxes of the civil suits,
depositions, investigation notes, etc. It may be golden. There are a lot of
people she mentioned that may be useful to us. To this end, Deb does your
proposed plan suggest an additional investigator (like someone from Seattle
FD, as we discussed before)? Otherwise, I can ask Bill start work on
gathering this information.

I will fill everyone in on my conversation with her at our next meeting.

Thanks,

Mark A. Larrañaga

Law Offices of Walsh & Larrañaga

705 Second Ave., Suite 405

Seattle, WA 98104

206.325.7900

-----Original Message-----
From: Debra Garvey [mailto:Debra_Garvey@fd.org]
Sent: Friday, April 27, 2007 10:03 AM
To: Mark A. Larranaga
Cc: 'Thomas Monaghan'
Subject: Re: Agenda

I'll send out my proposed mitigation plan with my suggestions for staffing
by Tuesday night.  I plan to suggest some ways to staff the case.

If Marissa hasn't done anything, which is what I believe is probably true,
I don't see how we can go forward without a working paralegal.  I don't
need to embarass Marissa, but that has to be addressed somehow.  I assume
she isn't making it a priority because Roger hasn't told her to do anything
with any of the discovery.

We can't be in the position of just giving this case cover if there isn't
any underlying intention on the part of the people holding the purse
strings to actually staff and work the case.  That's where I'm at.

/deb

| | | |
|---|---|---|
| "Mark A. Larranaga" <mark@jamlegal.com> | | To |
| | "'Thomas Monaghan'" <Thomas_Monaghan@fd.org>, "'Debra Garvey'" <debra_garvey@fd.org> | |
| 04/27/2007 09:01 AM | | cc |
| | | Subject |
| | Agenda | |

Please review the cursory agenda attached and let me know if anything needs
to be added. I think a conversation needs to be had about perceived
percentage of work since this could hinder our ability to get assistance.
As you may gather from emails today, I woke up a bit nasty and nervous
about the status of this case. Also, if either of you have material you
want to discuss, please send them out in advance of the meeting.

Thanks,

Mark A. Larrañaga

Exh. 26 - 000235

Law Offices of Walsh & Larrañaga
705 Second Ave., Suite 405
Seattle, WA 98104
206.325.7900

(See attached file: Agenda May 3, 2007.doc)

Exh. 26 - 000236

# MEMORANDUM
**FEDERAL PUBLIC DEFENDER**
**CENTRAL DISTRICT OF CALIFORNIA**

TO:  Duncan Team
     Sean Kennedy

DATE: May 2, 2007

FROM:  Deb Garvey

RE:  Proposed Investigation Plan

Attached you will find a proposed mitigation investigation plan for the Joseph Duncan case.  The investigation plan consists of a listing of potential witnesses broken into three eras of the client's life; a listing of the Duncan family members that I am aware of; a list of witnesses who wrote chronos regarding the client during his incarceration; and finally a list of records that are potentially relevant.

Please remember I have not seen any of the federal discovery, including none of the 302s written regarding witness interviews. This plan is based entirely on my review of the work done for the Idaho state case, including the Washington State Dept. of Corrections' records gathered.

Assuming the trial date of January 2008 holds, I believe the mitigation work-up will require two to three investigators to accomplish the necessary work; two of the investigators will need to work nearly full-time to finish the work by September 1.

Getting additional staff for the investigative work is crucial. My understanding, as well as Sean Kennedy's understanding, has always been that I am on loan to this case for 30% of my time. I saw a recent motion filed with the court regarding trial dates, which described my time on the case at 50%.  I haven't been in any conversations where that was said aloud to me, nor has it been the understanding within my office. In my experience with the mitigation preparation in capital cases, this case cannot be competently worked up with 30%, or even 50%, of my time. There are various ways to get the case appropriately staffed, including hiring mitigation investigators and/or arranging for the loan of mitigation investigators from other FPD offices.

In addition, the current budget contemplates no travel for mitigation investigation. The investigation plan that I have proposed includes investigative travel to several states, with extended trips to some areas of the country.

Memo
May 3, 2007
Page 2

These two issues – getting the case appropriately staffed to do
the necessary mitigation preparation with a supporting budget
that includes money for investigative travel to prepare the
mitigation, are critical to effective representation of Mr.
Duncan. With a trial date of January 2008, these issues need to
be resolved now.

– we will follow statute but we are not
prepared to agree to conditions
of SG's testimony @ this time

## Agenda for Team Meeting – May 3, 2007

I.  Client Issues:
 a.  Update on status of client.
 b.  What (if any) course of action needs to be take
 c.  Plea discussion

II.  Assignment and Updates:
 a.  Mark:
  i.  Folders
  ii.  Experts
  iii.  Witnesses
  iv.  Objectives

 b.  Roger:
  i.  Victim outreach
  ii.  Legal issues (Gag /protective orders)
  iii.  Guilt phase status
  iv.  objectives

 c.  Tom:
  i.  Legal issues (prison log)
  ii.  Folders/discovery
  iii.  Witnesses
  iv.  objectives

 d.  Bill:
  i.  Guilt phase investigation
  ii.  Other homicides

 e.  Marissa:
  i.  Witness lists
   1.  Guilt phase
   2.  Mitigation:
    a.  Pre
    b.  Incarceration
    c.  Post-incarceration

 f.  Jen:
  i.  Computer/technology issues?

 g.  Deb:
  i.  Mitigation strategy plan
  ii.  Assemble more assistance

III.  Next Meeting/Future Action

*[handwritten notes:]*

\* Contact Court
Re: 6/7/07

mtg

schedule – May 25th – 1:00pm
or on Friday (25th); ret. on 26th

Exh. 28 - 000239



"Judy Clarke"
<judyclarke@jcsrlaw.net
>

05/11/2007 10:56 AM

To  "'Debra Garvey'" <Debra_Garvey@fd.org>

cc

bcc

Subject  RE: Budget

History:    🔁 This message has been replied to.

This does seem to be a case where "frontloading" will be the theory of the
guilt phase, and as you know better than I do, that really requires
coordination and continual discussion of evolving themes. From my far away
seat here in SD, I'd want to talk about what witnesses the govt is likely to
call, what can be gotten from them in guilt that helps with life saving
themes, and that requires really knowing the prosecution's guilt phase case,
and that might include some interviews, and maybe some consultation with
experts...does the govt plan to put on prior murders in guilt or just
penalty?

-----Original Message-----
From: Debra Garvey [mailto:Debra_Garvey@fd.org]
Sent: Friday, May 11, 2007 10:16 AM
To: judyclarke@jcsrlaw.net
Subject: Fw: Budget


This is Roger's position re: the guilt investigation.
----- Forwarded by Debra Garvey/CACF/09/FDO on 05/11/2007 10:15 AM -----

            Roger
            Peven/WAEG/0
            9/FDO
                                                              To
                        mark@jamlegal.com
            05/10/2007                                        cc
            11:08 AM
                        Bill Proctor <Bill_Proctor@fd.org>,
                        Debra Garvey <Debra_Garvey@fd.org>,
                        Thomas Monaghan <Thomas_Monaghan@fd.org>
                                                         Subject
                        RE: Budget(Document link: Debra Garvey)




We need to talk about strategy for both phases at our next meeting. I do
not understand fully your position on the plea issue. I expect Jet will
want to enter a plea but we will have to wait and see. He has already
fully confessed to the events at the CDA house so there is no need for
experts for any evidence there. As to forensics on the charged counts, I
don't see what expert testimony could counter the governments case.
Mark---maybe you should call me and discuss this further.


            mark@jamlega

```
l.com
                                                                        To
          05/10/2007          Roger Peven <Roger_Peven@fd.org>
          10:57 AM                                                      cc

                             Bill Proctor <Bill_Proctor@fd.org>,
                             Debra Garvey <Debra_Garvey@fd.org>,
                             Thomas Monaghan <Thomas_Monaghan@fd.org>
                                                                   Subject
                             RE: Budget
```

It is my hope that he does not enter a plea. Nevertheless, unless or until
he does I should include something about the guilt/merit phase
invesitgation/preparation in the budget. Do we need forensics, lab tests,
anything  to counter the Gov't's case?


> -------- Original Message --------
> Subject: Re: Budget
> From: Roger Peven <Roger_Peven@fd.org>
> Date: Thu, May 10, 2007 10:33 am
> To: mark@jamlegal.com
> Cc: Bill Proctor <Bill_Proctor@fd.org>,  Debra Garvey
> <Debra_Garvey@fd.org>,  Thomas Monaghan <Thomas_Monaghan@fd.org>
>
> First, I doubt there will (or perhaps should) be a guilt phase.  Very few
> witnesses will need to be interviewed.  I am unaware of any experts.
>
>
>

>            mark@jamlegal.com
>
>

>            05/10/2007 06:54
>  To
>            AM                    Roger Peven
> <Roger_Peven@fd.org>
>
cc
>
>                                  Bill Proctor
> <Bill_Proctor@fd.org>,
>                                  Debra Garvey
> <Debra_Garvey@fd.org>,
>                                  Thomas Monaghan
>
>                                  <Thomas_Monaghan@fd.org>
>
>
Subject

Exh. 29 - 000241

```
>
>                                 Budget
>
>

>

>

>

>

>

>
>
>
>
> Bill and Roger:
>
> Can you send me an estimated number of witnesses you think will need
> to be
> interviewed for the guilt phase? Also, what experts do you need for the
> guilt phase? I would like to include this information into the
> supplemental
> budget.
>
> If you could get this to me by Friday, that would be great. No later than
> Monday, however.
>
> Thanks,
> Mark
>
>
>
>
> > -------- Original Message --------
> > Subject: Re: IMSI mail
> > From: Roger Peven <Roger_Peven@fd.org>
> > Date: Tue, May 08, 2007 1:29 pm
> > To: Thomas Monaghan <Thomas_Monaghan@fd.org>
> > Cc: Bill Proctor <Bill_Proctor@fd.org>, Debra Garvey
> > <Debra_Garvey@fd.org>, judyclarke@jcsrlaw.net, mark@jamlegal.com
> >
> > Thanks.  Let us know the answer when you get it.  Thanks
> >
> >
> >
> >
> >              Thomas
> >
> >              Monaghan/IDG/09/F
> >
> >              DO
> >  To
> >                                    judyclarke@jcsrlaw.net,
> >
> >              05/08/2007 11:41      mark@jamlegal.com, Roger
> >
> >              AM                    Peven/WAEG/09/FDO@FDO, Debra
```

Exh. 29 - 000242

```
> >
> >                                    Garvey/CACF/09/FDO@FDO, Bill
> >
> >                                    Proctor/WAEG/09/FDO@FDO
> >
> >
> cc
> >
> >
>
> >
> Subject
> >
> >                                    IMSI mail
> >
> >
>
> >
>
> >
>
> >
>
> >
>
> >
>
> >
>
> >
> >
> >
> > I am about to file the motion re jail logs.  Before doing so, I called
> > the
> > prison and spoke with the woman in the warden's office who is our
> > contact.
> > I asked about their general mail policy.  She advised that they do
> > open and
> > review inmate mail (both outgoing and incoming) to ensure it is not
> > illegal
> > (e.g. threats/hate mail/etc.)  Then, they send it off if it is ok.  She
> > said they do NOT make copies of the mail unless it is flagged as a
> > concern.
> >
> > I then asked what the status of Mr. Duncan's mail is.  She indicated
> that
> > she had no idea his mail was being collected and copied (I believe
> her).
> > She said that perhaps an officer in the "investigations" unit at the
> > prison
> > may have been doing that.  She promised to make some inquiries and
> let me
> > know what is happening.
```

| Roger<br>Peven/WAEG/09/FDO<br><br>05/11/2007 11:35 AM | To | Debra Garvey/CACF/09/FDO@FDO |
| | cc | Bill Proctor <Bill_Proctor@fd.org>, mark@jamlegal.com, Thomas Monaghan <Thomas_Monaghan@fd.org> |
| | bcc | |
| | Subject | RE: Budget |

**History:**   📧 This message has been forwarded.

This is a matter we all need to think through and discuss.  Obviously the best result is an LWOP.  If that doesn't occur,  I do not automatically default to a guilt phase trial as the next best alternative.  This is a case that requires "thinking outside the box."  Once we develop various "life saving themes" we certainly should consider if they could be enhanced by trial.  After two years on this case,  I think this is unrealistic under the unique facts and the anticipated government theory and witnesses.

Certainly if our psychological evaluations result in potential defenses we should pursue this vigorously.  I worry more about the evidence that would be brought out in a guilt phase that makes our mitigation case much more difficult.  For instance,  we would all agree that the video(s) the government possesses are incredibly damaging.  Without a plea to counts 3 and 5, they come into evidence without doubt.  With a plea, we have a fighting chance to keep them out.  The "other murders" evidence may come in under 404(b) while they may well not after a plea.  These are practical considerations that should influence us.

I currently believe we should, as soon as possible,  identify what experts we need.  Then we should meet with them, tell them what we hope they can provide and ask what they need us to give them to allow them to give favorable testimony.  Our meeting with GW is a good place to discuss this.

Debra Garvey/CACF/09/FDO



| Debra<br>Garvey/CACF/09/FDO<br><br>05/11/2007 11:11 AM | To | Roger Peven/WAEG/09/FDO@FDO |
| | cc | Bill Proctor <Bill_Proctor@fd.org>, mark@jamlegal.com, Thomas Monaghan <Thomas_Monaghan@fd.org> |
| | Subject | RE: Budget |

From my perspective, assuming you cannot get an LWOP for Jet's plea and we go to trial, we need to figure out what life saving themes we might be able to get some help with from the govt's witnesses - the theory of frontloading some mitigation into the guilt.  That could require interviewing some of the govt witnesses and thinking about how to try to use what bits and pieces they may offer us and could require consulting with experts.

Do we know if the govt will put on Jet's other murders in the guilt phase or as aggrevators in penalty only?

Roger Peven/WAEG/09/FDO

| Roger<br>Peven/WAEG/09/FDO<br><br>05/10/2007 11:08 AM | To | mark@jamlegal.com |
| | cc | Bill Proctor <Bill_Proctor@fd.org>, Debra Garvey <Debra_Garvey@fd.org>, Thomas Monaghan <Thomas_Monaghan@fd.org> |
| | Subject | RE: Budget |

Exh. 29 - 000244

We need to talk about strategy for both phases at our next meeting.  I do not understand fully your position on the plea issue.   I expect Jet will want to enter a plea but we will have to wait and see.  He has already fully confessed to the events at the CDA house so there is no need for experts for any evidence there.  As to forensics on the charged counts,  I don't see what expert testimony could counter the governments case.  Mark---maybe you should call me and discuss this further.
mark@jamlegal.com



**mark@jamlegal.com**

05/10/2007
10:57 AM

**To** Roger Peven <Roger_Peven@fd.org>

**cc** Bill Proctor <Bill_Proctor@fd.org>, Debra Garvey <Debra_Garvey@fd.org>, Thomas Monaghan <Thomas_Monaghan@fd.org>

**Subject** RE: Budget

```
It is my hope that he does not enter a plea. Nevertheless, unless or until he
does I should include something about the guilt/merit phase
invesitgation/preparation in the budget. Do we need forensics, lab tests,
anything  to counter the Gov't's case?


> -------- Original Message --------
> Subject: Re: Budget
> From: Roger Peven <Roger_Peven@fd.org>
> Date: Thu, May 10, 2007 10:33 am
> To: mark@jamlegal.com
> Cc: Bill Proctor <Bill_Proctor@fd.org>,  Debra Garvey
> <Debra_Garvey@fd.org>,  Thomas Monaghan <Thomas_Monaghan@fd.org>
>
> First, I doubt there will (or perhaps should) be a guilt phase.  Very few
> witnesses will need to be interviewed.  I am unaware of any experts.
>
>
>
>                  mark@jamlegal.com
>
>
>                  05/10/2007 06:54
>  To
>                  AM                          Roger Peven
> <Roger_Peven@fd.org>
>
>                                                                       cc
>
>                                              Bill Proctor
> <Bill_Proctor@fd.org>,
>
>                                              Debra Garvey
> <Debra_Garvey@fd.org>,
>
>                                              Thomas Monaghan
>
>                                              <Thomas_Monaghan@fd.org>
>
>                                                                  Subject
```

```
>
>                                        Budget
>
>
>
>
>
>
>
>
>
>
>
> Bill and Roger:
>
> Can you send me an estimated number of witnesses you think will need
> to be
> interviewed for the guilt phase? Also, what experts do you need for the
> guilt phase? I would like to include this information into the
> supplemental
> budget.
>
> If you could get this to me by Friday, that would be great. No later than
> Monday, however.
>
> Thanks,
> Mark
>
>
>
>
> > -------- Original Message --------
> > Subject: Re: IMSI mail
> > From: Roger Peven <Roger_Peven@fd.org>
> > Date: Tue, May 08, 2007 1:29 pm
> > To: Thomas Monaghan <Thomas_Monaghan@fd.org>
> > Cc: Bill Proctor <Bill_Proctor@fd.org>, Debra Garvey
> > <Debra_Garvey@fd.org>, judyclarke@jcsrlaw.net, mark@jamlegal.com
> >
> > Thanks. Let us know the answer when you get it. Thanks
> >
> >
> >
> >
> >                Thomas
> >
> >                Monaghan/IDG/09/F
> >
> >                DO
> >    To
> >                                       judyclarke@jcsrlaw.net,
> >
> >                05/08/2007 11:41       mark@jamlegal.com, Roger
> >
> >                AM                     Peven/WAEG/09/FDO@FDO, Debra
> >
> >                                       Garvey/CACF/09/FDO@FDO, Bill
> >
> >                                       Proctor/WAEG/09/FDO@FDO
> >
> >
```

Exh. 29 - 000246

```
> cc
> >
> >
>
> >
> Subject
> >
> >                                   IMSI mail
> >
> >
>
> >
>
> >
>
> >
>
> >
>
> >
>
> >
> >
> >
> > I am about to file the motion re jail logs.  Before doing so, I called
> > the
> > prison and spoke with the woman in the warden's office who is our
> > contact.
> > I asked about their general mail policy.  She advised that they do
> > open and
> > review inmate mail (both outgoing and incoming) to ensure it is not
> > illegal
> > (e.g. threats/hate mail/etc.)  Then, they send it off if it is ok.  She
> > said they do NOT make copies of the mail unless it is flagged as a
> > concern.
> >
> > I then asked what the status of Mr. Duncan's mail is.  She indicated
> that
> > she had no idea his mail was being collected and copied (I believe
> her).
> > She said that perhaps an officer in the "investigations" unit at the
> > prison
> > may have been doing that.  She promised to make some inquiries and
> let me
> > know what is happening.
```



**Debra**
**Garvey/CACF/09/FDO**
05/14/2007 06:24 PM

To   "Judy Clarke" <judyclarke@jcsrlaw.net>

cc

bcc

Subject   RE: Supplemental Budget - PLEASE READ AND COMMENT ASAP

I just talked to Mark and he said Roger is basically saying he doesn't want to do all of the proposed mitigation work, as it's unnecessary and not likely to work and the client won't cooperate with it. I told Mark it's an easy conversation for me - 1] Wiggins is still the law, 2] we are ineffective if we don't prepare for the presentation, 3] we don't need to decide what kind of presentation meets the client's needs yet; and 4] I feel comfortable with the sorting/organizing process I did as to the mit witnesses to talk to and if it's not where Roger wants to go, I can't help any futher.

Mark said he believes Roger sort of woke up to the fact that he'll be "exposed" by the supplemental budget. I don't know if that's it, or if he just decided he knows better. Whatever/whichever. I'm participating by phone. Mark predicted a real battle; we'll see.

"Judy Clarke" <judyclarke@jcsrlaw.net>



"Judy Clarke"
<judyclarke@jcs
rlaw.net>

05/14/2007
06:07 PM

To   "'Debra Garvey'" <Debra_Garvey@fd.org>

cc

Subject   RE: Supplemental Budget - PLEASE READ AND COMMENT ASAP

```
I talked with Mark today (will forward his email to me to you, it prompted
me to call him) - he told me he is going to meet with Roger on Wednesday,
that Roger suggested they should talk in person about this.  I offered to
conf call in, Mark said he thought he and Roger needed to confront this by
themselves (or at least without me).

-----Original Message-----
From: Debra Garvey [mailto:Debra_Garvey@fd.org]
Sent: Monday, May 14, 2007 6:00 PM
To: Judy Clarke
Subject: RE: Supplemental Budget - PLEASE READ AND COMMENT ASAP

Mark left me a message today saying that Roger wants a conference call
amongst us on Weds. of this week because he doesn't think the proposed
mitigation plan is necessary, as "traditional mitigation" in this case
won't work.  I assume that's prompted by this budget stuff, though he's
said those things before - but it only matters because he has to explain
it.  And maybe he talked to John Adams to get reminded of why he thinks
it's all overkill [bad choice of words].

I'll let you know how it goes.


                    "Judy
                    Clarke"
                    <judyclarke                                          To
```

```
@jcsrlaw.ne          "'Mark A. Larranaga'"
t>                   <mark@jamlegal.com>,
                     <marissa_egland@fd.org>, "'Debra Garvey'"
05/14/2007           <debra_garvey@fd.org>,
03:33 PM             <jennifer_mccann@fd.org>, "'Thomas
                     Monaghan'" <Thomas_Monaghan@fd.org>,
                     "'Roger Peeven'" <Roger_Peven@fd.org>,
                     "'Bill Proctor'" <bill_proctor@fd.org>
                                                          cc
                     "'Judy Clarke'" <judyclarke@jcsrlaw.net>
                                                     Subject
                     RE: Supplemental Budget - PLEASE READ AND
                     COMMENT ASAP
```

Mark et al - a few thoughts.

1. In addition to the shortened time for trial, and getting the actual discovery, I'd front as a "new" circumstance that a review of the mit work up for the state case showed it to have been incomplete and inadequate - that is really what the additional money looks like it is for (in addition to more experts, which is explained by the loss of FY08)
2. to explain Tom's expanded hours, I'd add as a reason the quicker trial date
3. unless Rog thinks he covered it adequately in the budget he submitted, 10 trips to interview witnesses doesn't seem to justify 100% of Bill's time (this is only an issue because you're looking for 2 more fulltime investigators)
4. you might need to explain why Deb remains at 50% (she has another fulltime job)
5. I guess you're ok on the $75 for the mit investigators since Deb seems to be overseeing the work, but some folks will charge around $100 (or more) an hour - I'm guessing you've pinned this down?
6. the $60K for the jury consultant will raise eyebrows, though I think that may be a realistic estimate given the publicity in the case, the likely use of a JQ, and the length of time it'll take to pick a jury if god forbid you have to do that - I'd say $125 per hour
7. what about any focus group work, or is that within the $60 for the trial consultant?  I don't know whether focus group work is a hot button for the AO or not, our Rudolph judge funded a couple focus groups, and the prosecution did some as well
8. I'd add estimated hourly rates for psychiatrist, neurologist and radiologist
9. What about a social history witness?  Or will that role be filled by the sex abuse or childhood expert?
10.     The budget should probably make clear that $ for Tom will come out of Boise, and $ for Deb out of the LA FPD (it is the Federal Public Defender for the Central District of California, not whatever you have it titled) - unless you've made arrangements for them to be reimbursed by FDEW (which might be a pain for them).
11.     Have you included trial related hotel/expense stays $ for the team?

Exh. 30 - 000249

present some penalty testimony) funding?
13.    Maybe lump some expert expense money into one line item and
explain it is an estimate, currently unclear what experts may need to
travel to Boise to see the D

Seems to me this budget needs to in some way also recognize what costs are
in addition to (or are duplicated in) the budget Roger already got
approved.   The final thing to think about is running this budget, when
you've finalized it, by Judge Lodge - if you think he'll give it the thumbs
up, and Roger can tell the ODS Committee the trial judge thinks it is
realistic, then that's a leg up on approval.   It'll also let Lodge know the
impact of his shorten trial date, and your efforts to meet his (maybe
unrealistic) trial date.

From: Mark A. Larranaga [mailto:mark@jamlegal.com]
Sent: Monday, May 14, 2007 2:55 PM
To: marissa_egland@fd.org; 'Debra Garvey'; jennifer_mccann@fd.org; 'Thomas
Monaghan'; 'Roger Peeven'; 'Bill Proctor'
Cc: 'Judy Clarke'
Subject: Supplemental Budget - PLEASE READ AND COMMENT ASAP

Please find the most recent version of the Supplemental Budget. Please
review it and make comments to me ASAP so we can submit this to the AO
immediately. The time for trial is moving close and we have done very
little to be prepared. It is my hope this budget will prompt necessary
staffing, experts, and allow us to move forward.

Roger, since I wasn't sure whether you wanted me to incorporate by
reference the Initial Budget in its entirely, I merely mirrored what you
requested as it relates to you, Bill, Jennifer, and Marissa. I did,
however, include travel time for you and Bill to conduct interviews.

I believe that I included enough travel time for investigators and
attorneys. Also included is a list of experts that I think we will need.
What is not included, however, is the travel associated with each expert. I
wasn't sure whether that should be itemized separately or included the
overall total requested for that specific expert. I think the latter since
we are not in a position to know which expert will need to travel for
pre-trial prep or trial testimony.

I would like to get this to the AO for review no later than the end of this
week.


Mark A. Larrañaga
Law Offices of Walsh & Larrañaga
705 Second Ave., Suite 405
Seattle, WA 98104
206.325.7900



**Debra
Garvey/CACF/09/FDO**

05/15/2007 04:37 PM

To   Roger Peven/WAEG/09/FDO@FDO

cc   Bill Proctor/WAEG/09/FDO@FDO, "Mark Larranaga"
<mark@jamlegal.com>, Thomas Monaghan/IDG/09/FDO@FDO

bcc   judyclarke@jcsrlaw.net

Subject   Re: Team additions

The proposed mitigation investigation/potential witnesses memo that I sent around prior to our last meeting in Boise are the witnesses I think we need to interview for this case. If you're asking me to say in what order they need to be interviewed, I'd be interested in having a team discussion to decide that - but, generally, I would say we need to interview the immediate family members that have not been interviewed first, and then proceed from there. I didn't include anyone on that list that I thought should not be interviewed.

To the extent I listed some names of witnesses that Joyce interviewed [I'm thinking of some of the North Dakota folks she interviewed] that I didn't think were of any evidentiary value, I indicated that in that memo and said they are not a priority.

The potential themes memo that I also sent around prior to our last meeting in Boise, in my opinion, is the best we can do right now for identifying mitigation themes. Frankly, not enough work has been done in the case for me to say confidently that any particular theme should be in or out of a trial presentation. We need to get some interviews done before we'll know that.

Just in case anyone needs another copy of those two memos, they're attached here.

          

Potential Themes in the Duncan Case.wpd   Potential Witnesses in Duncan.wpd

thanks/deb




Roger Peven/WAEG/09/FDO

**Roger
Peven/WAEG/0
9/FDO**

05/15/2007
11:07 AM

To   Debra Garvey/CACF/09/FDO@FDO, "Mark Larranaga"
<mark@jamlegal.com>

cc   Bill Proctor/WAEG/09/FDO@FDO, Thomas
Monaghan/IDG/09/FDO@FDO

Subject   Re: Team additions




Deb:
It would be extremely helpful to me if you could offer some method to"prioritize" these witnesses. To that end identifiable "mitigation themes" would make sense. Thanks. Look forward to seeing you
Roger Peven
Executive Director
Sent Via Blackberry
   Debra Garvey
   ----- Original Message -----

      **From:** Debra Garvey
      **Sent:** 05/15/2007 09:44 AM PDT

**To:** "Mark A. Larranaga" <mark@jamlegal.com>
**Cc:** Bill Proctor; Roger Peven; Thomas Monaghan
**Subject:** Re: Team additions

I counted the names on the list I did of proposed mitigation interviews - there are 125 people.  I know someone said there were 200 names, but I think that's more all-inclusive than the priority interviews I was proposing.  And, as we all know, when you go out and do interviews, things change - new names come up of people to interview and others become less important.

Just to be clear for tomorrow's conversation.

thanks/deb

"Mark A. Larranaga" <mark@jamlegal.com>



"Mark A.
Larranaga"
<mark@jamle
gal.com>

05/14/2007
11:03 AM

To    "'Thomas Monaghan'" <Thomas_Monaghan@fd.org>, "'Debra Garvey'"
      <Debra_Garvey@fd.org>, "'Roger Peeven'" <Roger_Peven@fd.org>, "'Bill
      Proctor'" <Bill_Proctor@fd.org>

cc

Subject  Team additions

```
Here are the names that I got from Russ Stetler when I inquired.
[attachment "bell_courtney_cv.pdf" deleted by Debra Garvey/CACF/09/FDO]
[attachment "garvey_debra_cv.pdf" deleted by Debra Garvey/CACF/09/FDO]
[attachment "nuss_cheryl_cv.pdf" deleted by Debra Garvey/CACF/09/FDO]
[attachment "pemberton_nancy_cv.pdf" deleted by Debra Garvey/CACF/09/FDO]
[attachment "waller_dani_cv.pdf" deleted by Debra Garvey/CACF/09/FDO]
```

To:      Duncan Team

From:    Deb Garvey

Today's Date:   May 15, 2007

Case Name and FY #:   Joseph E. Duncan


Re:      Cheri Cox
         3045 Hartley Bridge Rd., Suite A
         Macon, GA  31216
         cell phone:  478.396.7401

Other Identifying Information:   Do not call her at home, or mail anything to her home address. Above is her office address and cell phone.

Date of the Interview:   May 8, 2007

_____

      I met Cheri at a restaurant in Warner Robins, Georgia.  She lives in Warner Robins with her husband, Bill.  She owns and manages a Dominos Pizza outlet, also known as Cox Pizza.  Her husband works on the air force base in Warner Robins.  Cheri retired from the air force a few years ago, after twenty years in the service.  They have two adult sons, Willie and Robert  - one son has just returned from Iraq, serving in the Airborne Rangers; their younger son is in the reserves.

      The FBI showed up at Cheri's house the summer Jet was arrested.  She came home from work one day and found two agents standing in her yard, waiting for her.  They were standing there talking with one of Cheri's neighbors.  Cheri told the agents to leave, to get off of her property.  She said they sat in a car outside of her house for two weeks after that, before they disappeared.  This experience, particularly involving the neighbor in her personal family issues, was very upsetting to Cheri and her husband.

      Cheri has not spoken to her mother in over 20 years.  She recently spoke to her father for the first time in several years [though something less than 20], when she went to Washington state for her brother, Bruce's funeral.  Her father was there and was so upset over losing what he termed his last remaining son, that Cheri resolved to reconnect with him.

      Cheri's sister, Teena, is Bruce's executor.  Teena asked Cheri to help her go through Bruce's computer looking for financial records.  Cheri did go through Bruce's computer and found a number of things in his computer files, including notes and documents he had collected in preparation for writing a book about Jet.  Cheri downloaded all of those items onto a zip drive, which she has.  She said she would copy the drive and send it to me.  Cheri is currently not speaking to Teena over an issue regarding some items in Bruce's house that their father wanted.

Memo
May 20, 2007
Page 2

Teena initially accused Cheri of stealing items, and then accused Cheri of encouraging their father to take things. Cheri said she definitely didn't steal anything and the only thing she encouraged her father to take was a framed poem he had sent Bruce some years earlier. Cheri was offended enough, that she has stopped communicating with Teena, until Teena apologizes.

Susan is the oldest Duncan sibling. She is divorced and living in Texas near San Antonio. She works at Sheppard Air Force base. She has a granddaughter living with her, the child of her daughter, Sarah. Cheri is in regular contact with Susan; Susan is coming to Georgia to visit Cheri in June and they are going together to Florida for a vacation. Later in our interview, Cheri said she was going to tell Susan to be sure to talk to me and was going to give Susan my phone number.

Cheri is second in birth order; Teena is third, Jet is fourth and Bruce was fifth. Cheri's earliest memories are about being beaten by her mother. Cheri and Jet were the two kids that Lillian beat the most frequently, though all of the Duncan kids were beaten at times. Cheri speculates that she and Jet were the two kids most likely to stand up for themselves, to try to talk their mother out of hurting them, which only made Lillian more angry. Lillian's preferred method of beating the kids, was to stand the offender in the corner and beat him or her with a belt. Cheri said her mother would beat her with whatever she could get her hands on, but a belt was often the weapon. Lillian took care to use the buckle end of the belt when she was hitting one of the kids; Cheri said the buckle hurt more and left wounds rather than welts. Lillian would administer a beating and then require the child she was beating to continue to stand in the corner. Sometimes Lillian would work herself up to another round of a beating on the child. When Lillian was finished, she would sometimes require the child to stand in the corner all night until it was time to go to school the next morning. Cheri remembers going to school with blood on her torn clothing from a beating the night before; she would arrive exhausted and barely functional for class.

No place was safe in the house. Cheri said she and Jet were frequently dragged out of bed where they had been sleeping. Lillian would literally pull them out of bed by their hair and drag them into the middle of the room to hit them. One time Cheri said a game had not been put away correctly. Lillian took each of the five kids one at a time into the bathroom and beat them, demanding to know who was responsible. Cheri finally told Lillian that it was her fault, though she knew her sister, Susan, was responsible. Cheri said she did that to protect Susan, and because she thought she was stronger then any of the other kids in withstanding their mother's abuse.

As an adult, looking back at her mother's behavior, Cheri believes her mother may have suffered from some variant of Munchausen by Proxy. Lillian took the kids to a doctor or to the hospital all of the time. Sometimes it was for things Lillian would describe to the doctors that only she could see or know. Sometimes Lillian took the kids to the doctor for injuries Lillian had caused - Susan's broken shoulder, Teena's broken arm - that Lillian would report had happened as an accident. Cheri now feels her mother got something out of those doctor's visits, some focus on Lillian and sympathy for what she was going through with her children. As a teenager,

Memo
May 20, 2007
Page 3

Lillian insisted that Cheri get her nose straightened; Lillian thought Cheri's nose was too crooked. Cheri wasn't interested in the surgery, she said, but did it because her mother was adamant that she needed to have it done. Lillian would often go to the doctor's office to talk about one of the other kids having crooked legs, or a crooked spine and needing treatment. Cheri thought that she and her siblings were seen very frequently at the base clinic in Germany, when they were living there. She didn't remember the names of any family doctors.

Cheri estimated she and Jet were beaten once or twice a week, at least. Cheri's method of avoiding a beating when she got a little older, was to go to the neighborhood church when they were living in Lawndale. Cheri went to the church after school and hung out, reading books, doing her homework, helping out in the office - anything to avoid going home. The church was a real haven for her. She said she was active in the church youth group, YMI. Jet and Bruce also participated in the church youth group. But, for whatever reasons, none of her siblings spent the same kind time at the church. Cheri can't remember Jet ever having an escape from Lillian, or a plan to avoid her wrath.

Cheri has scars from her mother's beatings, including a scar on her lip. Cheri said that Lillian made sure she split Cheri's lip in the same place two or three times, which caused the scar.

The children's father was rarely home, but when he was home, Lillian turned on him. Lillian and Joe also had very physical fights - things were thrown at each other, they both punched the other and hit each other with objects. Cheri said Joe never hit her or any of the other kids, in Cheri's memory. Joe would readily engage in fights with Lillian, however.

Cheri said Joe did not drink; he did not have a problem with alcoholism. Lillian rarely drank, but no one in their house was much of a drinker and no alcohol was kept in the house. Cheri said it was a very violent household, but alcohol played no role in the violence.

Cheri got away from home when she was 17 years old. Cheri joined the Air Force. She was underage when she wanted to join and at first, Lillian refused to sign the papers allowing Cheri to join. The pastor of the Lawndale church finally convinced Lillian to sign for Cheri. Cheri now believes the pastor knew what Lillian was doing to the kids at home, and Cheri in particular, and was trying to help her get away.

Cheri met her husband, Bill, in the Air Force. They married nearly 30 years ago and have the two boys. When Cheri's first son, Willie, was born, he had some significant health problems. Among other things, some of his intestines were outside of his body at birth. He was treated in the hospital for three or four weeks following his birth, before he was allowed to return home. Cheri needed surgery following Willie's birth, to correct problems the birth created for her. Sometime shortly after Willie came home and while Cheri was recovering from her own surgery, Lillian decided to come to their home to help them. Cheri and her husband and son were living in Las Vegas at the time; Cheri and Bill were both assigned to Nelles Air Force base. Bill's brother was also at their house, to try to be helpful to them. One day shortly after Lillian arrived, Bill's brother called Cheri and Bill at the hospital, asking where Lillian and baby Willie were.

Exh. 32 - 000255

Memo
May 20, 2007
Page 4

Cheri and Bill were shocked to hear Lillian wasn't at home with the baby.  Bill tracked Lillian down to the Las Vegas airport, where she had purchased a ticket to go home to Tacoma.  She told Bill that he and Cheri were not capable parents and that she had decided to take Willie home with her.  Lillian had not told anyone of this plan, prior to getting stopped at the airport.  Cheri said she hasn't spoken to her mother since that time, now some 22 or 23 years ago.

Cheri had very little knowledge of what was going on with Jet, once Cheri left home.  Most of what she now knows of Jet's history - the car accidents, his prior - she has learned since his most recent arrest.  She did know that Jet was in prison for many years and believes she may have some correspondence from him that she received during that time.

Cheri had not been in touch with her father, prior to seeing him at Bruce's funeral at the end of last year.  Now she has plans to be back in touch with him.  I asked her about the suggestions I had seen in various records that her father molested her.  She said he "came on" to her once or twice but nothing ever happened.  Cheri declined to tell me any details about what happened, where it happened or how old she was at the time.

Cheri said that Teena told her, that Jet had told Teena that he and his mother were intimate at some point.  Cheri was shocked, but then wondered if it was true or something Lillian somehow made up and convinced Teena of.  Teena is the sibling closest to Lillian - they live near each other and they talk somewhat frequently.  Cheri wants to ask Jet about it, but has not wanted to write a letter to him on the topic.

Cheri had no idea that either of her parents have living siblings.  She said she once met a cousin by the name of Kathy, who is the daughter of her mother's sister, Helen.  Other then Helen and Kathy, Cheri has very little knowledge of other family members.

Exh. 32 - 000256

Memo
May 20, 2007
Page 5

**Impressions and Considerations:**

Cheri is a very strikingly looking woman - tall, blonde, quite pretty. She presents in a very confident manner. She clearly enjoys running her business, said she likes working with young people, but that she's starting to get bored with it and may think of something else to do. She retired after 20 years in the Air Force and gets retirement pay and benefits.

Cheri said she has gotten a few letters from Jet since he's been in Boise - one was 26 or 27 pages long. Cheri thinks Jet sounds like he's "lost it" from the letters - he sounds extremely religious and very out of touch with reality in the letters.

Cheri was initially very hesitant in agreeing to see me; she actually never committed to seeing me in person. When we talked before I went to Georgia, she told me to bring a letter from a lawyer vouching for who I was and that I was working on Jet's behalf. When I got to Georgia and contacted her, she reluctantly agreed to see me. When we met, she examined the letter I had from Mark L. and my ID. She didn't want to see me at her house. Cheri was adamant that I not contact her at home again. I had spoken to her husband a couple of times on the phone in attempt to reach her. Cheri said her husband doesn't want her to have anything to do with this case or with me, but she said decided she wanted to talk to me nonetheless. In the future she asked that I call her on her cell phone only and mail things to her business rather than her home.

Cheri is interested in geneology and would like to see her father's military records and her parents' marriage certificate - both of which I told her I could send her copies of. She is also interested in contacting her extended family members. I didn't make any commitments as to their contact information. I think there are more details I can get from Cheri, if I spend time with her again. I want to "prove" myself to her by sending her these two documents and then gave her a little time before contacting her again. I do want to follow up with her about the things on Bruce's computer that she downloaded and said she would send to me. Cheri also told me that she would tell her sister, Susan, that Susan should talk to me, that I could be trusted. I hadn't necessarily planned to be the person to interview Susan, but I want to follow up with her given this connection.

/deb



**"Mark A. Larranaga"**
**<mark@jamlegal.com>**
05/29/2007 08:35 AM

To  <marissa_egland@fd.org>, "'Debra Garvey'"
<debra_garvey@fd.org>, <jennifer_mccann@fd.org>,
"'Thomas Monaghan'" <Thomas_Monaghan@fd.org>,

cc

bcc

Subject  Meeting

History:        ⏎ This message has been replied to.

Sorry... should have included in other email. Crudely, I have broken down the topics as follows:

    I.       Client contact issues:
    II.      Merit phase issues (mental defenses?)
    III.     Mitigation issues:
        a.   Childhood (injuries/ abuse/ social / etc)
        b.   Incarceration (diagnosis/ abuse/ failures/ infractions/ tests given (benefit or weakness of each/ polygraphs/ etc)
        c.   Post-incarceration ("normal" existence in ND/ epiphany with Shasta/ etc.)
        d.   Types of experts / tests needed by us (why?)
    IV.     Aggravation:
        a.   Letters sent out from jail...
        b.   Future dangerousness

Within each of these sections, I will pull insert facts that we have. I would welcome any input on these areas that may be significant. For example, Tom if you could jot down some of your conversations with Jet (something we all should do) and some disturbing content of the letters he has sent out.

Thanks,

Mark A. Larrañaga
Law Offices of Walsh & Larrañaga
705 Second Ave., Suite 405
Seattle, WA 98104
206.325.7900

Exh. 33 - 000258

**Team Meeting – May 29, 2007 (Seattle)**

I.  **Duncan:**
   a.  Competency issues?
   b.  Volunteer concerns (*I don't want to die, but know that I will... what if I indicate to the government and public that I want to die (although don't really want to)...*)
       i.  Communication that support or reject this concern
       ii.  Observations that support or reject this concern
   c.  Disruption with presentation of evidence concerns (*told family members not to assist; don't want to have mother testify; want to expose the "truth" about system; if I'm a byproduct of the system and thus bad, then the system must also be somewhat good since I returned Shasta; the retuning of Shasta is very important..*) :
       i.  Communication/observations that support or reject this concern
       ii.  Reasons for his position
       iii.  Ways to resolve this Issue (e.g., *"case" has a lot to offer... vs. he has a lot to offer*) – themes that he may support taking (or reject)
   d.  Do we want to have any mental health professions talk to and exam D
       i.  Will he participate? How to deal with this issue?
       ii.  If so, what type and what is the purpose?
       iii.  Should we start with counseling (see change in D that he is willing/interested in discussing issues of childhood, incarceration, crime, etc.?)

II.  **Merit Phase Issues**
   a.  Mental defenses?
   b.  Would D allow these defenses (*I want to plead; not important about whether I'm guilty or degree of guilt, only why it was done; don't want Shasta to testify)*
   c.  Types of experts/testing, if any?

III.  **Penalty Phase Issues:**
   a.  Potential Themes:
       i.  Trauma
       ii.  Mental illness in family
       iii.  Instability
       iv.  Environmental compromises
       v.  Physical injuries
       vi.  Sexual abuse
       vii.  Prison adjustment
       viii.  Future dangerousness (in prison)
       ix.  Failed system
       x.  Shasta

1

Exh. 34 - 000259

# FEDERAL DEFENDERS OF EASTERN WASHINGTON AND IDAHO

*Spokane, Washington*

TO:

FROM:

DATE:     May 31, 2007

RE:

---

We were given $200,900 for Duncan in FY07.
$36,200 for salary
$9.900 benefits
$71,400 travel
$4,800 Other Services
$66,000 experts
$12,600 equipment

As of 5/24/07 we have spent $39,316 on Duncan.
$26,846 travel
$241 RCU
$936 Other Services
$11,293 equipment

This means we have $161,584 available to use still and the following amounts left in these categories as of now:

$36,200 left in salary (Jaime started on 5/21 and we should use us $23,695 in salary by Sept 30)
$9,900 left in benefits (we should use $6,516 in benefits based upon 27.5% of the salary money we will use)
$44,554 left in travel
$3,623 left in other services
$66,000 left in experts
$1,307 left in equipment

Exh. 35 - 000260

**Judy Clarke**

| | |
|---|---|
| **From:** | Mark A. Larranaga [mark@jamlegal.com] |
| **Sent:** | Friday, June 29, 2007 2:42 PM |
| **To:** | marissa_egland@fd.org; 'Debra Garvey'; 'Roger Peeven'; 'Judy Clarke'; 'Thomas Monaghan'; masonangie@yahoo.com; festers206@aol.com |
| **Subject:** | Expert letter |
| **Attachments:** | Signed retainer letter.pdf |

Roger:

What is the status of the "expert letters"? I would like one for Craig Haney, Myla Young, and Zakee Mathews. All three have indicated they are interested and available to work on the case and so they won't take other cases, I would like to move on actually retaining their services. Also, Karen and Angie (I believe Bruce has previously signed one) have not received their letters. I have attached the letters that I sent to them, which they signed but apparently it needs to be on the Federal Defender's letterhead and signed by you.

Please let me know the status of these letters so I can start sending some materials to the experts (in particular Dr. Haney could start reviewing the DOC records that have been summarized).

Thanks,

Mark A. Larrañaga
Law Offices of Walsh & Larrañaga
705 Second Ave., Suite 405
Seattle, WA 98104
206.325.7900

Exh. 36 - 000261

**Judy Clarke**

---

| From: | Mark A. Larranaga [mark@jamlegal.com] |
|---|---|
| Sent: | Friday, June 29, 2007 2:31 PM |
| To: | 'Judy Clarke' |
| Subject: | FW: Team Meeting |

Sorry, not sure if you were on this email.

Mark A. Larrañaga
Law Offices of Walsh & Larrañaga
705 Second Ave., Suite 405
Seattle, WA 98104
206.325.7900

---

**From:** Mark A. Larranaga [mailto:mark@jamlegal.com]
**Sent:** Friday, June 29, 2007 10:42 AM
**To:** 'marissa_egland@fd.org'; 'Debra Garvey (debra_garvey@fd.org)'; 'masonangie@yahoo.com'; 'Thomas Monaghan (Thomas_Monaghan@fd.org)'; 'Roger Peeven (Roger_Peven@fd.org)'; 'Bill Proctor (bill_proctor@fd.org)'; 'festers206@aol.com'; 'Bruce Whitman'
**Subject:** Team Meeting

Our next team meeting will be Thursday, July 19th at 1:00 (Boise time). This will be a "phone" meeting. I will send out an agenda for that meeting as it gets closer. From our meeting yesterday, here is what our respective assignments are:

1. Deb: Will forward releases to Karen, continue with social history, and attempt to contact with Cheri.
2. Angie: Will interview the witnesses that were discussed yesterday. Will set up date to meet with dad (Mark is going to attend this meeting as well), get releases;
3. Bruce: List of "incarceration" witnesses. These witnesses will be categorized as follows: (1) professional (mental health, medical, psychs); (2) prison officials (jail officers, probation officers, guards, etc.); (3) inmates (self-explanatory); and (4) "visitors". This "incarceration" includes all time spent in prison/jail (including current).
4. Karen: Continue document log. Obtain additional documents. Start preparing interviews with "Tacoma" witnesses. Mark and Karen will set up appointment with Mom and sister.
5. Tom: Get releases signed by client. Continue to review discovery, including letters sent out by client. Will provide statements given by family members to government to Angie. Meet with Mark, Rita and Roger to go over a list of legal challenges (proposed date is August 2nd).
6. Roger: update information on "settlement". Supplemental budget. Get "expert letters" signed and sent out so we can get experts.
7. Mark:   Finish summaries of DOC records (ISRB is left to do). Start outline of legal issues. Attend interview with Dad. Set up meeting with Mom and Sister. Continue working on experts.

Outstanding issues that were discussed and need follow-up:

1. Get subpoena for the civil suit. This could be sent to Victoria Stein (plaintiff attorney) and/or agency that defended Washington State Hospital. **I am not sure whether we actually assigned this to anyone.**

**Please let me know if I missed or misstated any assignements.**

**Finally:** I wholeheartedly agree with Deb's suggested practice that investigators let the team know (in addition to Bill) what he/she is doing to eliminate duplication and increase efficiency.

Mark A. Larrañaga
Law Offices of Walsh & Larrañaga
705 Second Ave., Suite 405
Seattle, WA 98104
206.325.7900

**Judy Clarke**

| | |
|---|---|
| **From:** | Mark A. Larranaga [mark@jamlegal.com] |
| **Sent:** | Friday, June 29, 2007 1:31 PM |
| **To:** | 'Judy Clarke'; 'Debra Garvey' |
| **Subject:** | RE: Duncan |

We did. Basically it was in two parts: part I was with government to discuss protective orders, sealed docs, jury questionnaire (not much on this), and gag order.

Part II (without government): we explained to Lodge our status. How, now, after reviewing the mitigation received from the State case it was deficient in its lack of documentation and complete void of witness interviews. Thus, we "immediately" sought to retain three investigators to work full-time with that aspect. Simultaneously we discussed the case with a consulting mental health expert to help facilitate the types of experts needed (without telling who they are specifically, merely types of experts). We have attempted to reach them, which has been half successful. The problem, we explained, is most are not available with this trial date. Lodge that we meant specifically not available to testify for that trial date so we had to clarify they were not available to review materials (the materials we don't have yet). He seemed to understand that, but of course, did not make any promises. Finally, we encouraged monthly meetings with him so we can update him.

Mark A. Larrañaga

Law Offices of Walsh & Larrañaga

705 Second Ave., Suite 405

Seattle, WA 98104

206.325.7900

-----Original Message-----
From: Judy Clarke [mailto:judyclarke@jcsrlaw.net]
Sent: Sunday, July 29, 2007 1:00 PM
To: 'Mark A. Larranaga'; 'Debra Garvey'
Subject: RE: Duncan

Thanks, Mark.  What happened at the status conference?  My recollection is you all were going to start laying the groundwork for a continuance?

-----Original Message-----
From: Mark A. Larranaga [mailto:mark@jamlegal.com]
Sent: Friday, June 29, 2007 1:08 PM
To: 'Judy Clarke'; 'Debra Garvey'
Subject: RE: Duncan

Thanks. You may find somewhat useful, here is the agenda that we plowed through.

Mark A. Larrañaga

Exh. 36 - 000264

Law Offices of Walsh & Larrañaga

705 Second Ave., Suite 405

Seattle, WA 98104

206.325.7900


-----Original Message-----
From: Judy Clarke [mailto:judyclarke@jcsrlaw.net]
Sent: Sunday, July 29, 2007 12:45 PM
To: 'Debra Garvey'; 'Mark A. Larranaga'
Subject: RE: Duncan

I'll plan to come Aug 2, and call in on July 19.  And, Mark, I'll try to reach you next week
to catch up on the case.  It is extraordinarily helpful to be cc'd on emails so I can try to
stay current on the work and be helpful during your meetings.

-----Original Message-----
From: Debra Garvey [mailto:Debra_Garvey@fd.org]
Sent: Friday, June 29, 2007 10:42 AM
To: Mark A. Larranaga
Cc: judyclarke@jcsrlaw.net
Subject: Re: Duncan

Judy, the next in-person meeting in Boise is 7/19.  It would be great if you would come.
Yesterday wasn't the worst meeting ever, but it wasn't pretty.  Mark got through his agenda,
but only by pulling Roger and Bruce W. through it.

/deb




          "Mark A.
          Larranaga"
          <mark@jamlegal.co                               To
          m>                    <judyclarke@jcsrlaw.net>, "'Debra
                                Garvey'" <Debra_Garvey@fd.org>
          06/28/2007 04:43                                 cc
          PM
                                                       Subject
                          Duncan




Judy:

Exh. 36 - 000265

I believe you are on vacation, which I hope you are enjoying. I wanted to write to give you a status of the case. We had a team meeting today (in
Seattle) to give out marching orders. Although chaotic, I believe it was successful.

In an earlier email that you were cc'd on, I have sent Roger a list of experts, hourly rate, and an estimation of hours. I was told he needed this for the AO, who wanted something provided to them regarding the entire case in the next week or so. Besides continued efforts to retain experts and get information to them, I have not followed up with budget matters.

Our plan is to have team meetings every first and third Thursdays, with the first Thursday meeting to be in person. Given that next week is July 4th, we considered today's meeting to take its place. If you could participate in any of the meetings (either in person or by phone), I think would go a long way and be greatly appreciated.

Finally, at some point in the near future I would like to discuss with you ways to best accomplish a settlement on this case.

Talk to you soon,

Mark A. Larrañaga
Law Offices of Walsh & Larrañaga
705 Second Ave., Suite 405
Seattle, WA 98104
206.325.7900

**Judy Clarke**

---

| | |
|---|---|
| **From:** | Mark A. Larranaga [mark@jamlegal.com] |
| **Sent:** | Friday, June 29, 2007 1:08 PM |
| **To:** | 'Judy Clarke'; 'Debra Garvey' |
| **Subject:** | RE: Duncan |
| **Attachments:** | June 28th, 2007.doc |

Thanks. You may find somewhat useful, here is the agenda that we plowed through.

Mark A. Larrañaga

Law Offices of Walsh & Larrañaga

705 Second Ave., Suite 405

Seattle, WA 98104

206.325.7900


-----Original Message-----
From: Judy Clarke [mailto:judyclarke@jcsrlaw.net]
Sent: Sunday, July 29, 2007 12:45 PM
To: 'Debra Garvey'; 'Mark A. Larranaga'
Subject: RE: Duncan

I'll plan to come Aug 2, and call in on July 19.  And, Mark, I'll try to reach you next week
to catch up on the case.  It is extraordinarily helpful to be cc'd on emails so I can try to
stay current on the work and be helpful during your meetings.

-----Original Message-----
From: Debra Garvey [mailto:Debra_Garvey@fd.org]
Sent: Friday, June 29, 2007 10:42 AM
To: Mark A. Larranaga
Cc: judyclarke@jcsrlaw.net
Subject: Re: Duncan

Judy, the next in-person meeting in Boise is 7/19.  It would be great if you would come.
Yesterday wasn't the worst meeting ever, but it wasn't pretty.  Mark got through his agenda,
but only by pulling Roger and Bruce W. through it.

/deb


|  |  |  |
|---|---|---|
| "Mark A. Larranaga" <mark@jamlegal.com> | | To |
| | <judyclarke@jcsrlaw.net>, "'Debra Garvey'" <Debra_Garvey@fd.org> | |
| 06/28/2007 04:43 PM | | cc |

Exh. 36 - 000267

Subject

Duncan

Judy:

I believe you are on vacation, which I hope you are enjoying. I wanted to write to give you a status of the case. We had a team meeting today (in
Seattle) to give out marching orders. Although chaotic, I believe it was successful.

In an earlier email that you were cc'd on, I have sent Roger a list of experts, hourly rate, and an estimation of hours. I was told he needed this for the AO, who wanted something provided to them regarding the entire case in the next week or so. Besides continued efforts to retain experts and get information to them, I have not followed up with budget matters.

Our plan is to have team meetings every first and third Thursdays, with the first Thursday meeting to be in person. Given that next week is July 4th, we considered today's meeting to take its place. If you could participate in any of the meetings (either in person or by phone), I think would go a long way and be greatly appreciated.

Finally, at some point in the near future I would like to discuss with you ways to best accomplish a settlement on this case.

Talk to you soon,

Mark A. Larrañaga
Law Offices of Walsh & Larrañaga
705 Second Ave., Suite 405
Seattle, WA 98104
206.325.7900

**Judy Clarke**

| | |
|---|---|
| **From:** | Mark A. Larranaga [mark@jamlegal.com] |
| **Sent:** | Friday, June 29, 2007 12:52 PM |
| **To:** | marissa_egland@fd.org; 'Debra Garvey'; masonangie@yahoo.com; jennifer_mccann@fd.org; 'Thomas Monaghan'; 'Roger Peeven'; 'Bill Proctor'; festers206@aol.com; 'Bruce Whitman' |
| **Cc:** | judyclarke@jcsrlaw.net |
| **Subject:** | Duncan Team |

Bill, I neglected to include you on the "to do" list. It is my understanding that you have been working on the government discovery as it relates to the "crime" and picking out potential witnesses that may be useful at the penalty phase (e.g., arresting officer, etc.) and putting together "trial notebooks" for each. Can you give us an update on this at our next team meeting? If my understanding is mistaken and you are not doing this (or don't plan on doing this) please let me know so we can make sure it does get done.

For what it's worth, we are moving forward with the following working formula:

1. non-incarceration (0 – 17 years and time in North Dakota), this includes family members, friends, school, medical, acquaintances, etc. Angie is working on this section.
2. incarceration (Washington State incarceration as well as Idaho incarceration). This includes mental health, inmates, probation officers, etc. Bruce is working on this.
3. "crime" investigation (potential penalty phase witnesses, including mitigation or aggravation witnesses). Bill is working on this
4. Document collection of all three areas where necessary – Karen (she is also doing some non-incarceration witnesses that live in Seattle area.
5. Chronology/social history: Deb is working on this.

Please let me know if there is any confusion over this working format.

Thanks,


Mark A. Larrañaga
Law Offices of Walsh & Larrañaga
705 Second Ave., Suite 405
Seattle, WA 98104
206.325.7900

**Judy Clarke**

| | |
|---|---|
| **From:** | Mark A. Larranaga [mark@jamlegal.com] |
| **Sent:** | Friday, June 29, 2007 11:18 AM |
| **To:** | marissa_egland@fd.org; 'Debra Garvey'; masonangie@yahoo.com; jennifer_mccann@fd.org; 'Thomas Monaghan'; 'Roger Peeven'; 'Bill Proctor'; festers206 @aol.com; 'Bruce Whitman' |
| **Cc:** | judyclarke@jcsrlaw.net |
| **Subject:** | Scheduled team meetings |

As we discussed, team meetings will be every first and third Thursday – with the first Thursday meeting to be "in person". All are 1:00 (Boise time) Here is the scheduled meeting for the next few months:

July 19th
August 2nd (in person);
August 16th
Sept. 6th (in person);
Sept. 20th
Oct. 4th (in person);
Oct. 18th

The dates/times may change if schedules require. If you know in advance that you are not available for one of these meetings, please let me know as soon as you can so we can try to work it out.


Mark A. Larrañaga
Law Offices of Walsh & Larrañaga
705 Second Ave., Suite 405
Seattle, WA 98104
206.325.7900

**Judy Clarke**

---

| | |
|---|---|
| **From:** | Debra Garvey [Debra_Garvey@fd.org] |
| **Sent:** | Friday, June 29, 2007 10:42 AM |
| **To:** | Mark A. Larranaga |
| **Cc:** | judyclarke@jcsrlaw.net |
| **Subject:** | Re: Duncan |

Judy, the next in-person meeting in Boise is 7/19.  It would be great if you would come.
Yesterday wasn't the worst meeting ever, but it wasn't pretty.  Mark got through his agenda,
but only by pulling Roger and Bruce W. through it.

/deb


```
            "Mark A.
            Larranaga"
            <mark@jamlegal.co                                              To
            m>                         <judyclarke@jcsrlaw.net>, "'Debra
                                       Garvey'" <Debra_Garvey@fd.org>
            06/28/2007 04:43                                               cc
            PM
                                                                      Subject
                            Duncan
```


Judy:

I believe you are on vacation, which I hope you are enjoying. I wanted to write to give you a
status of the case. We had a team meeting today (in
Seattle) to give out marching orders. Although chaotic, I believe it was successful.

In an earlier email that you were cc'd on, I have sent Roger a list of experts, hourly rate,
and an estimation of hours. I was told he needed this for the AO, who wanted something
provided to them regarding the entire case in the next week or so. Besides continued efforts
to retain experts and get information to them, I have not followed up with budget matters.

Our plan is to have team meetings every first and third Thursdays, with the first Thursday
meeting to be in person. Given that next week is July 4th, we considered today's meeting to
take its place. If you could participate in any of the meetings (either in person or by
phone), I think would go a long way and be greatly appreciated.

Finally, at some point in the near future I would like to discuss with you ways to best
accomplish a settlement on this case.

Talk to you soon,

Mark A. Larrañaga
Law Offices of Walsh & Larrañaga
705 Second Ave., Suite 405
Seattle, WA 98104
206.325.7900

**Judy Clarke**

| | |
|---|---|
| **From:** | Mark A. Larranaga [mark@jamlegal.com] |
| **Sent:** | Thursday, June 28, 2007 4:50 PM |
| **To:** | judyclarke@jcsrlaw.net; 'Debra Garvey' |
| **Subject:** | Duncan |

Judy:

I believe you are on vacation, which I hope you are enjoying. I wanted to write to give you a status of the case. We had a team meeting today (in Seattle) to give out marching orders. Although chaotic, I believe it was successful.

In an earlier email that you were cc'd on, I have sent Roger a list of experts, hourly rate, and an estimation of hours. I was told he needed this for the AO, who wanted something provided to them regarding the entire case in the next week or so. Besides continued efforts to retain experts and get information to them, I have not followed up with budget matters.

Our plan is to have team meetings every first and third Thursdays, with the first Thursday meeting to be in person. Given that next week is July 4th, we considered today's meeting to take its place. If you could participate in any of the meetings (either in person or by phone), I think would go a long way and be greatly appreciated.

Finally, at some point in the near future I would like to discuss with you ways to best accomplish a settlement on this case.

Talk to you soon,

Mark A. Larrañaga
Law Offices of Walsh & Larrañaga
705 Second Ave., Suite 405
Seattle, WA 98104
206.325.7900

**Judy Clarke**

| | |
|---|---|
| **From:** | Mark A. Larranaga [mark@jamlegal.com] |
| **Sent:** | Tuesday, June 26, 2007 3:51 PM |
| **To:** | 'Roger Peven'; 'Thomas Monaghan'; judyclarke@jcsrlaw.net; 'Debra Garvey'; marissa_egland@fd.org |
| **Subject:** | FW: Experts for budget |
| **Attachments:** | List of Experts.doc; Signed retainer letter.pdf |

Here is the list with proper spelling of Reuben's name, which is Gur.

Mark A. Larrañaga
Law Offices of Walsh & Larrañaga
705 Second Ave., Suite 405
Seattle, WA 98104
206.325.7900

---

**From:** Mark A. Larranaga [mailto:mark@jamlegal.com]
**Sent:** Tuesday, June 26, 2007 11:33 AM
**To:** 'Roger Peven'; 'marissa_egland@fd.org'; 'judyclarke@jcsrlaw.net'; 'Thomas Monaghan'; 'Debra Garvey'; 'marissa_egland@fd.org'
**Subject:** Experts for budget

Roger:

You asked me to draft up something that outlines the types of experts and expected hours (and if we know, the hourly rate).
Please find attached a list of those experts. I have attempted to contact each to determine their availability and interest. Those that have indicated their willingness, I requested their CVs and hourly rates. Some responses are pending so I don't know their hourly rates (indicated by "****""). For those experts, I took an educated guess.

I had a meeting with George last week to discuss estimated hours for each expert (except jury consultant). I included those hours as well. Because of the sporadic and incomplete nature of the investigation and collection of documents, we could not piecemeal which experts would be needed (or what percentage of their work) could be earmarked for fiscal year 2007 (Pre-Oct.) or fiscal year (post-Oct). Therefore, I did not separate them out in that manner.

Of course you know the process better than anyone, but it seems to me we should submit a budget that sets forth all the money we deem necessary for experts in one document.

PLEASE REPLY THAT YOU HAVE RECEIVED AND HAVE READ THIS. IF YOU HAVE ANY QUESTIONS ABOUT THIS DOCUMENT, PLEASE LET ME KNOW.

FINALLY, IT WAS MY HOPE THAT WE COULD GET THE EXPERT LETTERS SIGNED AND SENT TO SOME EXPERTS THAT CAN BE RETAINED NOW. I DRAFTED SOME LETTERS AND SENT THEM TO THE THREE INVESTIGATORS FOR THEIR SIGNATURE, ONLY TO LEARN LATER THAT IT HAD TO BE ON THE FED PD LETTERHEAD AND SIGNED BY YOU. AS FAR AS I KNOW THIS HAS NOT BEEN DONE. I WOULD ALSO LIKE TO SEND THE FOLDERS AND SUMMARIES THAT I HAVE COMPLETED OF ALL THE INCARCERATION RECORDS TO DR. CRAIG HANEY SO HE CAN START HIS REVIEW, BUT WOULD LIKE TO ACCOMPANY THE MATERIALS WITH AN "EXPERT LETTER." PLEASE LET ME KNOW THE STATUS OF THOSE LETTERS. I HAVE ATTACHED A COPY THAT I SENT.


See you on Thursday.

Mark A. Larrañaga
Law Offices of Walsh & Larrañaga

705 Second Ave., Suite 405
Seattle, WA 98104
206.325.7900

**Judy Clarke**

| | |
|---|---|
| **From:** | Debra Garvey [Debra_Garvey@fd.org] |
| **Sent:** | Thursday, June 07, 2007 4:25 PM |
| **To:** | Sean Kennedy |
| **Cc:** | judyclarke@jcsrlaw.net |
| **Subject:** | Duncan travel. |

There is going to be a half-day meeting in Boise next week, with the three new investigators hired to work on the Duncan case, that I would like to attend.  Mark Larranaga, the capital counsel on the case, has asked me to attend the meeting, in large part because he wants me to supervise some of this investigation.  I hope to get the team to agree to meet in the afternoon, so I can fly in early that morning and fly out that night, but if that doesn't work or if the meeting runs too long, I need to stay overnight.  I think I do not need a rental car - I hope to either get a ride from the airport to the FPD and back, or take a taxi if necessary.

I would need:
LAX to Boise and return.
Possibly one night.

Sean, one of the investigators they decided to hire is Angela Mason.  She's going to do the mitigation interviews of the family, friends, school mates, neighbors, etc.  I think she'll be great for this team.

thanks/deb

Exh. 36 - 000276

**Judy Clarke**

| | |
|---|---|
| **From:** | Roger Peven [Roger_Peven@fd.org] |
| **Sent:** | Thursday, June 07, 2007 9:21 AM |
| **To:** | Mark A. Larranaga |
| **Cc:** | bill_proctor@fd.org; 'Deb Garvey'; 'Judy Clarke'; lisa_werner@fd.org; marissa_egland@fd.org; Thomas_Monaghan@fd.org |
| **Subject:** | RE: Duncan - budget |

Mark-- Billing should go through my office

```
           "Mark A.
           Larranaga"
           <mark@jamlegal.co                                        To
           m>                    "'Judy Clarke'"
                                 <judyclarke@jcsrlaw.net>, "'Roger
           06/07/2007 08:58      Peven'" <Roger_Peven@fd.org>, "'Deb
           AM                    Garvey'" <debra_garvey@fd.org>,
                                 <marissa_egland@fd.org>,
                                 <lisa_werner@fd.org>,
                                 <bill_proctor@fd.org>,
                                 <Thomas_Monaghan@fd.org>
                                                                    cc

                                                               Subject
                                 RE: Duncan - budget
```

Per our meeting last week, I have retained the services of two additional investigators: Angie Mason and Ken Sanderson. I will write a letter for both indicating their services, which I believe is full-time at $100.00/hr.
It makes sense that Angie will work on interviewing family members, school teachers, social history individuals; and Karen will work primarily on document collection and limited family members (i.e., mom and sister that live here in Seattle area).

To be clear, I am not indicating a retainer only some form of documentation in lieu of a court order indicating we are retaining their services.

Roger, it is my understanding that travel and payment (every other week?) should go through your office – is that correct?

Mark A. Larrañaga
Law Offices of Walsh & Larrañaga
705 Second Ave., Suite 405
Seattle, WA 98104
206.325.7900

From: Judy Clarke [mailto:judyclarke@jcsrlaw.net]
Sent: Monday, June 04, 2007 12:52 PM
To: 'Roger Peven'; 'Mark A. Larranaga'; 'Deb Garvey'; marissa_egland@fd.org;
lisa_werner@fd.org; bill_proctor@fd.org; Thomas_Monaghan@fd.org
Subject: Duncan - budget

Roger – I talked with Mary Beth, your budget analyst.  She's going to call you/Lisa re budget
issues, how to handle 07/08 etc.  Seems like she's on top of your budget issues, and I should
get out of the middle.  Let me know if/when/how I can help.  If you don't hear from her, you
might call her before submitting the budget.

**Judy Clarke**

| | |
|---|---|
| **From:** | Mark A. Larranaga [mark@jamlegal.com] |
| **Sent:** | Thursday, June 07, 2007 9:08 AM |
| **To:** | 'Judy Clarke'; 'Roger Peven'; 'Deb Garvey'; marissa_egland@fd.org; lisa_werner@fd.org; bill_proctor@fd.org; Thomas_Monaghan@fd.org |
| **Subject:** | RE: Duncan - budget |

Per our meeting last week, I have retained the services of two additional investigators: Angie Mason and Ken Sanderson. I will write a letter for both indicating their services, which I believe is full-time at $100.00/hr. It makes sense that Angie will work on interviewing family members, school teachers, social history individuals; and Karen will work primarily on document collection and limited family members (i.e., mom and sister that live here in Seattle area).

To be clear, I am not indicating a retainer only some form of documentation in lieu of a court order indicating we are retaining their services.

Roger, it is my understanding that travel and payment (every other week?) should go through your office – is that correct?

Mark A. Larrañaga
Law Offices of Walsh & Larrañaga
705 Second Ave., Suite 405
Seattle, WA 98104
206.325.7900

---

**From:** Judy Clarke [mailto:judyclarke@jcsrlaw.net]
**Sent:** Monday, June 04, 2007 12:52 PM
**To:** 'Roger Peven'; 'Mark A. Larranaga'; 'Deb Garvey'; marissa_egland@fd.org; lisa_werner@fd.org; bill_proctor@fd.org; Thomas_Monaghan@fd.org
**Subject:** Duncan - budget

Roger – I talked with Mary Beth, your budget analyst. She's going to call you/Lisa re budget issues, how to handle 07/08 etc. Seems like she's on top of your budget issues, and I should get out of the middle. Let me know if/when/how I can help. If you don't hear from her, you might call her before submitting the budget.

**Judy Clarke**

---

**From:**       Thomas Monaghan [Thomas_Monaghan@fd.org]
**Sent:**        Wednesday, June 06, 2007 11:26 AM
**To:**          Roger Peven; mark@jamlegal.com; judyclarke@jcsrlaw.net
**Subject:**     Fw: Hello


This is the e-mail I sent back to Traci Whelan regarding her proposed protective order.  It
is based upon our discussions.  Please let me know if you guys have any other concerns.
----- Forwarded by Thomas Monaghan/IDG/09/FDO on 06/06/2007 12:25 PM -----

```
              Thomas
              Monaghan/IDG/09/F
              DO                                                    To
                                     "Whelan, Traci \(USAID\)"
              06/04/2007 11:46       <Traci.Whelan@usdoj.gov>
              AM                                                    cc

                                                                    Subject
                                     RE: Hello(Document link: Thomas
                                     Monaghan)
```

Traci,

Sorry for the delay in getting back to you -- I was out of the office most of last week.

As for the protective order, I believe the only concern we had was stipulating to the manner
in which SG may testify.  While I don't believe we are saying we will never agree to such a
procedure, I think our group wanted some additional time to discuss it.

Certainly we have no objection to the parts of the protective order that would track the
statute (3509); in fact, the statute already precludes us from identifying the victims, etc.

Let me know how this affects your position, as I can bring it up again with our people in the
immediate future.

Tom

```
              "Whelan, Traci
              \(USAID\)"
              <Traci.Whelan@usd                                    To
              oj.gov>                "Thomas Monaghan"
                                     <Thomas_Monaghan@fd.org>
              05/29/2007 11:11                                      cc
              AM
```

                                                            Subject
                              RE: Hello


Tom
  Are we still okay on the protective order?


Traci J. Whelan
AUSA
District of Idaho
208-667-6568

-----Original Message-----
From: Thomas Monaghan [mailto:Thomas_Monaghan@fd.org]
Sent: Friday, April 13, 2007 4:43 PM
To: Whelan, Traci (USAID)
Subject: RE: Hello

Hi Traci,

I think the protective order you forwarded will be acceptable, although I still need to
confirm with the other attorneys.  Just to let you know, I will be out of the office next
week, returning the following Monday.
If you can hold off on this until then, I'll get back to you.  If you need something sooner,
please give Mr. Peven a call while I'm gone.

Hope you have a great weekend.

Tom



            "Whelan, Traci

            \(USAID\)"

            <Traci.Whelan@usd
To
            oj.gov>                    "Thomas Monaghan"

                                       <Thomas_Monaghan@fd.org>


            04/10/2007 12:08
cc
            PM

Exh. 36 - 000281

Subject                                            RE: Hello

Thank you Tom for looking at this and forwarding to your team members.
I appreciate it.  I know Wendy is waiting for a response from Mr.
Larrinaga on the gag order.  So thanks for getting back to me so quickly.

Traci J. Whelan
AUSA
District of Idaho
208-667-6568

-----Original Message-----
From: Thomas Monaghan [mailto:Thomas_Monaghan@fd.org]
Sent: Tuesday, April 10, 2007 9:56 AM
To: Whelan, Traci (USAID)
Subject: Re: Hello

Hi Traci,

Not certain we have divvied up the responsibilities as to Shasta-related issues, but I will
forward this to the other defense team members and get back to you.  Hope you're well.

Tom

|  |  |  |
|---|---|---|
| | "Whelan, Traci | |
| | \(USAID\)" | |
| | <Traci.Whelan@usd | |
| To | oj.gov> | "Thomas Monaghan" |
| | | <Thomas_Monaghan@fd.org> |
| | 04/09/2007 03:03 | |
| cc | | |

Exh. 36 - 000282

PM


Subject

                              Hello








Tom,
   Based upon the court hearing, I am curious if you will be handling Shasta related issues
for the trial.  I have roughed out a protection order which is attached to this email.(it is
very rough-no headers or anything as of yet...you have to scroll down to the order)  Would
you please look at it, staff it with your team and let me know if we can submit it to the
judge?
Thank you very much.


<<Comes protective.wpd>>


Traci J. Whelan
AUSA
District of Idaho
208-667-6568 (See attached file: Comes protective.wpd)

## Judy Clarke

| | |
|---|---|
| **From:** | Judy Clarke [judyclarke@jcsrlaw.net] |
| **Sent:** | Tuesday, July 17, 2007 12:09 PM |
| **To:** | Sean Kennedy |
| **Cc:** | Judy Clarke |
| **Subject:** | Re: |

Thanks. I'm going to their team mtg in early August. I just recommended to Roger that they seek appointment of another lawyer and the 3005 lawyer is drafting the motion. Larranaga wants Matt Rubenstein and Matt is open to being appointed. We'll see. Roger has made a mess of the case budget, which today I've tried to help him (again) straighten out. After our call today, he wants me to call him back this afternoon. I don't know what's going on with him but i'm watching.

Sent from my Verizon Wireless BlackBerry

-----Original Message-----
From: Sean Kennedy <Sean_Kennedy@fd.org>

Date: Tue, 17 Jul 2007 13:07:13
To:"Judy Clarke" <judyclarke@jcsrlaw.net>
Subject: Re:

Judy, let me know if you need me to do anything. I'm back in L.A. Friday evening. At the conference I asked FD Roger Pevin how his death case was going. Between us, I got an extraordinarily hostile response--even by my standards. He dismissed Deb as a "real true believer," and mocked mitigation development in such away that I was somewhat pissed off. I said that all I want in that context is a mitgation investigator who gives me choices. He assented, begrudgingly. The whole conversation was odd because Roger and I have always been friendly. Later FD Dick Rubin spoke to me privately. In his view, the team is falling apart. He thinks Roger is actively interfering with the mitigation investigation. I think he would really appreciate it if one of the resource counsel--he prefers you, but would take any of you--would intervene by coming to Idaho and meeting with both factions. Dick is really worried and upset that a disaster is unfolding right in front of him. It sounds like he is unable to get anywhere with Roger. Maybe a neutral broker would help.  What do you think?

----- Original Message -----
From: "Judy Clarke" [judyclarke@jcsrlaw.net]
Sent: 07/17/2007 10:29 AM MST

Cc: Sean Kennedy
Subject: RE: Vineland

-----Original Message-----

Sent: Tuesday, July 17, 2007 6:37 AM

1

Exh. 37 - 000284

To: Judy Clarke
Subject: Re:



Sent via BlackBerry by AT&T

-----Original Message-----
From: "Judy Clarke" <judyclarke@jcsrlaw.net>

Date: Tue, 17 Jul 2007 12:48:42



Sent from my Verizon Wireless BlackBerry

2

Exh. 37 - 000285

**<u>Agenda – Thursday, July 19th @ 1:00 (PDT) (phone)</u>**

Conference Line:  The phone number is 1-888-311-9051 pin code 21385.

I.     Client Issues
- Visit with mother
- Releases
- Expert contact
- Visiting Room
- Glasses
- Mis.

II.    <u>Update on each person's assignment from June 28th meeting:</u>

1. Deb: Will forward releases to Karen, continue with social history, and attempt to contact with Cheri.
2. Angie: Will interview the witnesses that were discussed yesterday. Will set up date to meet with dad (Mark is going to attend this meeting as well), get releases;
3. Bruce: List of "incarceration" witnesses. These witnesses will be categorized as follows: (1) professional (mental health, medical, psychs); (2) prison officials (jail officers, probation officers, guards, etc.); (3) inmates (self-explanatory); and (4) "visitors". This "incarceration" includes all time spent in prison/jail (including current).
4. Bill: working on the government discovery as it relates to the "crime" and picking out potential witnesses that may be useful at the penalty phase (e.g., arresting officer, etc.) and putting together "trial notebooks" for each.
5. Karen: Continue document log. Obtain additional documents. Start preparing interviews with "Tacoma" witnesses. Mark and Karen will set up appointment with Mom and sister.
6. Tom: Get releases signed by client. Continue to review discovery, including letters sent out by client. Will provide statements given by family members to government to Angie. Meet with Mark, Rita and Roger to go over a list of legal challenges (proposed date is August 2nd).
7. Roger: update information on "settlement". Supplemental budget. Get "expert letters" signed and sent out so we can get experts.
8. Mark:   Finish summaries of DOC records (ISRB is left to do). Start outline of legal issues. Attend interview with Dad. Set up meeting with Mom and Sister. Continue working on experts.

III.   <u>New Assignments and deadlines</u>
IV.   <u>Up-coming meeting</u>

August 2nd (in person);
August 16th
Sept. 6th (in person);
Sept. 20th
Oct. 4th (in person);

Oct. 18th

Exh. 38 - 000287

I.  Status of Case:
   a. Trial date:
      i.   July 2, 2005: Detained in Idaho
      ii.  August 8, 2005: Charged in Idaho State Court
      iii. Oct, 2005: Mr. Duncan enters pleas of guilty
      iv.  Jan. 18, 2007: Indicted by the USA
      v.   Jan. 23, 2007: USAO files notice of intent to seek the death penalty
      vi.  March 19, 2007: Hearing regarding trial date
      vii. Jan. 22, 2008: Current trial date

   b. Voluminous Materials:

      i. Gov't Discovery:
         1. Jan. 26, 2007: 30,000 pages/ 100 CDs/DVDs (Bates # 1- 32,557)
         2. Feb. 16, 2007: 4,000 pages / 20 CDs (Bates #32558 – 35473):
         3. March 7, 2007:      Bates 34852 – 35474
         4. March 19, 2007:    Bates 43597 – 43895
         5. April 6, 2007: Bates 43896 – 44899
         6. May 18, 2007: Bates 44900 – 45430
         7. July 6, 2007:   Bates 4531 – 46260

      ii. State "mitigation" material:
         1.

II. Status of Investigation:
   a. Preliminary Preparation: Due to the geographical locations coupled with voluminous and type of material, could not merely copy and mail. Had to get adequate equipment:
      i.   Jan. 2007: "Initial Budget" submitted, which included memo from computer analysis from Spokane Defender.
      ii.  March 2, 2007: Budget approved
      iii. March 5, 2007: Computers ordered
      iv.  March 15, 2007: Computers received
      v.   March 26, 2007: Material downloaded and computers available
         1. March 26, 2007: Larranaga
         2. March 30, 2007: Spokane Office
         3. April 2, 2007: Boise Office
         4. May 11, 2007: Deb Garvey (Calif.)

   b. Investigation:
      i.   Merit Phase
      ii.  Aggravators
      iii. Mitigation
         1. Law: Duty to investigate (depths of mitigation)
         2. Phases:
            a. Pre-incarceration ((1963 – 1980),
            b. incarceration (1980 – 1994)

*March 19 hearing! cont.*

Exh. 39 - 000288

          c.   post-incarceration (1994 – 2005); and

          d.  incarceration II (2005 – present)

     3.  Investigation:

         a.  Records

         b.  Interviews

         c.  Experts

             i.   List of types of experts

            ii.  Sought specific experts (availability)

           iii.  Could not review materials that had  yet been collected

  c.  Understaffed:

     i.  Initial Staffing:

         1.  Mark Larranaga (attorney) – full-time

         2.  Roger Peven (attorney) – full time

         3.  Thomas Monaghan (attorney) – part time

         4.  Deb Garvey (mitigation/investigator) – part time

         5.  Bill Proctor (investigator) – full time

     ii.  May 29, 2007 – Team Meeting

         1.  Team

         2.  Judy Clarke (capital resource counsel)

         3.  Consulting expert (to assist with types of experts/testing)

     iii.  Additional investigators

         1.  Tried to get state investigators

         2.  Process to reduce current case load

         3.  June 28, 2007 – First Full Team Meeting

     iv.  Funding:

         1.  Limited funding for experts

         2.  Supplemental Budget – approved July, 2007

III.    Status of Representation:

    a.  Personal issues

    b.  Withdraw necessary

    c.  New counsel must be appointed

      i.  Seeking out new counsel (will update)

IV.    Conclusion



**"Judy Clarke"**
**<judyclarke@jcsrlaw.net>**
10/16/2007 01:17 PM

To  "'Mark Larranaga'" <mark@jamlegal.com>, "'Thomas Monaghan'" <Thomas_Monaghan@fd.org>, "'Debra Garvey'" <Debra_Garvey@fd.org>
cc  <andrew_lah@fd.org>, "'Judy Clarke'" <judyclarke@jcsrlaw.net>
bcc

Subject  FW: Continuance preparation

I got this email from Bill out of the blue yesterday, and called him. I asked him about his work on the case. This was essentially off the top of his head. He said they first got involved when it was a state case, and he helped put together "a mitigation team", his belief was the reason they (Spokane) got involved was to do mitigation work. This evolved into "high paid babysitters", trying to get information from Jet to get a settlement in the case. Some of the things they (these high paid babysitters) said sounded like Jet was manipulating them, as he would deny to Roger some of the "goofy" stuff they claimed he said. For the first 6-7 months, nothing outside of seeing Jet was done. Jimmy and Rachel interviewed maybe 2 people at WSH, one woman and the other, maybe only attempted, a man. A few other contacts were made by J&R by telephone. Roger got tired of the mitigation team and let them go. Roger and John got motivated working toward a settlement. Mark (the investigator) interviewed some people, and asked Bill to serve subpoenas around the country. Bill said he couldn't as the case was a state case. Bill spent his time reading discovery, and Marissa logged stuff in as they got it. Bill took a trip to Skyker, but there was too much snow and he didn't make it there. He also tried going to St. Regis, but too much snow. He thinks these trips were in the fall of 05 and spring of 06. Dr. Woods was on the case at first, but they stopped using him because Roger said they had no federal case yet. When Jet was indicted in January 07, Roger started to look around for 3005 counsel, and got Mark Larranaga. Bill thought it was when Jet was indicted federally that Tom started to see him. Soon after ML came on, they had a meeting, he thought in Spokane, it was hard to get everyone together. They had Joyce's stuff, John's stuff. After that Bill didn't have much interaction with ML. Early to mid March, Roger laid out the plan of Mark overseeing the mitigation investigation, Bill would supervise Whitman and there would be no "fact" investigation. Bill was told Bruce was doing DOC interviews. Bill sent Bruce to see Jet, and Bruce got yelled at by ML. That was a miscommunication. Bruce tried to get the DOC stuff together. Around this point, Bill was cut out of conversations, he doesn't know why. Suddenly Tom was supervising Bruce. Bill was not helping with mitigation interviews, a decision Roger made. Bill was busy with other stuff, including reading discovery. I asked if he had any notes, or indexes, or summaries of this review. No. Bill challenged Roger on the fact investigation decision, but Roger explained his plan for a guilty plea and how that would limit the horrible stuff from coming in. Spokane was to do the interviews of local folks, including the jail, and Denny's and keep contact with Jet. Bill had gotten all the documents together for these interviews. I asked where those files were, he assumed we shipped them out when we boxed up stuff. I told him I'd never seen any witness files. He was surprised. (I have since sent him the index Mark did of the Spokane files, asking what of that is the witness files he is referring to, no answer yet).

-----Original Message-----
From: Bill Proctor [mailto:Bill_Proctor@fd.org]
Sent: Monday, October 15, 2007 1:54 PM
To: Judy Clarke
Subject: Re: Continuance preparation

Now i am
Bill Proctor
Sent via Blackberry


----- Original Message -----
From: "Judy Clarke" [judyclarke@jcsrlaw.net]
Sent: 10/15/2007 01:05 PM MST

Exh. 40 - 000290

To: Bill Proctor
Subject: RE: Continuance preparation


Thanks.  Are you in a place where I can call you?

-----Original Message-----
From: Bill Proctor [mailto:Bill_Proctor@fd.org]
Sent: Monday, October 15, 2007 12:54 PM
To: judyclarke@jcsrlaw.net
Subject: Fw: Continuance preparation


Judy:  This is the witness list of people that are local and need to be
interviewed byt he defense team.  I will look and see if the supporting
materials are still here or not.
----- Forwarded by Bill Proctor/WAEG/09/FDO on 10/15/2007 12:47 PM -----

        Bill
        Proctor/WAEG/09/F
        DO                                    To
                       "Mark A. Larranaga"
        08/13/2007 11:17        <mark@jamlegal.com>, Roger
        AM                     Peven/WAEG/09/FDO
                                        cc

                                Subject
                        Re: Continuance preparation
                        (Document link: Bill Proctor)




Mark:  Sorry I took so long in replying.  My Blackberry has been deleting
my messages.   I just got back to the office and saw your e-mail.   Here is
a list of the names I have pulled out.  I will get the docs scanned as soon
as Jen can do it.

SA Mike Sotka (FBI)-Interview of Jet on 7/19/05
SA William Long "        "           "    "    "    "
Amber Deahn-Dennys Employee
Jeremy Holley- " "
Linda Olson-         "    "
Brian Johnston-   "    "
Nicholas Taylor-  "
Meagan Clingen-   "
Lacey Thompson-   "
William Werts-    "    "
Phillip Chapman-Customer at Dennys
Christopher Donlan-    "

Exh. 40 - 000291

(There are a few other witnesses that were in Dennys but had nothing to offer, however, we may want to interview them anyway.
TW Carroll (K51)-(CdA Police)-Arresting Officer
Officer Avriett (K32)-  "     "
T Neal (K29)-              "     "
Dep. J Shaw-Kootenai County Sheriff's Dept.
Dep. A. Dollard-  "     "
Misc. Deps. at Kootenai County Jail (this will probably be 10 to 20 people)

| | | |
|---|---|---|
| "Mark A. Larranaga" <mark@jamlegal.com> 08/10/2007 04:22 PM | To | <marissa_egland@fd.org>, "'Debra Garvey'" <debra_garvey@fd.org>, "'Bill Proctor'" <bill_proctor@fd.org>, <masonangie@yahoo.com>, <jennifer_mccann@fd.org>, "'Thomas Monaghan'" <Thomas_Monaghan@fd.org>, "'Roger Peeven'" <Roger_Peven@fd.org>, <festers206@aol.com>, "'Bruce Whitman'" <rbwhitman@cox.net> |
| | cc | |
| | Subject | Continuance preparation |

I am working on the continuance motion and would like an estimate of potential "guilt" phase witnesses. Bill, you indicated that you had done some witness trial notebooks and were going to ask that someone scan them to be sent electronically – has that happened? If not, can you tell me how many witnesses or notebooks you have generated so I can include that in the motion for the continuance?

Thanks,

Mark A. Larrañaga
Law Offices of Walsh & Larrañaga
705 Second Ave., Suite 405
Seattle, WA 98104
206.325.7900

Exh. 40 - 000292

Notes from Sept. 6th Meeting:

*** - tabled for later


I.   Discovery letter: (Send out around Sept. 24)

    a.   Adam Walsh act materials
    b.   Request for agents
    c.   Aggravator evidence
    d.   Forensic of Idaho (i.e., condom)***
    e.   Shasta's counseling***
    f.   CPS***


II.   Administrative
    a.   All docs go to LA Office, from:
        i.   Spokane (Judy)
        ii.   John Adams (Judy)
        iii.   Seattle (Mark / Karen)
        iv.   Boise (Tom)
    b.   Protocol re collection of docs and releases (Mark)
    c.   Expert letters (Mark to send to Judy)
    d.   Invoices to Spokane until end of Sept.
    e.   Travel to Deb (before travel inquire of other potential assignments in destination locale)
    f.   Laserfiche – Jen to go to SD 9/17 -9/19 to assist with setting up program.
    g.   Condo in Boise (Judy)


III.   Mtn. to Continue
    a.   Declarations due Sept. 24th (Mark, Deb, Tom)
    b.   Note on Sept.  28th

IV.   Client:
    a.   Tom and Mark to meet on Monday or Tuesday (9/10 or 9/11) with Judy to follow

V.   Investigation:
    a.   Crime Scene
        i.   Interview cops (Bruce) – Tom to send relevant reports to Bruce
        ii.   Court searches. Kootenai County  (Deb, Bruce's son)
        iii.   View Physical evidence (Oct. 1 or 2nd)
        iv.   Visit Crime Scene (Oct. 8th – Oct. 12)
            1.   Camp
            2.   Idaho
            3.   Kay Sweeney (Mark to contact)
                a.   Materials needed (Mark will send list to Tom)

    b.   Mitigation:

      i. Karen to interview Tina; get release from Lillian regarding Bruce

      ii. Angie continue with list of witnesses

      iii. Start "relationship" list of witnesses

      iv. Priors (Deb will do research)

      v. Dyslin Ranch

            1. Bruce to contact attorneys from John Anderson case re: Boys Ranch

            2. Review counselors from Boys Ranch to see whether worked at Dyslin Ranch

      vi. WSH-Sex Offender (Mark)

            1. Victoria Stein info to Judy

            2. Talk to Craig or George about any knowledge

            3. NY Article (perhaps Dr. Cripe)

      vii. DOJ Study – Karen to research

c. Experts:

      i. Update expert list

      ii. Expert letters

      iii. Beavers Raw data

      iv. Becker's Raw data

Exh. 41 - 000294

*[handwritten notes in margins]*

Tracy — 208 667-6568
Deb
Lisa — 9/6

Discovery
equipment - caseshare   Jenn
contact list
DVD

TEAM MEETING – AGENDA
SAN DIEGO, CA
SEPT. 6TH 1:00 - ???
225 Broadway, Ste. 900, the NBC Building (in the Horton Plaza Circle)–

Settlement
DVD

I.  ADMINISTRATIVE
    a.  Attorney
        i.  Roger's declaration
        ii.  Judy's Mtn. for Appointment
    b.  Obtaining another investigator
    c.  Obtaining paralegal
        i.  Location of paralegal
    d.  Transfer material from Spokane to ???
    e.  Collection and dissemination of materials (computers or another program) ✓
    f.  Budget transfer
        i.  Invoices
        ii.  Travel approval

*[handwritten:]* contact list
equipment sharing

II.  CLIENT
    a.  Updates about client:
        i.  Mark/Tom's visits
        ii.  Information re: Mother's visits
    b.  Informing client of status of team *and* effect of trial date
    c.  Expanding visitors to client
        i.  Who?
        ii.  Experts?
        iii.  Approach?

*[handwritten:]* MAT

III.  CASE PREPARATION
    a.  Motion to continue
        i.  When filed
        ii.  How long requesting
        iii.  Basis
            1.  Logistical issues
            2.  Preparation time (what hasn't been done/needs to be)
            3.  w/d and appointment of attorney
            4.  Declarations

*[handwritten:]* DISC

    b.  Re-group on Investigation
        i.  General approach
            1.  Collecting docs
            2.  Releases (need/have)
            3.  Witness list, etc.
        ii.  Merit phase
        iii.  Mitigation
            1.  Who has been interviewed?

1

2. Plans for up-coming interviews
3. docs collected, outstanding, need to do
4. Phases: 
   a. Pre-incarceration phase
   b. Incarceration phase
   c. Post-incarceration phase
   d. Pre-incarceration part II

    iv. Expert status

c. Jury Questionnaire
d. Other legal issues and deadlines to file

2

TEAM MEETING – AGENDA
SAN DIEGO, CA
SEPT. 6TH 1:00 - ???
225 Broadway, Ste. 900, the NBC Building (in the Horton Plaza Circle)–

I. ADMINISTRATIVE
   a. Attorney                                   *Roger, Bill, Marissa, Jen*
      i. Roger's declaration
      ii. Judy's Mtn. for Appointment
   b. Obtaining another investigator   →
   c. Obtaining paralegal → *Lisa Valenti*
      i. Location of paralegal *~~monster~~*   *Laser fiche*  *~~marymar~~ brochure*
   d. Transfer material from Spokane to ???   *files hard copies drive*
   e. Collection and dissemination of materials (computers or another program)
   f. Budget transfer
      i. Invoices → *S to Spokane until 9/30 ; 10/1→ San Diego & w/ non-A staff*
      ii. Travel approval

II. CLIENT
   a. Updates about client:
      i. Mark/Tom's visits
      ii. Information re: Mother's visits
   b. Informing client of status of team *and* effect of trial date
   c. Expanding visitors to client
      i. Who?
      ii. Experts?
      iii. Approach?

III. CASE PREPARATION
   a. Motion to continue
      i. When filed
      ii. How long requesting
      iii. Basis
         1. Logistical issues
         2. Preparation time (what hasn't been done/needs to be)
         3. w/d and appointment of attorney
         4. Declarations

   b. Re-group on Investigation
      i. General approach
         1. Collecting docs
         2. Releases (need/have) → *list of who*
         3. Witness list, etc.
      ii. Merit phase
      iii. Mitigation
         1. Who has been interviewed?

1

Exh. 43 - 000297

2. Plans for up-coming interviews
3. docs collected, outstanding, need to do
4. Phases:
   a. Pre-incarceration phase
   b. Incarceration phase
   c. Post-incarceration phase
   d. Pre-incarceration part II

iv. Expert status

*(handwritten note, boxed at top right):* Take a couple week to respond — get Jennifer up to speed give her a week

*(handwritten):* — AGGRAVATORS

c. Jury Questionnaire
d. Other legal issues and deadlines to file

*(handwritten notes):*
- Review physical evidence
- Crime scene (v)
- media search / collection — TV & cover d'alene
- Idaho law enforcement unit
  court search item

  victim family court search?

2

9|8| 07

Mark/Deb – my follow up notes, I think are mostly covered in Mark's list. So, just an FYI:

1. Laserfiche – I sent the brochure to Lisa in LA. Talked with Jen McCann – she is coming to SD 9/17-19 to work with Ben Solis (the computer guy here) to set us up on Laserfiche. It doesn't look like it would be useful for Lisa Valenti to participate in this, as she will do what they call the "maintenance work" on the system once the structure is set up. I'll work out what training she/we all need on this system once it's up.

2. Spokane office files – I'm planning to go to Spokane after our meeting next week with Jet, just need to confirm with Marissa she'll be available. I asked Jen McCann to make sure everything they have is scanned before she comes to SD to upload the stuff.

3. Boise apt – I'm to ask about the cost of the apt, and how it was selected. Also check on how long lease goes.

4. Travel for investigators – I talked with our admin officer (Linda Acosta – she's the Lisa Werner of San Diego's office), the investigators can use my travel acct, which we'll set up with either NTS or Omega Travel and they can book their stuff directly, I'll make Deb the person who can authorize. I still need to figure out where the itinerary should be forwarded here for bill audit purposes – and will work this out before October 1. It might be that the investigator can send Deb the email of their itinerary from NTS or Omega, and she can forward it to whoever it is here that should get it. Though I don't think we said it at the mtg, Deb or I will draft a protocol for the travelers.

5. New intro letters for investigators and letters for govt rate – these are 2 different letters – seems to me you could revise the intro letter on your letterhead. I'm wondering if the travel letter is better on Deb's letterhead – it looks more "federal" than San Diego's. She's got a new title that sounds impressive and could sign.

6. Wolf Lodge/Montana campsite review – I'll call or write govt counsel as soon as I am officially counsel on the case to set up 2 days the week of 10/8. (per your discussion with Sweeney, he's available)

7. Physical evidence review in Boise – if Sweeney is available, we planned to try to see the physical evidence in Boise on Oct 1 or 2, and have our next team mtg then. I'm happy to set this up with the govt at the same time as I set up the Wolf Lodge trip.

8. Discovery – I think you have Oct dates – we talked about having the first round discovery letter ready to go on 9/28. This will be for the "non sensitive" information, the sensitive info being anything about abuse at Brenda's house, or having to do with the victims – which we'll time differently, after we know what Rosemary might be able to do. We didn't assign responsibility for the discovery letter – I'm happy to take a whack at a draft which we can add to. I just need to know more about the case first, but there should be time.

9. Washington sex offender program lawsuit – I'm to call the Houston FPD to see if they'll go find Victoria Stein for us – my memory is not clear what to ask them to do once they find her – do we have something specific we want from her, e.g. depositions, what else?

**Judy Clarke**

| | |
|---|---|
| **From:** | Mark A. Larranaga [mark@jamlegal.com] |
| **Sent:** | Monday, September 10, 2007 1:38 PM |
| **To:** | 'Judy Clarke' |
| **Subject:** | FW: Scanned document |
| **Attachments:** | SCAN3274_000.pdf |

Thought you may find this interesting. There is an affidavit from Wendy and one from Jim Peterson explaining why the trial date should be shortened, based on conversations with Roger. Thought we may be able to use it for our continuance to demonstrate that Roger's unique involvement is gone.

Mark A. Larrañaga

Law Offices of Walsh & Larrañaga

705 Second Ave., Suite 405

Seattle, WA 98104

206.325.7900


-----Original Message-----
From: copier@jamlegal.com [mailto:copier@jamlegal.com]
Sent: Monday, September 10, 2007 2:19 PM
To: mark@jamlegal.com
Subject: Scanned document



**Debra Garvey/CACF/09/FDO**
09/11/2007 05:55 PM

To   "Judy Clarke" <judyclarke@jcsrlaw.net>
     mark@jamlegla.com

cc

bcc

Subject   Re: Duncan budget

Okay, here are my budget thoughts.

Under Roger's section, Three Investigators, I don't know if it's worth noting, but we don't have 100% of anyone's time.

I would say let's cap Angie at $20,000 in 2008 - so that's another 200 hours. I think we can ask her to finish off Bruce's girlfriends, which she won't get finished entirely in 2007 and then work on getting his father and stepmother interviewed. There may be other family we'll want her to pursue, that will become clear following her upcoming trip to Pennsylvania, but probably not more than another trip's worth. Then if there's a trial, she can help arrange the meetings with the family witnesses we would want her to help get to Boise to testify. I vote that we tell her there's a pot of money we have for her work up to the point of trial - like 150 hours worth? and then 50 hours for trial assistance. That way she can plan her money/work for the calendar year of 2008. We may not need her to attend all team mtgs in person, at least in Boise, unless she's in the client visiting rotation. Mark, I know you may feel differently about that.

Bruce should do the law enforcement interviews, and there may be other witnesses from the "guilt" side of the state case we'd want him to talk to - like John Adams' investigators, maybe people at the Coeur d'Alene jail [though if Jodi's got an in with anyone there, we should ask her to do it]. There may be law enforcement folks connected to the Riverside and Seattle cases, that it would be good to ask Bruce to talk with. I'm not sure how long the case he's currently working on is in trial, but as you know he thought he had very little time this month for the Duncan case - which puts most of this work into 2008. I would say 300 hours for Bruce [that's assuming he's available for the field trip to Montana in early October with the consultant] for the time period up to trial and another 50 hours if there's a trial, for a total of $35,000. We should give him the same information about hours, so he can plan his income for calendar year 2008 in his own life. He may need to periodically visit the client, too, if Bruce is someone Jet likes talking to. If that's true, it would mean Bruce needs to come to meetings in Boise and plan to stay over long enough to see Jet once a month or so.

Karen is great. I'd love to see Karen work as much time as she can give us that we can reasonably use. In that hopeful state, I'd say we should budget her at 15 hours a week through February of 2008, which is 20 weeks with a week off for Thanksgiving and another for Christmas. That's $30,000. Some of what Karen spends time on now, Lisa V will be able to pick up. But, I know Lillian is extremely time consuming when Karen does have contact with her. I don't think Teena will be at all time consuming, but she's someone that Karen may want to try to talk to more than once.

Rosemary is hard to calculate - it's hard to know how much time the family will take and what the parameters of Rosemary's contact will really be. I think something like 30 hours a month until February is ballpark. That's 120 hours for the four months of October-January, or $9,000. If there's a trial, we would probably want her to be there for at least some of the trial time, which would be additional hours.

I know my office does not pay people for travel time. I can see that Angie and Bruce are billing for that. I don't know if you want to try to back them off of doing that? It looks like Bruce's commute to an airport is quite a hike when he's in Arizona, for example. The explanation is here is that we don't pay people to commute to work, but the precedent is there in this case, so it's probably hard to turn it around now.

My plan is to do a major piece of the western Washington investigation, myself; to try to divide it with Jennifer. I think we have to just tell the contract investigators that we're running through money too quickly given how much there still is to do and how few interviews have actually been done - consequently, we're going to shift major pieces to the salaried people on the team.

Exh. 46 - 000301

These are my thoughts.  I'm sure you guys have input to give on this.  Let me know what you think.

/deb

"Judy Clarke" <judyclarke@jcsrlaw.net>



**"Judy Clarke"**
**<judyclarke@jcsrlaw.net>**     To    '"Debra Garvey" <Debra_Garvey@fd.org>
09/11/2007 12:36 PM              cc

                                 Subject   Duncan budget

Attached is what was approved.   I called the AO when I saw it and told them that while Roger says he



consulted with me, he paid no attention to my advice... FINAL 2008 Duncan 07162007.wpd

**Judy Clarke**

---

**From:**      Judy Clarke [judyclarke@jcsrlaw.net]
**Sent:**      Wednesday, September 19, 2007 8:05 AM
**To:**        Andrew Lah; Angie Mason; Bruce Whitman; Deb Garvey; Jennifer Davis; Jodi Thorp; Judy
               Clarke; Lisa Valenti; Mark Larranaga; Tom Monaghan
**Cc:**        'Jennifer McCann'
**Subject:**   RE: review of evidence


Tom - my thought is to ignore her whining that the offer to tour being open since March, and
respond that we would like to see the physical evidence on Oct 1-2 (and into however long it
takes).  [We'll need to make sure our computer expert (Jen McCann) can go with us to see the
computer files - I'm copying her so she can let us know].  I'd remind Traci that she has
apparently forgotten there is a status conference 9/28, which may not give us the flexibility
or time we need to visit the various scenes on the dates she suggests (one day certainly
isn't enough, and 2 may be cutting it too close).  As a result, we would just ask her to
provide whatever authorization is necessary to be on the properties without escort - to the
extent such is necessary - we don't know if the scenes are sealed off from the public, or, as
in the case of the house, the land is marked "absolutely no trespassing".


Anyone have any other suggestions?

-----Original Message-----
From: Thomas Monaghan [mailto:Thomas_Monaghan@fd.org]
Sent: Wednesday, September 19, 2007 7:19 AM
To: judyclarke@jcsrlaw.net; Debra Garvey; mark@jamlegal.com
Subject: Fw: review of evidence



----- Forwarded by Thomas Monaghan/IDG/09/FDO on 09/19/2007 08:19 AM -----


               "Whelan, Traci
               \(USAID\)"
               <Traci.Whelan@usd                                          To
               oj.gov>               "Olson, Wendy \(USAID\)"
                                     <Wendy.Olson@usdoj.gov>, "Thomas
               09/18/2007 12:06      Monaghan" <Thomas_Monaghan@fd.org>,
               PM                    "Moss, Thomas \(USAID\)"
                                     <Thomas.Moss@usdoj.gov>
                                                                          cc

                                                                     Subject
                                     RE: review of evidence





Tom,

        We can accommodate your request for a tour of the crime scenes


Exh. 47 - 000303

Monday September 24th or the 26th-28th.  As you can imagine we are heavy
into trial preparation and will be traveling out of the district to meet
witnesses most of October.  The only time in October we are not
traveling is October 29, 30, 31st and we need to be in the office.  I am
sure you won't to wait until November as the weather may make the travel
difficult.  If our schedule cannot accommodate you, please remember the
exact coordinates are in the discovery materials for all the various
crime scenes and these are located on United States Forest Service Land.
Please advise as soon as possible if you wish to have us block out the
24th, 26th, 27th or 28th. Please also advise with specificity which
crime scenes you wish to tour.
            Evidence review could occur October 1,2,3 or 4th in Boise.  If
those dates don't work we will need to look towards November.  Does your
review of the evidence include the review of the computer files?  If so,
we will need to schedule the forensic scientist to travel from Salt Lake
City.
            Please know we are not trying to be difficult, however the
offer to tour and review has been open since at least March of 2007 and
now 4 months before trial we are pretty tightly scheduled.  Thank you
and please, again, let me know as soon as possible.

Traci J. Whelan
AUSA

-----Original Message-----
From: Olson, Wendy (USAID)
Sent: Monday, September 17, 2007 6:55 PM
To: Thomas Monaghan; Moss, Thomas (USAID)
Cc: Whelan, Traci (USAID)
Subject: RE: review of evidence

Tom (Monaghan), I am in trial this week.  I am forwarding this message
to Tom Moss and Traci so that they can respond in a more expeditious
fashion than I would be able to.  I doubt, however, that the week of
October 8-11 will work.

Wendy

-----Original Message-----
From: Thomas Monaghan [mailto:Thomas_Monaghan@fd.org]
Sent: Monday, September 17, 2007 10:41 AM
To: Olson, Wendy (USAID)
Subject: review of evidence


Hi Wendy,

We were wondering if we could try to plan a time to review the physical
evidence and to tour the two crime scenes in CdA and in Montana.

We were thinking about trying to schedule the review of the physical
evidence, which we understand is currently at the Boise FBI office, on
October 1-2.  For the tour of the crime scenes, we were thinking
sometime
between October 8-11?

Can you let us know if that is possible?  Thanks for your help.

**Judy Clarke**

| | |
|---|---|
| **From:** | Thomas Monaghan [Thomas_Monaghan@fd.org] |
| **Sent:** | Thursday, September 27, 2007 3:45 PM |
| **To:** | Judy Clarke |
| **Cc:** | mark@jamlegal.com; Thomas Monaghan |
| **Subject:** | Re: FW: Status Conference |

By now, you guys have seen Wendy Olson's response re Judy's e-mail about the status conference.  The govt wants to know where Peven's motion to withdraw is, so they can oppose it if it pertains to a continuance.

We were pretty much right on in anticipating that Roger's "withdrawal" would be tied by them to opposition to the motion to continue.  Didn't need to hold our breath for long before they brought it up.

Well, this will force the issue to a head right away.  Would ask you guys to think about this: I anticipate the govt will be arguing their position tomorrow re continuance.  Should we, and if so how much, get into talking about why we need it?  While I trust J. Lodge and I think there are reasons we don't want to get into this argument now, I also get worried about first impressions and him hearing their strident arguments and us not responding.  Just thinking out loud here.  Lemme know what you all think.

Tomorrow will be very interesting . . .
-----"Judy Clarke" <judyclarke@jcsrlaw.net> wrote: -----

To: <mark@jamlegal.com>, <Thomas_Monaghan@fd.org>
From: "Judy Clarke" <judyclarke@jcsrlaw.net>
Date: 09/27/2007 01:35PM
Subject: FW: Status Conference

Sorry, meant to cc you both.


**From:** Judy Clarke [mailto:judyclarke@jcsrlaw.net]
**Sent:** Thursday, September 27, 2007 12:35 PM
**To:** 'Roger Peven'
**Subject:** FW: Status Conference


FYI, re my response about tomorrow's status conference, and removing you from service list.


**From:** Judy Clarke [mailto:judyclarke@jcsrlaw.net]
**Sent:** Thursday, September 27, 2007 12:34 PM
**To:** 'Lauri_Thompson@id.uscourts.gov'
**Cc:** 'Traci.Whelan@usdoj.gov'; 'Wendy.Olson@usdoj.gov'; 'Thomas.Moss@usdoj.gov'; 'mark@jamlegal.com';
'Thomas_Monaghan@fd.org'; 'Judy Clarke'
**Subject:** Status Conference

Lauri – thanks for your email about tomorrow's status conference, Mark and Tom forwarded it to me and I am responding for all of us. I'm sorry that I have not yet filed a notice of appearance, I hope to accomplish that tomorrow while in Boise.

Regarding the jury questionnaire, we are simply not in a position to discuss that. Essentially we are wholly unprepared – including being way behind in investigation of the case -- and can't at this time address the contents of a document as critical as the jury questionnaire.

Regarding other issues, we will be alerting the court and the government that we will need to file a motion to continue the trial date. We would like to talk about the timing of filing that motion.

We also have asked for a brief ex parte with Judge Lodge before the status conference, and by way of this email wanted the government to know that.

Finally, as Roger Peven no longer has responsibility as counsel of record in this case, we would ask that he be removed from the service list.

Thanks. I look forward to seeing (or hearing) everyone tomorrow.

Judy Clarke

Federal Defenders of San Diego, Inc.

225 Broadway, Ste. 900

San Diego, CA 92101

(619) 544-2720 (w)

(619) 279-3804 (c)

Judy_clarke@fd.org or judyclarke@jcsrlaw.net

**Judy Clarke**

| | |
|---|---|
| **From:** | Judy Clarke [judyclarke@jcsrlaw.net] |
| **Sent:** | Thursday, September 27, 2007 1:42 PM |
| **To:** | Andrew Lah; Angie Mason; Bruce Whitman; Deb Garvey; Jennifer Davis; Jodi Thorp; Judy Clarke; Lisa Valenti; Mark Larranaga; Tom Monaghan |
| **Subject:** | FW: Status Conference |

FYI for context on the email you just got about the continuance.

-----Original Message-----
From: mark@jamlegal.com [mailto:mark@jamlegal.com]
Sent: Thursday, September 27, 2007 8:32 AM
To: Judy Clarke
Subject: Fw: Status Conference


Sent via BlackBerry from T-Mobile

-----Original Message-----
From: Lauri_Thompson@id.uscourts.gov

Date: Thu, 27 Sep 2007 09:13:04
To:mark@jamlegal.com,Roger_Peven@fd.org,Thomas.Moss@usdoj.gov,Traci.Whelan@u
sdoj.gov,Wendy.Olson@usdoj.gov,Thomas_Monaghan@fd.org
Subject: Status Conference


Greetings Counsel -

I wanted to confirm the Status Conference set for tomorrow, Friday,
September 28, 2007 at 9:30 am (MST) in Boise.

Based on the conversation at the last Status Conference the Court expects
that the parties will have more finalized comments on the proposed Jury
Questionnaire and that the parties will be able to either provide a copy of
examples of opening statements to jurors that other Court's have used or be
able to point me to where I can locate those.  I believe the Government had
some from North Dakota and the Defense had some from Washington??

The other issues that were not fully resolved at the last Status Conference
were the motions deadline and expert witness deadlines.

Please respond to "all" in this email letting the Court and Counsel know
what other issues each side would like to discuss at the meeting tomorrow.


Thanks,
 LT

**Judy Clarke**

| | |
|---|---|
| **From:** | Judy Clarke [judyclarke@jcsrlaw.net] |
| **Sent:** | Thursday, September 27, 2007 1:36 PM |
| **To:** | Andrew Lah; Angie Mason; Bruce Whitman; Deb Garvey; Jennifer Davis; Jodi Thorp; Judy Clarke; Lisa Valenti; Mark Larranaga; Tom Monaghan |
| **Subject:** | FW: Status Conference |

I suppose this is what Tom would refer to as "blow back." Unless you all feel differently, I'm not planning to respond to this, Mark, Tom and I will see them tomorrow.  My flight leaves in about 30 minutes.

**From:** Olson, Wendy (USAID) [mailto:Wendy.Olson@usdoj.gov]
**Sent:** Thursday, September 27, 2007 12:49 PM
**To:** Judy Clarke; Lauri_Thompson@id.uscourts.gov
**Cc:** Whelan, Traci (USAID); Moss, Thomas (USAID); mark@jamlegal.com; Thomas_Monaghan@fd.org
**Subject:** RE: Status Conference

Lauri and defense counsel:

      As we made clear at the August 22 and 29 status conferences, we strongly oppose any continuance.  We also indicated that we would oppose any motion by Roger Peven to withdraw if it would necessitate a continuance of the trial date.  We have not yet seen a motion to withdraw.  Will such a motion be filed?

Thank you,
Wendy Olson

**From:** Judy Clarke [mailto:judyclarke@jcsrlaw.net]
**Sent:** Thursday, September 27, 2007 1:34 PM
**To:** Lauri_Thompson@id.uscourts.gov
**Cc:** Whelan, Traci (USAID); Olson, Wendy (USAID); Moss, Thomas (USAID); mark@jamlegal.com; Thomas_Monaghan@fd.org; 'Judy Clarke'
**Subject:** Status Conference

Lauri – thanks for your  email about tomorrow's status conference, Mark and Tom forwarded it to me and I am responding for all of us.  I'm sorry that I have not yet filed a notice of appearance, I hope to accomplish that tomorrow while in Boise.

Regarding the jury questionnaire, we are simply not in a position to discuss that.   Essentially we are wholly unprepared – including being way behind in investigation of the case -- and can't at this time address the contents of a document as critical as the jury questionnaire.

Regarding other issues, we will be alerting the court and the government that we will need to file a motion to continue the trial date.  We would like to talk about the timing of filing that motion.

We also have asked for a brief ex parte with Judge Lodge before the status conference, and by way of this email wanted the government to know that.

Finally, as Roger Peven no longer has responsibility as counsel of record in this case, we would ask that he be removed from the service list.

Thanks.  I look forward to seeing (or hearing) everyone tomorrow.

**Judy Clarke**

| | |
|---|---|
| **From:** | Judy Clarke [judyclarke@jcsrlaw.net] |
| **Sent:** | Friday, October 12, 2007 12:35 PM |
| **To:** | Andrew Lah; Angie Mason; Bruce Whitman; Deb Garvey; Jennifer Davis; Jodi Thorp; Judy Clarke; Lisa Valenti; Mark Larranaga; Tom Monaghan |
| **Cc:** | 'Jennifer McCann' |
| **Subject:** | Continuance Denied - Duncan |

Thought you would also enjoy seeing the "Subject" line for our case – yes, today the judge denied the motion for a continuance, leaving us with a pretrial motions deadline of 11/5 and a trial date of 1/20/08.   We are still going to set the physical evidence review for the week of 10/22 or 10/29, unclear who of us we can spring loose to actually do that review.   It may be one investigator and Kay Sweeney.  For the moment, please stay the course, pushing forward as hard as you can on the items on your to do list.

Right now we have a telephonic team mtg set for 10/18 at 1 pm MDT.   As soon as all of our heads stop spinning from this stunning denial of the continuance, we can figure out more.

Next week, Bruce and Tom are seeing Jet on Monday; Deb and I (or Tom) are seeing him on Wednesday and Mark, Tom and I are seeing him on Friday.  Whatever we do, we can't let him feel the pressure and chaos we're all currently feeling.



"Judy Clarke"
<judyclarke@jcsrlaw.net>
10/15/2007 05:35 PM

To  <mark@jamlegal.com>, "'Thomas Monaghan'"
    <Thomas_Monaghan@fd.org>, "'Debra Garvey'"
    <Debra_Garvey@fd.org>
cc
bcc
Subject  Rosemary & Roger

History:      ↩ This message has been replied to.

I talked with Rosemary about our proposed answer to John's questions (until we've exhausted all of the settlement options we can't focus on or answer these questions). She's fine with it. I told her I was worried about Sahlin making Traci the middle person between Steve Groene and Rosemary (Sahlin asking Traci to give Rosemary's phone number to Steve), that asking her to do that might put Traci in an awkward spot. Sahlin has contact with Groene apparently only through Groene's lawyer, Chuck Lempesis. Roger has a long time relationship with Chuck, and might be able to get Chuck to talk with Rosemary. I gave Rosemary Roger's numbers to call to talk about Chuck.

I've also called Roger about the Lempesis/Groene connection, he thinks if he can reach Chuck on the phone (notorious for not calling back), Chuck will help connect Rosemary to Steve Groene.

On the Roger front, I told him we believed he needed to move to w/draw, to his response "we need to talk about that", to my response his presence is being used to show that we can be ready for trial in January, to his response the record already shows he isn't doing anything, and then he said he'd have to call me back. He did. "We'll have to talk about it tomorrow" was the bottom line. He did say, and I noted to him I'd never heard this before, that he told Lodge he wanted to get off the case, and Lodge said he didn't want him off the case, but to be available to us to talk with the D and the victims. I told Roger this was a further reason he had to make this a matter of record.

[Given this call with Roger, I don't think Rosemary should call him, I just called and left her a msg not to call him, that I'd explain later – I just don't think he is using good judgment right now, and don't want to get her caught up in whatever his personal motives are]

Before calling Roger, I talked with Steve Hormel, he is prepared to encourage Roger to w/draw as well, recognizing that as long as Roger is on the case, his office has responsibility for the case, a responsibility they aren't meeting.

Exh. 50 - 000310

Case 2:07-cr-00023-EJL    Document 868-4    Filed 02/28/17    Page 101 of 111

http://www.spokesmanreview.com/library/meth/methstory.asp?ID=s812628

**From:** Mark Larranaga [mailto:mark@jamlegal.com ]
**Sent:** Saturday, October 27, 2007 12:06 PM
**To:** 'Raymond Whitman'
**Cc:** 'Judy Clarke'; 'Deb Garvey'; 'Tom Monaghan'
**Subject:** Meeting with State Defense team

Bruce:

See emails below (I also sent you some others in a separate email) regarding some contact with John Adams and potential experts/witnesses. I have also attached the transcript from the Oct. 12 th court hearing, when the court denied the continuance. The court's "rationale" for denying the motion is found on pages 30 – 47. One reason is because the court states:  "I think the fact that the State matter was handled prior to this matter in Federal Court gives both sides some additional advantage that they have over most cases.  I am confident that defense counsel in the State case would cooperate and provide information to defense counsel...."  Therefore, we need to know what work was done, by whom, what was generated, who was interviewed, etc.

To assist, here are the players:

"Core" State Defense Team:

John Adams – State Public Defender (lead attorney);

Mary Fischer – investigator with State Public Defender

Mark Durant – investigator with State public defender

Joyce  Naffziger – Mitigation investigator/specialist

Defense Experts: (as far as I know)

Exh. 51 - 000311

Tim Redi – Future dangerousness (visited Jet a few times):

Craig Beaver – neuropsychologist (visited Jet)

**Denise Blake, a phlebotomist (tested Jet for HIV, negative)**

**James Dennison – Dr. Beaver's assistant**

**Chesterine Cwiklik – Forensic expert**

Potential Witnesses:

Chaplain Smalley – visited Jet while in custody (see transcripts of state suppression hearing, which I believe Tom sent you. If not, I have attached as well)

As you will see there is a list of witnesses that testified during that hearing. I am not sure whether you and Tom believe all are necessary to interview, but suspect you could ask John/Mark/Mary about each;

Colleen Naudall, the FBI victim outreach person.  Some of the paper I've seen related to Tammy's work, suggests that Mary Fisher and Colleen were working together. (I ASKED JOHN ADAMS ABOUT NAUDELL, BUT HE DIDN'T REMBEMBER COLLEEN). But maybe Mark/Mary do, as indicated in the newspaper articles that Deb referenced;

*No Generated Them Self No*
*Input Into FDOE GCU*

Areas for State Defense team:

1.    A list of all experts they used. We may have them all, but need to make sure;

2.    Any work generated (notes, data, scores,diagrams, etc.) that was generated by any of them;

3.    Who focused on what? I believe, but not certain, that Mary/Mark were focusing on "guilt" phase investigation and Joyce was focusing on "penalty" phase although at the direction of Mary. It would be nice to know how they divvied up the work/supervision etc.

4.    What was not done, but perhaps should have been (for whatever reason – plea, funding, time, etc.)

Thanks very much Bruce. Again, I send my thoughts and sympathy to you, the entire defense team, and your client for the inhumane result reached.

Exh. 51 - 000312

Take care,
Mark


-if others have thoughts or suggestions, please supplement.


**From:** Judy Clarke [mailto:judyclarke@jcsrlaw.net ]
**Sent:** Saturday, October 27, 2007 12:29 PM
**To:** 'Mark Larranaga'; 'Debra Garvey'; 'Thomas Monaghan'
**Subject:** RE: Duncan


There's some email traffic about John Adams, various experts and Remington – we probably need to compile
for Bruce.


**From:** Mark Larranaga [mailto:mark@jamlegal.com ]
**Sent:** Tuesday, October 23, 2007 10:13 AM
**To:** 'Judy Clarke'; 'Debra Garvey'; 'Thomas Monaghan'
**Subject:** FW: Duncan


See below regarding Remington.


**From:** John Adams [mailto:jadams@kcgov.us ]
**Sent:** Tuesday, October 23, 2007 10:09 AM
**To:** Mark Larranaga
**Subject:** RE: Duncan


*T/M*
Remington was Jet's clergy.  I never spoke to either of them re their communications.  That was privileged
and I did not reach the point where I was going to ask Jet to waive so I could talk to Remington.  I will call you
tomorrow re Mark and Mary.  I'm out for the rest of the day.

-----Original Message-----
**From:** Mark Larranaga [mailto: mark@jamlegal.com]
**Sent:** Tuesday, October 23, 2007 10:03 AM
**To:** John Adams
**Subject:** RE: Duncan


Sorry John, I would be also like to know if you know anything about Timothy Remington – he, according to the jail longs,  is apparently a pastor that visited Jet on a few occasions.




**From:** John Adams [mailto: jadams@kcgov.us]
**Sent:** Tuesday, October 23, 2007 8:38 AM
**To:** Mark Larranaga
**Subject:** RE: Duncan


Ya. I forgot to say that I have no reports or notes from anyone.  Also, what do you want to talk to my staff about?




-----Original Message-----
**From:** Mark Larranaga [mailto: mark@jamlegal.com]
**Sent:** Tuesday, October 23, 2007 8:30 AM
**To:** John Adams
**Subject:** RE: Duncan


Thanks John. I take it that Redi produced nothing as way of notes (I realize no report).



Thanks,
Mark




**From:** John Adams [mailto: jadams@kcgov.us]
**Sent:** Tuesday, October 23, 2007 7:50 AM
**To:** Mark Larranaga
**Subject:** RE: Duncan


Hi Mark: Redi is the future dang guy; Blake took blood for aids test (neg); Dennison is Beaver's ass't.  I have no problems with you contacting any of the experts.  I'll get back to you

Exh. 51 - 000314

my staff.

john

    ——Original Message——
    **From:** Mark Larranaga [mailto: mark@jamlegal.com]
    **Sent:** Monday, October 22, 2007 2:59 PM
    **To:** John Adams
    **Subject:** Duncan

John:

Saw George over the weekend and passed on your comments to him. He looks good.

I am writing to ask about a few things that I am unsure about. In reviewing the jail logs (the government used them against us for our motion to continue), there are some individuals that I believe are experts, but wanted to get your input. For example, there is an entry that is a Tom Redi (Sp?), who I believe is an expert dealing with future dangerousness; Denise Blake, a phlebotomist; and James Dennison.

  1) I remember you telling me no reports were generated, but was wondering whether you have any of their notes/raw data;

  2) What was Denise Blake's role?

  3) Who is James Dennison?

  4) Whether we have permission to contact these experts/individuals? (similar email/letter you sent to Chesterine would do, but didn't want to contact them until I asked you).

  5) Are there any other experts that you can tell me about?

And finally, whether you will grant permission for us to talk to Mary and Mark. I see they visited with Jet on a few occasions and would like to get their input on his mental state, observations, feelings about him, or any other information that may be useful.

Thank you and please feel free to either call or email, whatever's your preference.

Exh. 51 - 000315





**U.S. Department of Justice**

*United States Attorney*
*District of Idaho*
*Coeur d'Alene Branch Office*

| *Address:* | *Boise Comm: 208/334-1211* |
|---|---|
| *205 N. 4th Street, Room 306* | *Coeur d'Alene Comm: 208/667-6568* |
| *Coeur d'Alene, ID 83814* | *Coeur d'Alene Fax: 208/667-0814* |

October 26, 2007

Roger Peven
Federal Defenders of Washington
10 N. Post, Suite 700
Spokane, WA 99201

Tom Monaghan
Federal Defenders of Idaho
350 N. 9th, Suite 301
Boise, ID 83702

Mark Larranaga
705 Second Avenue, Number 405
Seattle, WA 98104

Judy Clarke
Federal Defenders of San Diego, Inc.
NBC Building
225 Broadway, Suite 900
San Diego, CA 92101-5030

     Re:    United States v. Joseph Edward Duncan, III, Cr. No. 07-23-N-EJL

Dear Counsel:

    We are in receipt of your facsimile dated October 23, 2007, in which you offered to attempt to reach a stipulation regarding S.G.'s trial testimony if the United States would agree to a continuance in this case, despite Judge Lodge's October 12, 2007, ruling that no continuance is warranted. You further suggested that a "global resolution" of this case might be possible.

    As you may recall, the United States has twice previously made a plea offer that would relieve S.G. of the burden of testifying. Defense counsel twice rejected those offers out of hand, indicating that they would not even be relayed to Mr. Duncan. On November 13, 2006, the United States sent a letter proposing resolution of this case. This offer was immediately rejected. A copy of that letter is enclosed for you to review.

1

Exh. 52 - 000316

In a further effort to resolve this case without calling S.G. as a witness, the United States made this offer again on January 31, 2007. In an e-mail response sent by Roger Peven through the e-mail address of Rebecca Pennell, defense counsel again rejected this offer out-of-hand. In a February 5, 2007, letter, the United States responded in detail to Mr. Peven's e-mail, pointing out that the United States believed that Mr. Peven had an ethical obligation under Ninth Circuit law to convey the offer to Mr. Duncan and that this resolution provided Mr. Duncan's best opportunity to argue mitigation at sentencing. The United States received no further response to this offer. Copies of all of this correspondence are also enclosed for your review.

Also enclosed is an October 4, 2006, letter conveying a plea offer by Mr. Duncan's state defense attorney, John Adams, to Kootenai County Prosecutor William J. Douglas. Mr. Adams provided a courtesy copy to the United States. As Mr. Peven acknowledged, the United States' November 13, 2006, and January 31, 2007, plea offers were substantially similar to Mr. Adams' October 2, 2006, offer.

While the United States stands behind its earlier plea offer and will extend it one more time in the hope that it will be conveyed to the defendant as the law requires defense counsel to do, the United States is not willing to otherwise engage in negotiations regarding a stipulation to S.G.'s testimony that will still require the United States to try the guilt phase of this case. First, in light of defense counsel's long track record in this case of failing to follow through on its earlier requests of and representations to the United States, the United States is not confident that an appropriate stipulation could be reached regarding S.G.'s testimony. As you know, beginning in June, defense counsel agreed to work with the United States in preparing a jury questionnaire and in setting deadlines for expert witness notices. Despite the United States' efforts to coordinate with Mr. Larranaga on these issues, no questionnaire was produced and no deadlines were set. Also, as you know, defense counsel have twice set up times to review the physical evidence in the custody of the FBI in Boise, Idaho, and then canceled those appointments on only a few days notice. Moreover, this is evidence that has been readily available to the defense for nearly nine months. Finally, although Ms. Clarke has worked diligently over the last two weeks with the United States in attempting to reach consensus on a jury questionnaire, the parties remain far apart on perhaps the most significant questions, those regarding the death penalty.

Second, Judge Lodge has made it clear, based on his consideration of all of the factors that he is required to consider under the law, that January 22, 2008, is the appropriate trial date in this case. Protracted negotiations over any stipulation regarding S.G.'s testimony would only serve to distract the United States – and further distract defense counsel -- from trial preparations. Third, even if the United States were willing to look beyond these initial obstacles and consider a further continuance of this trial, the parties could not be certain that Judge Lodge would grant such a continuance. Finally, again given defense counsel's record of failing to follow through on its earlier agreements to work with the United States and given defense counsel's repeatedly professed delay in examining the discovery and the physical evidence, the United States has no confidence that defense counsel would make efforts to move this case to trial on any future trial date.

2

Our November 13, 2006, and January 31, 2007, plea offers were made with the understanding that Mr. Duncan wishes to admit what he has done and that the true issue in this case is what punishment the jury will recommend. Mr. Duncan has never appeared to shy away from admitting his guilt. His jail letters, statements to FBI agents and others, and his plea in state court make clear that he has acknowledged his guilt. The remaining issue is the appropriate penalty for Mr. Duncan's conduct. To that end, be advised the United States Attorney's Office for the District of Idaho cannot withdraw the death penalty. It is not within our power or discretion. The United States Attorney General made the decision to seek death for Mr. Duncan's crimes, and that was only after his attorney had an opportunity to present mitigating evidence. Even if the death penalty were not imposed against Mr. Duncan on the federal charges pending against him, he will face a death penalty sentencing hearing in Kootenai County, Idaho, and, possibly in Riverside County, California, which has already filed charges and a notice of intent to seek the death penalty against Mr. Duncan for the April 1997 murder of A.M. In addition, as you are aware, King County, Washington, continues to investigate whether Mr. Duncan can be prosecuted there for the July 1996 murders of girls age 9 and 11. Earlier attempts to reach a global resolution in this case were unsuccessful. The United States knows of no reason why such efforts could be successful at this stage of these various prosecutions.

In your October 23 letter, you again use the phrase "ineffective assistance of counsel," which you repeatedly have used in your pleadings and at hearings beginning in March of this year. The United States recognizes that a chief purpose of your choice of this language is to attempt to create a record for a federal habeas proceeding. Although we do not mean any disrespect to lawyers with whom we have worked and about whom we have heard much in this District, the United States has been made aware by King County prosecuting and law enforcement authorities that defense counsel in capital cases there, including Mr. Larranaga, frequently have used as a capital case defense tactic failure to work on a case accompanied by intonements of "we will be ineffective" if forced to go to trial. As we pointed out in our opposition to your October 3, 2007, motion to continue and at the October 12, 2007, hearing on the motion, the Supreme Court has recognized that intentional delay is a tactic that is at times employed by defendants and which serves their interests. Witnesses' memories can then be attacked, witnesses may become unavailability through death, disability or transience and evidence may be lost.

Other defense actions in this case strongly suggest to the United States that one or more defense counsel have selected the tactic of intentional delay. On May 8, 2007, you filed a motion for a protective order, seeking to prohibit the United States from obtaining IMSI visitation records for Mr. Duncan so that the United States could not learn the identity of defense experts who were visiting Mr. Duncan in prison. Your June 4, 2007, reply brief again asserted the visitation logs had to be withheld from the United States because of the need for Mr. Duncan to visit with potential defense expert witnesses. On July 19, 2007, Judge Lodge issued an order prohibiting the United States from obtaining those visitation logs. You now acknowledge that no mental health experts have been retained, and therefore that they were not visiting Mr. Duncan. The United States concludes that your motion was nothing more than a tactic designed to prevent

3

the United States from finding out that, in fact, you were not pursuing a mental health defense. Surely you can see why the United States concludes that the defense will never say they are ready for trial.

The United States well understands that the Constitution, Supreme Court case law and the ABA guidelines require defense counsel to conduct a reasonable investigation into both the merit and penalty phases of this case. We strongly believe that the materials you have in hand allows you do so and requires little, if any, investigation beyond what we know that you and the state mitigation specialist, Joyce Naffziger, have already done. First, the discovery materials in this case, including substantial earlier mental health and sexual history evaluations of Mr. Duncan suggest that there is no basis for a mental health defense in this case. Those materials have been available to you since January 26, 2007, and were identified to you by bates number in the United States' Exhibit A at the October 12, 2007, hearing. Second, the United States is aware that Ms. Naffziger has contacted Mr. Duncan's family members and his friends in Fargo, North Dakota, and that none of them have reported any information that would lead a reasonable investigator to believe that a mental health defense or mitigation is available in this case. Third, you have received in discovery countless pages and items indicating that Mr. Duncan's actions in this case were deliberate and premeditated. These items include an excel spreadsheet found on Mr. Duncan's laptop computer in which he methodically balanced whether he should stay in Fargo and contest the charges pending against him in Detroit Lakes, Minnesota, or flee and play out his fantasies, and the defendant's October 20, 2006, statement to Idaho State Police Detective Fred Swanson and Kootenai County Detective Brad Maskell in which he admitted murdering Brenda Groene, Mark Mackenzie and S.G. in order to kidnap S.G. and D.G.

Likewise, the vast majority of the expert testimony that the United States has provided notice that it intends to introduce does not reasonably suggest that significant additional investigation is necessary. Rather, the DNA, duct tape analysis, firearms evidence, fingerprint evidence and other evidence serves to corroborate S.G. and the numerous video and still images recorded by Mr. Duncan himself showing himself as the kidnapper of both S.G. and D.G.

In short, the evidence proving Mr. Duncan's guilt in this case is exceedingly strong. The United States well understands that Mr. Duncan is free to challenge the manner in which this evidence was collected, but the United States fails to see even how such challenges, many of which were previewed in the state case, require substantial additional time to prepare.

As has been acknowledged by all parties, S.G. , her family and many others are victims of Mr. Duncan's crimes. The United States is preparing for a trial in this case. Nonetheless, we offer your client the opportunity to:

1.     Plead guilty to the Indictment by November 5, 2007.

2.     Admit to the intentional and premeditated killing of D.G.

4

3.  Provide the codes/passwords to all of his encrypted electronic files to Federal Bureau of Investigation Special Agent Michael Gneckow.

4.  Cooperate fully and truthfully with Federal Bureau of Investigation Special Agents Michael and Gail Gneckow or other law enforcement officers, including interviews, regarding other investigations into the murders of missing children and persons in California, Washington State, North Dakota or other investigations designated by these special agents.

5.  Enter into a stipulation with the United States that S.G. will not be called to testify during the penalty phase of this case, and will further stipulate that, in place of her testimony, information regarding her own and D.G.'s abuse will be presented via the transcripts from her July 2005 interviews with Sgt. Dan Mattos and any pictures, videos or journal entries made between May 15, 2005, and July 2, 2005. The United States and Mr. Duncan, through his counsel, will further stipulate that these transcripts, pictures, videos and journal entries made between May 15, 2005, and July 2, 2005, may be admitted during the penalty phase without objection by the party against whom the evidence is offered. This part of the agreement will not limit either party's ability to introduce electronic evidence or writings made before May 15, 2005, and after July 2, 2005, that are relevant to other portions of the sentencing hearing.

6.  Enter into a stipulation with the United States that sentencing would begin April 7, 2008, conducted pursuant to 18 U.S.C. §3593 to determine whether a sentence of death is justified.

7.  Waive all appeals as to his entry of a guilty plea. Mr. Duncan will retain all his rights to appeal a sentence of death.

This offer is a real offer. It allows the defense team to focus on the real issue of sentencing. It avoids additional delay. It allows your client to explain why he did what he did and his theories of why the system needs to be changed. He does not give up anything that he was unwilling to give up on October 4, 2006 when he made a similar offer to Kootenai County.

Please be advised that this is the only resolution the United States will agree to. An attempt to stipulate to S.G.'s testimony and continue the trial is not a realistic option. It does not

5

spare S.G. further trauma, it only again delays things and that is not in S.G.'s, her family, other victim's or the public's best interest.

Sincerely,

THOMAS E. MOSS
United States Attorney
by

Wendy J. Olson and Traci J. Whelan
Assistant United States Attorney

6

Exh. 52 - 000321